# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD ROE (a minor by and through his parent, MARY ROE) on behalf of himself and all others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC,<br><br>      Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 3

THE PARTIES.................................................................................................................... 3

I.      Plaintiff .................................................................................................................. 3

II.     Defendants ............................................................................................................. 4

      A.      The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) .......... 4

      B.      QualityHealth Staffing, LLC ............................................................................... 6

CLASS ACTION ALLEGATIONS ................................................................................... 7

FACTUAL ALLEGATIONS ............................................................................................. 9

CAUSES OF ACTION ..................................................................................................... 24

COUNT I ........................................................................................................................... 24

COUNT II .......................................................................................................................... 25

COUNT III......................................................................................................................... 26

COUNT IV......................................................................................................................... 26

COUNT V .......................................................................................................................... 28

COUNT VI......................................................................................................................... 29

COUNT VII ....................................................................................................................... 31

COUNT VIII ...................................................................................................................... 32

COUNT IX......................................................................................................................... 33

COUNT X .......................................................................................................................... 34

COUNT XI......................................................................................................................... 34

PRAYER FOR RELIEF ................................................................................................... 37

DEMAND FOR TRIAL BY JURY ................................................................................. 37

## INTRODUCTION

1.      Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"), through 21 facilities in 13 states, takes on the responsibility for protecting more than 25,000 of our country's most vulnerable members: children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system.[1]

2.      Instead of fulfilling this solemn responsibility, Devereux has exposed its residents to physical, emotional, and sexual abuse, by harboring abusers on its staff, and by failing to enact and enforce necessary safety measures.

3.      As a result, there have been numerous and systemic incidents of abuse.  For example, in 2016, the Brevard County, Florida Sheriff's Office received reports of at least 200 abuse incidents at Devereux, including 12 instances of children who experienced batteries and 11 who were subject to sexual offenses.[2]

4.      In August 2020, the *Philadelphia Inquirer* released a report detailing decades of sexual, physical, and emotional abuse inflicted upon vulnerable children by Devereux staff members. According to the investigative report, "at least 41 children as young as 12, and with

---

[1] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=8C49CE92727 D35B4C0E776C432590E1B&pagename=about (last visited May 26, 2021); *Message from President and CEO Carl E. Clark II: An Open Letter to our Families and Communities*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited May 26, 2021).
[2] Samantha Manning, *Manager at Devereux in Viera accused of having sexual relationship with student, police say*, WFTV.COM, https://www.wftv.com/news/local/manager-at-devereux-in-viera-accused-of-having-sexual-relationship-with-student-police-say/577702005/ (last visited May 26, 2021).

IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."[3]

5.      After the publication of this report, an additional 13 former Devereux students came forward with allegations of sexual abuse.[4] These children were as young as 8 years old when they were sexually abused.[5] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[6] Seven of these children reportedly complained to Devereux staff or a social worker, but their complaints were ignored and the abuse continued.[7]

6.      Accordingly, Plaintiff Richard Roe, a minor by and through his parent, Mary Roe,[8] brings this lawsuit to hold Devereux accountable for the harm it has caused and seeks class injunctive relief to protect current and future children who are placed in Devereux's care and who without such legal protection will continue to suffer from abusive policies and practices.

---

[3] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, The Philadelphia Inquirer, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[4] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited May 26, 2021).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] A pseudonym has been used in place of Plaintiff and his mother's real names due to privacy concerns. Plaintiff and his mother may proceed using a pseudonym at this stage of the case because they have a reasonable fear of severe harm in their names being disclosed based upon the facts alleged and nature of this case involving sensitive information. *See Doe v. Genesis Healthcare*, No. 21-551, 2021 U.S. Dist. LEXIS 78205 (E.D. Pa. Apr. 23, 2021) (endorsing "balancing test to determine if the plaintiff's reasonable fear of severe harm outweighs the public's interest in open litigation" when considering right of litigant to proceed anonymously) (citations omitted).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction based on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendants Devereux and QualityHealth are headquartered, incorporated, and operate their principal places of business in the Commonwealth of Pennsylvania.  Plaintiff is a citizen of Florida.  The amount in controversy, without interest and costs, exceeds $75,000.

8.      This Court has personal jurisdiction over Defendant the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) whose national headquarters are located at 444 Devereux Drive, Villanova, PA 19085. Devereux has continuous and systematic contacts with the Commonwealth of Pennsylvania; it was founded in Philadelphia, and its headquarters have remained in Pennsylvania since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team operate out of their Pennsylvania headquarters. Defendant Devereux operates approximately 90 facilities in northeastern and southeastern Pennsylvania.[9]

9.      Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because development and implementation of the policies, practices, and omissions giving rise to the legal claims herein harmed, and will continue to harm, class members in this District and substantial property of the Defendants is situated in the District.

## THE PARTIES

### I.      Plaintiff

10.      Plaintiff Richard Roe, a minor by and through his parent, Mary Roe, is a citizen of the state of Florida and currently resides in Viera, Florida.

---

[9] *About Devereux Advanced Behavioral Health Pennsylvania*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited May 26, 2021).

11.     Plaintiff was placed in a Devereux residential treatment center in Viera, Florida in Fall of 2020.  He is currently under the care and supervision of Devereux and is subject to the policies, practices, and customs alleged in this Complaint. Allegations as to the harms he has suffered are made *infra*, paragraphs 64-71.

## II.     Defendants

### A.     The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)

12.     Defendant Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization which operates 21 campuses in 13 states, annually treating more than 25,000 children and young adults with advanced behavioral, intellectual, developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, PA 19085. [10]

13.     Devereux's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide policies and practices at Devereux campuses across the nation. Devereux's centralized decision-making is reflected in its Senior Leadership Team:

> a.     A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.

---

[10] Facilities are located in AZ, CA, CO, CT, DE, FL, GA, MA, NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).

b.    A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

c.    A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values".

d.    A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."[11]

14.    Upon information and belief, Defendant Devereux has been responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, and for hiring, supervision, and discipline of Devereux staff and other employees.

15.    Devereux  receives state and federal funding, including financial support from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program;[12] the U.S. Department of Education, Office of Special Education Programs for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional Training and Research);[13] grants from the Pennsylvania Department of Education to develop programs for Devereux CARES, which

---

[11] *Senior Leadership Team*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/;jsessionid=00000000.app20113a?NONCE_TOKEN=DF9BBE8328B5F6AE8B18042B9F784129&pagename=leadership (last visited May 26, 2021).

[12] Victoria Villanueva-Marquez, *Agency receives funding to expand child trafficking program in Volusia-Flagler*, THE DAYTONA BEACH NEWS-JOURNAL, https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited May 26, 2021).

[13] *Our Approach*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited May 26, 2021).

has been licensed as an "Approved Private School;"[14] and a $40.2 million contract from the U.S.

Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[15]

### B.   QualityHealth Staffing, LLC

16.    Defendant QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral

health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc.

QualityHealth is headquartered in King of Prussia, Pennsylvania.

17.    QualityHealth was formed to address the challenges related to recruiting and

retaining individuals to work in the field of behavioral health. By providing "temporary,

temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to

fulfill roles in a timely manner and who experience difficulty in keeping up with the constant

changes in employment regulation," QualityHealth aids organizations to "focus on their mission

of helping others, rather than spending time on staffing and employment issues."[16]

18.    Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as

CEO of QualityHealth.[17]

---

[14] *Devereux Center for Autism Research and Education Services (CARES)*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited May 26, 2021).

[15] Liliana Frankel, *Under investigation for sexual abuse, Devereux still has a contract to detain migrant children in PA*, BILLY PENN, https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited May 26, 2021). While this contract was still active as of August 2020; note, however, that the *Inquirer* reported the contract abandoned as of October 2020).

[16] *About Us*, QUALITY HEALTH, https://www.qhstaffing.com/about-us/ (last visited May 26, 2021).

[17] *Senior Leadership Team*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/;jsessionid=00000000.app20113a?NONCE_TOKEN=DF9BBE8328B5F6AE8B18042B9F784129&pagename=leadership (last visited May 26, 2021).

- 6 -

19.     At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control.

## CLASS ACTION ALLEGATIONS

20.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), Plaintiff seeks declaratory, injunctive and other equitable relief on behalf of himself and the following nationwide Class of others who are similarly situated:

> All individuals in Devereux Advanced Behavioral Health programs and facilities.

21.     Excluded from the class are Defendants, their affiliates and subsidiaries; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

22.     Plaintiff reserves the right to modify or amend the class definition, including the addition of one or more subclasses, after having the opportunity to conduct discovery.

23.     Numerosity: Devereux reports that they serve more than 25,000 youth annually.[18] Therefore, the Class consists of tens of thousands of individuals, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of individual members will be ascertainable through records maintained by Defendants.

24.     Typicality: Plaintiff's claims are typical of the claims of each Class member in that Plaintiff, like all Class members, is currently enrolled in a Devereux program and therefore subjected to the unnecessary (and foreseeable) risk of physical, emotional, and sexual assault caused by Devereux's failure to have and/or enforce proper policies and procedures for the

---

[18] *Message from President and CEO Carl E. Clark II: An Open Letter to our Families and Communities*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited May 26, 2021)

prevention of, and proper response to, such abuse, and Plaintiff is advancing the same legal theories on behalf of himself and the Class.

25.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests and the interests of all other members of the Class are identical, and Plaintiff is cognizant, by and through his mother, of his duty and responsibility to the Class. Accordingly, Plaintiff can fairly and adequately represent the interests of the Class. Moreover, Plaintiff's counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiff and his counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

26.     <u>Commonality</u>: There are numerous questions of law and fact common to the Class, including, but not limited to:

a.     Whether Devereux had a duty of care and safety towards its patients, including protecting them from, and properly responding to, physical, emotional, and sexual abuse;

b.     Whether Devereux breached that duty of care and safety towards its patients by failing to have and/or enforce proper policies and procedures for the prevention of, and proper response to, physical, emotional, and sexual abuse;

c.     Whether Devereux had a duty to implement and enforce comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities;

d.     Whether Devereux's pattern of negligent staffing constituted a breach of its duty to supervise and care for patients in their custody;

e.     Whether Defendant's polices, practices, and customs failed to satisfy its duty to report abuse as required under federal law for all persons engaged in a professional capacity working with children, such as teachers, social workers and physicians; such persons are required to report incidents of child abuse that occur while such person is engaged in a professional capacity in a federally "contracted" facility. 34 U.S.C. § 23041(a)(1);

      f.     The extent of Defendant's knowledge of and deliberate indifference to the pattern and incidence of physical, emotional, and sexual abuse of patients in their programs.

27.     A class action is appropriate here under Rule 23(b)(2) because Devereux has acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole.

### FACTUAL ALLEGATIONS

28.     Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Devereux programs. Across its campuses in 13 states, Devereux offers hundreds of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[19]

29.     Devereux promotes its programs with a claim of expertise in supporting children with disabilities.[20] For many youth, including Plaintiff Richard Roe, placement in a Devereux program was the result of their previous placement in a state child welfare system facility due to parental abuse or neglect.[21]

---

[19] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).
[20] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited May 26, 2021).
[21] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited May 26, 2021).

30.     Devereux CEO Carl Clark has recognized the serious risk to children who are placed at Devereux, having stated  that "[m]ost of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[22]

31.     Notwithstanding this statement of concern, as a matter of practice and custom, many children have been abused at a Devereux facility, and many of them have been unable to report or otherwise find ways to protect themselves from continued abuse due to practices and customs of the Defendants that prevent access to remedial measures or protection.[23]  Some children have been prevented from reporting or receiving appropriate care due to cover-ups of complaints and threatened or actual retaliation by Devereux staff.

32.     As a result of these practices and customs many Devereux residents who did report abuse were disbelieved without adequate or proper investigation, and/or suffered retaliation.[24]

33.     Many of the children who have been abused at Devereux were especially vulnerable, as they were intellectually disabled, and had been placed at Devereux because of parental or other abuse in the community.[25]

---

[22] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[23] *Id.*
[24] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[25] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

2253803.1

34.     Devereux staff members have also abused children who had been previously sexually abused in the community.[26] As reported by the *Philadelphia Inquirer,* "A 15-year-old girl in a Devereux Florida program designed for sex-trafficking victims said she was raped twice by a staff member in 2017."[27]

35.     The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff presents serious risks to the class of residents at Devereux.  Youth with disabilities are easily targeted as they are perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. In a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[28]

36.     Devereux staff have also been accused of grooming children. In describing a staff member's abuse of a girl "on the cusp of 15," the *Philadelphia Inquirer* reported that "[s]he was flattered when he brought her gifts — an MP3 player, a necklace, a cell phone. He told her never to include his name in text messages – just his initials. They exchanged dozens of love letters."[29] The *Philadelphia Inquirer* further reported, "Instead of rigorously investigating red flags,

---

[26] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).
[27] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[28] *Risk Factors That Contribute to Child Abuse and Neglect*, CHILD WELFARE INFORMATION GATEWAY, https://www.childwelfare.gov/topics/can/factors/ (last visited May 26, 2021).
[29] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

Devereux repeatedly failed to identify clear signs that a staffer may be grooming or sexually abusing a child, reporters found. The abuse often continued — or even escalated."[30]

37.     The Defendants have been on notice for many years of systematic sexual and physical abuse of children in their care, but have failed to implement necessary and appropriate system-wide protocols and policies to ensure the safety of their youth.[31]

38.     Devereux has further acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Devereux facilities, and by ignoring and covering up complaints of child abuse.[32]

39.     In response to the *Philadelphia Inquirer* Report, Devereux, through its CEO, has acknowledged notice of repeated incidents of abuse within its programs.[33]  Yet, notwithstanding the credible allegations of systemic sexual and physical abuse of children in its care, Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example, after a staffer raped a 15-year-old girl at Devereux Georgia in 2012, Devereux announced risk reduction strategies, including training staff on sexual reactivity and the risk of supervision lapses that can lead to sexual assaults, and adoption of the "Diana Screen" program to evaluate new employees. However, the vice president of operations/executive director of the Georgia campus later

---

[30] *Id.*

[31] *Id.*

[32]  Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[33] *Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of Resident Safety*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited May 26, 2021).

testified that she was unaware of new staff trainings regarding sexual reactivity and had no knowledge of training videos regarding supervision lapses.[34]

40.     Devereux's failure to implement and enforce policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates the trauma of the actual abuse.  These failures reflect a pattern of "institutional betrayal," wrongdoings perpetrated by an institution including failure to prevent or respond supportively to wrongdoings by individuals that include*,* physical, emotional, and sexual abuse.[35]

41.     Devereux has also failed to properly deploy and supervise staff at its facilities, leading to dangerous working conditions for staff,[36] as well as for residents.  As a former Licensed Practical Nurse at Devereux reported:

> Devereux continues to put themselves out there as such a caring foundation for their clients . . . it's a cut throat intimidating, unsafe environment. . . very high turnover rate because they will overwork you, put you in unsafe situations no matter how much training they give you, when something goes wrong it's your fault no matter what happened . . . there isn't enough staff to take care of their clients properly and the nursing department who are supposed to be supportive of you and help take care of the clients treat the site nurses like garbage. . . stay away and protect your license and your back . . . run, don't walk away![37]

42.     Another former staff member at a Devereux facility in Rutland, Massachusetts reported in 2018 that:

---

[34] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[35] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited May 26, 2021); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited May 26, 2021)).

[36] *See* Exhibit 1 hereto.

[37] *See* Exhibit 2 hereto.

Frontline staff are taken advantage of, put in dangerous situations and penalized for speaking up. Work is very tiring, often resulting in injuries and culture is that it's frowned upon and sometimes discipline to use sick time [sic]. Leadership changes every week. They are good at making things look good but scratch beneath the surface and a lot of very concerning stuff going won with kids and staff. I was fired for calling out sick when I didn't have enough sick time. So much for 'caring' for people. Staff care way more about the kids than management and leadership. They prioritize profit and saving dollars. Kids placed inappropriately just to fill beds.

Advice to Management

Consider having some integrity, for the kids if not anything else.[38]

43.     Devereux asserts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[39] Devereux also promises its students compassion, knowledge, collaboration, dedication, learning, and progress,[40] and presents itself as "one of the largest and most advanced behavioral healthcare organizations in the country" with "a unique model that connects the latest scientific and medical advancements to practical, effective interventions in the treatment of behavioral health.[41]

44.     For many children placed at Devereux's facilities, the opposite is true.  A pattern of abuse has emerged, including:

a.      As reported by the *Philadelphia Inquirer,* a Devereux staff member was charged with sexually abusing four children at a facility in Texas in 2019.[42] One of the children was 12 years old.[43] Staff also allegedly

---

[38] *See* Exhibit 3 hereto.
[39] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited May 26, 2021).
[40] *Id.*
[41] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited May 26, 2021).
[42] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[43] *Id.*

threatened to beat up a 16-year-old girl if she told anyone about the abuse.[44]

b.   As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux staff member at an Arizona facility sexually abused three girls in their bedrooms and in the laundry room.[45]

c.   In 2018, a 16-year-old boy with autism and developmental delays was reportedly sexually assaulted by Devereux Staff at the Brandywine facility, located in Glenmoore, Pennsylvania. The boy tried to kill himself several times since his abuse at Devereux. As reported by the *Philadelphia Inquirer*, the boy's abuser was sentenced to eight years in prison for abusing him and two other 14-year-old children.[46]

d.   In 2017, a Devereux staff member was accused of raping a 15-year-old victim of child sex trafficking at Devereux's Viera, Florida facility. The victim had previously reported this staff member's increasing sexual misconduct towards her, but Devereux staff members dismissed her complaints.  After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse. As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[47]

e.   In 2014, a Devereux staff member sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. The staff member had groomed his victim, including an exchange of "love letters" of which other Devereux staff members were aware, protecting the victim from the employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to write more letters to him because that "could get him in trouble."

---

[44] *Id.*

[45] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[46] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[47] *Id.*

Devereux failed to take adequate steps to protect this child, notwithstanding notice of the abuse, and as a result that staffer continued to abuse her until he was finally arrested for these criminal acts. "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a minor, sexual abuse of children and corruption of minors after trial in September, 2016."[48,49]

f.   In 2012, another Devereux Staff member orally raped a girl twice in one night in a Devereux Georgia facility. According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[50]

g.   The *Philadelphia Inquirer* reported in 2020 that there were 13 victims of sexual, physical, and verbal abuse in Devereux facilities in Pennsylvania -- in addition to the 41 victims who were the subjects of abuse in the period 2004-2014. Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[51]

h.   In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-workers were accused of not reporting the incidents as required by law.[52]

---

[48] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited May 26, 2021).

[49] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[50] *Id.*

[51] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited May 26, 2021).

[52] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients*, CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited May 26, 2021).

45.     Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September 24, 2020, the City of Philadelphia announced that all youth would be removed from Philadelphia-area residential care facilities operated by Devereux.[53]

46.     In 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child. "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras." A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[54]

47.     Pursuant to Devereux's centralized decision-making structure, policies, procedures, and protocols are promulgated by the Senior Leadership Team and they govern the administration of all Devereux facilities.

48.     Devereux's failure to develop, implement and enforce  policies, procedures, and practices necessary to protect the children in its care, and its failure to adequately screen, hire, train, and supervise staff, caused students from multiple Devereux facilities to suffer abuse and other harms.

49.     A Devereux Direct Support Professional posted the following  on Glassdoor.com on December 14, 2019:

> There is absolutely no supportive infrastructure here, while the staff work with kids who are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting that way- I would be angry if I were them too. Some of the staff bully the kids, and occasionally, other staff. There is no support for

---

[53] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited May 26, 2021).
[54] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited May 26, 2021).

reporting incidents. There is virtually no therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at 2:00 – many of the kids reported not having therapy for over a month, even though it is a residential TREATMENT center.  The staff are left completely on their own to structure the kids' days with no support from therapists. Staff egg on fights and threaten to restrain kids at every little sign of resistance. Kids have no choices, and there is no opportunity for them to engage in anything supportive of their growth and development. The job also pays little and uses that as leverage for people to work double shifts to gain overtime pay. Staff push themselves to exhaustion for the pay while working with kids who need A LOT of attention. Overall, extremely unsafe and unsupportive environment in so many ways.[55]

50.    A Devereux Case Manager reviewed Devereux on Glassdoor.com on April 23, 2019, stating that, "Literally you get thrown into a job that you know nothing about and are expected manage a huge caseload. Impossible to function and maintain sanity. Not very team oriented."[56]

51.    As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the company wasn't attracting the right employees."[57]

52.    A January 17, 2021 listing on Glassdoor.com showed that Direct Support Professionals at Devereux facilities Pennsylvania were slated to receive an hourly salary of $13.75,[58] and that an Autism Activity Counselor at Devereux would receive $14.75-$16.82 per hour.[59] An employee working 40 hours per week, 52 weeks per year at $13.75 would take home

---

[55] *See* Exhibit 4.
[56] *See* Exhibit 5 hereto.
[57] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[58] *See* Exhibit 6, attached hereto.
[59] *See* Exhibit 7, attached hereto.

a gross annual salary of $28,600. The poverty level for a family of four in Pennsylvania in 2020 was $26,200.[60]

      53.     A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50 plus $1 shift [differential] if you work after 3pm and on weekends. Working 14 hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no meal breaks. Expect injuries from the kids. Management always telling you how to do better, not addressing moral[e] or high turnover. Lack of supervisors because of high turnover and low moral[e]. Benefits are expensive and you already at a very low (non-living wage.)[61]

      54.     As reported by the *Philadelphia Inquirer*, Devereux paid its staff an average of $26,000 per year in 2017.[62] The low pay encouraged staff to work 16- hour shifts to earn overtime pay.[63] Because pay was so low, Devereux could not attract sufficient staff who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[64]

      55.     Devereux has had sufficient funds to hire qualified employees, provide adequate staffing and training, and to supervise its staff. Devereux receives more than $497 million per year and 95% of its revenue is from government sources. In fiscal year 2020, Devereux received

---

[60] Pennsylvania Department of Community and Economic Development, *Income Eligibility*, PA.GOV, https://dced.pa.gov/housing-and-development/weatherization/income-eligibility/ (last visited May 26, 2021).

[61] *See* Exhibit 8 hereto.

[62] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[63] *Id.*

[64] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was to be used for housing and treating children with psychiatric, intellectual, and behavioral disabilities. CBH, with which the City of Philadelphia contracts to place Medicaid recipients in psychiatric residential treatment, paid Devereux $12.9 million in 2019 -- $7.7 million of which was for residential treatment facilities.[65]

56.     Despite the large amount of public funding it has received, Devereux has severely understaffed its facilities. As reported by the *Philadelphia Inquirer*, a staff member who was supposed to be responsible for seven children in a shift would at times end up caring for twenty children. The supervision issues were so severe that a police detective reportedly met with leaders at Devereux's Malvern campus to ask it to improve its staffing.[66]

57.     Further, as reported by the *Philadelphia Inquirer,* Devereux staff would disappear for hours and regularly slept through their shifts,[67] some would play video games for hours without checking on the students, and some came to work with sleeping bags and pillows so that they could sleep through the night. In sum, Devereux's staff was severely underpaid and had to work more than one job.[68]

---

[65] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited May 26, 2021).

[66] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[67] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited May 26, 2021).

[68] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE

- 20 -

58.     Plaintiff is a seven-year-old boy who is diagnosed with Autism Spectrum Disorder.  Plaintiff has been a resident at a Devereux residential treatment facility in Viera, Florida since Fall 2020.

59.     Plaintiff and his two younger siblings came to the attention of the Florida Department of Children and Families ("DCF") after Plaintiff's mother called to report that the children's father had been severely abusing the children.  The Dependency Court assumed jurisdiction over Plaintiff, and he was placed in a foster home.  Plaintiff was twice placed in a temporary psychiatric facility for mental health treatment pursuant to the Baker Act, Tit. XXIX, Ch. 394, Fla. Stat. (2020), and then began spending separate time with his mother and father.

60.     Plaintiff experienced bullying in school related to his Autism.  When he was placed in a classroom that was intended to provide him with additional supports and services, he began mimicking the aggressive behaviors of his peers, knowing that if he acted out, his mother would take him home from school.

61.     After Plaintiff's mother was evicted from her home, Plaintiff and his siblings were ordered to stay with their father while their mother secured housing.  During this time, Plaintiff witnessed the death of his younger brother due to complications arising from a lack of medical attention.

62.     When Plaintiff was six years old, his mother again contacted DCF after she observed bruises that his father had caused by physical abuse of the child. The Dependency Court ordered that Plaintiff's father take parenting classes, but did not revoke custody.

---

PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

63.     The Dependency Court later determined that Plaintiff's father was still abusing him and, in conjunction with Plaintiff's guardian ad litem, the Court determined that he required placement in a Statewide Inpatient Psychiatric Program ("SIPP").

64.     Plaintiff was placed at the Devereux Florida Viera Campus, a residential treatment program for children with behavioral challenges.  Plaintiff had just turned seven, making him the youngest child at the facility. Despite his mother's objections to this placement based on her knowledge of previous incidents of abuse at Devereux facilities, Plaintiff has now been a resident at Devereux Viera for more than six months.

65.     For children with autism spectrum disorder (ASD), behavioral challenges are common and expected.  Many youth with ASD exhibit physically aggressive behaviors such as hitting, kicking, and biting.[69] Other common symptoms include a hypersensitivity to being touched, temper tantrums, and unusual or overwhelming reactions to certain sights or sounds. *Id.* Behavioral health centers, especially those which specialize in ASD support, require specialized training of their staff to respond humanely and appropriately to outbursts and aggression related to a child's ASD.[70] When staff lack such training, instead resorting to aggressive physical restraints, children are placed at heightened risk physical and emotional injuries, or even death.[71]

---

[69] *Autism Spectrum Disorder: Signs and Symptoms*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ncbddd/autism/signs.html (last visited May 26, 2021).
[70] Jenny Abamu, *How Some Schools Restrain Or Seclude Students: A Look At A Controversial Practice*, NPR.ORG, https://www.npr.org/2019/06/15/729955321/how-some-schools-restrain-or-seclude-students-a-look-at-a-controversial-practice (last visited May 26, 2021).
[71] David M. Perry, *Restraint in Schools and the Death of an Autistic Child*, PACIFIC STANDARD, https://psmag.com/education/restraint-and-seclusion-and-the-death-of-max-benson (last visited May 26, 2021); Cat Schuknecht, *School Where Student with Autism Died Violated State Regulations, Officials Say*, NPR.ORG, https://www.npr.org/2018/12/09/675145052/school-where-student-with-autism-died-violated-state-regulations-officials-say (last visited May 26, 2021).

2253803.1

66.     Devereux staff have forcibly restrained Plaintiff, causing unnecessary and excessive bruising and pain. These physical restraints violate protocol for acceptable behavioral health management techniques, and staff members also knew, or should have known, that because of his ASD-related responses to human contact, Plaintiff is easily triggered and traumatized by these techniques.  He has reacted by pulling out his hair, as he had done in foster care due to abuse and trauma.

67.     Plaintiff informed his mother that Devereux staff taunted and manipulate him by withholding food.  When Plaintiff's mother raised this issue, Devereux staff admitted that they make him "work" for his favorite foods, strategically withholding or offering certain "reward" foods to make him comply with desired behaviors and to use physical restraints when he protested the denial of favorite foods.

68.     Devereux staff continues to use food as a discipline technique notwithstanding the fact that it aggravates Plaintiff's behavior.

69.     Plaintiff has also complained that a Devereux case worker was covering Plaintiff's eyes with his hands, which would violate the no-contact policy between staff and residents.

70.     When Plaintiff's mother visits him at the Devereux facility, she regularly witnesses children fighting aggressively and yelling.  One resident approached Plaintiff's mother, showed her a gash on his head, and told her that another resident had fought him and kicked him in the head.

71.     Plaintiff had already suffered serious trauma before arriving at Devereux.  The Viera Devereux facility, which was supposed to be a therapeutic environment for Plaintiff, instead provided further opportunities for Plaintiff to be abused by adults entrusted with his care.

This child and other class members will continue to suffer from the fear, anxiety, stress, and trauma unless the Court orders remedial measures that will end the abuses at Devereux.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff)

72.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

73.     Devereux owed Plaintiff a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

74.     Devereux acted with a lack of care towards Plaintiff through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding behavioral health practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiff's wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Devereux programs; failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs; and failing to develop and implement appropriate policies and procedures to prevent employees from responding to Plaintiff's typical and expected Autism-related outbreaks with aggressive physical restraints and withholding preferred foods as a form of discipline; and/or failing to ensure that

policies and procedures were followed to prevent such mistreatment. By failing to exercise ordinary care through their acts and omissions, Devereux caused foreseeable harm to Plaintiff, as detailed above.

## COUNT II
### NEGLIGENT HIRING
### (On behalf of Plaintiff)

75.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

76.     Devereux is required to exercise reasonable care in the hiring, supervision, and continued retention of all employees staffed at their facilities.

77.     Devereux knew, or in the exercise of ordinary care, should have known, that the employment of the staff members who mistreated Plaintiff posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags," Devereux would have known that these employees were not suitable for the particular duty of caring for children.

78.     It was unreasonable for Devereux to hire employees whom Devereux knew or should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

79.     Around 2012, after a staff member raped a 15-year-old girl at Devereux Georgia, Devereux considered adopting the "Diana Screen" program to evaluate new employees. However, although the program cost less than $30 to administer, Devereux declined to adopt it.

80.     Due to Devereux's repeated failure to properly screen its employees, it is liable for negligently hiring those employees who were not sufficiently investigated before hiring to ensure

that they would provide safe care for the vulnerable children in Defendant's programs, including Plaintiff.

81.     Because of Devereux's negligent hiring practices, Plaintiff was proximately harmed by Devereux employees. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiff.

## COUNT III
### NEGLIGENT RETENTION
### (On behalf of Plaintiff)

82.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

83.     As detailed above, Devereux knew or should have known about the widespread and repeated history of physical, sexual, and/or emotional abuse committed by Devereux staff members. The scope and severity of this misconduct evidences an institutional problem surrounding the conduct of staff members such that Devereux knew, or reasonably should have known, of the necessity to control their employees.

84.      Despite this misconduct, Devereux failed to implement procedures for evaluating employee misconduct, evidenced by its staffs' repeated departure from institutional norms, such as, *inter alia,* responding to Plaintiff's typical and expected Autism-related outbreaks with aggressively inappropriate physical restraints.

85.     Despite Devereux's actual and/or constructive knowledge of Plaintiff's mistreatment, Devereux retained the employees responsible for the mistreatment. Because of Defendants' breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, Plaintiff was grievously harmed.

## COUNT IV
### NEGLIGENT SUPERVISION

**(On behalf of Plaintiff)**

86.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

87.     Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Defendant possessed a special relationship with Plaintiff, as Devereux was entrusted with the duty of care and custody over Plaintiff, who is a minor.

88.     Youth in Devereux programs cannot reasonably be expected to protect themselves from sexual, physical, or emotional assaults and abuses by staff.  These children come to Devereux in need of advanced behavioral health supports. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with others and understand an appropriate versus an inappropriate interaction with a teacher or staff member. This is particularly true for Plaintiff, who is only seven years old, who has advanced needs related to his Autism Spectrum Disorder, and who has suffered physical abuse by his father.

89.     Devereux failed to exercise ordinary care to prevent intentional harms by their employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse towards Devereux patients, students, and residents. This gave Devereux reason to know that abuse of their residents and patients was commonplace, and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

90.     Devereux had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its

staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

91.     Despite knowing of this pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols for sufficient staffing of Direct Support Professionals (such that staff members are not alone with children), to ensure that staff are following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and taking immediate action to investigate, reassign, and/or terminate employment of staff who engaged in abusive behavior towards their patients and residents.

92.     Because of Defendants' negligent supervision, in which Devereux breached its duty to exercise reasonable care to prevent harms to youth in its care, Plaintiff was harmed.

**COUNT V**
**GROSS NEGLIENCE**
**(On behalf of Plaintiff)**

93.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

94.     Devereux owed Plaintiff a duty to provide a safe environment with adequate protection, supervision, and care while in Devereux's custody.

95.     Devereux acted with a lack of care towards Plaintiff by demonstrating a conscious disregard or indifference towards his safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

96.     At all relevant times, Devereux owed a duty to Plaintiff to implement practices and policies to:

     a.     Prevent physical and emotional abuse of youth by Devereux staff;

     b.     Require the prompt reporting of any allegations or suspicions of any type of abuse of youth in Devereux programs by staff or by peers;

     c.     Require the independent investigation of all reports of physical or emotional abuse of youth in Devereux programs;

      d.      Mandate the training of all staff who work directly with youth in Devereux programs regarding child abuse, appropriate relationships with residents, grooming, and child abuse reporting obligations;

      e.      Protect Plaintiff and from such abuse and foreseeable risks; and

      f.      Provide a safe environment for children with disabilities and mental health needs free from abuse, harassment, and physical harm.

97.     Defendants' duty arose from taking responsibility for the care and custody of youth attending their programs.

98.     Devereux acted recklessly and indifferently in its care and custody of children with disabilities and advanced mental health needs.

99.     Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQ scores, Devereux created an unreasonable risk of harm to Plaintiff.

100.    As a direct and proximate result of Defendant's reckless indifference to Plaintiff, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, and loss of enjoyment of life.

**COUNT VI**
**VICARIOUS LIABILITY**
**(On behalf of Plaintiff)**

101.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

102.    Devereux is vicariously liable for alleged tortious misconduct through *respondeat superior*, negligent supervision, retention and hiring, and/or through enabling the mistreatment alleged herein by providing employment to staff who mistreated Plaintiff.

103.    When Plaintiff was physically and emotionally mistreated by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients, such as by employing medically improper, harmful restraining techniques against Plaintiff who had an ASD diagnosis.

104.    Devereux staff members used their position as employees of Devereux to enable mistreatment, including abuse, such that Devereux is vicariously liable for their conduct.

105.    Staff members at Devereux are charged with the care of children with physical, emotional, and/or intellectual disabilities and entrusted to keep them safe. But for their employment at Devereux, staff members would not have been in unsupervised situations with these young and vulnerable victims. Additionally, the responsibilities associated with staff members' employment has enabled them to exert excessive and abusive authority over victims, including Plaintiff.

106.    Staff members took advantage of the authority associated with their responsibilities at Devereux to Plaintiff, including touching him inappropriately.

107.    Devereux staff members' abuse of Plaintiff constitutes an assault or battery, as detailed further below.

108.    Devereux ratified their staff members' abusive conduct towards Plaintiff by failing to discipline, take corrective action, and/or report the child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by their staff, as described above.

109.    These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within their facilities. These repeated instances of abuse alerted or should have alerted Devereux that other staff members may be abusing students.

110.    In addition to the long, repeated history of abuse by staff members, Devereux knew that their patients, including Plaintiff, were particularly susceptible to mistreatment as youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiff.

111.    As a direct and proximate result of Devereux's employees' abuse towards Plaintiff, Plaintiff has suffered physical harms and have suffered and will continue to suffer physical and emotional pain and distress.

## COUNT VII
## ASSAULT AND BATTERY
### (On behalf of Plaintiff)

112.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

113.    While Plaintiff was a resident at Devereux in Viera, Florida and 6 years old, Devereux staff physically and verbally abused him, a young boy with Autism Spectrum Disorder.

114.    Devereux staff forcefully restrained Plaintiff without his consent, leaving red marks and bruises on his body.  Based on information and belief, these restraints were ratified by Devereux and exceeded the protocol for standard behavioral health management techniques.

115.    At no time did Plaintiff consent to these abuses and harms through which he suffered.

116.    These acts, which include attempts or actual uses of harmful or offensive touching, constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

117.     Devereux is vicariously liable for assault and battery perpetrated on Plaintiff by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

118.     Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

119.     Moreover, as the employer of staff members, Devereux was in the best position to address and prevent this type of conduct from occurring in the future.

120.     As a direct and proximate result of the Defendants' acts, Plaintiff has suffered and will continue to suffer severe emotional and physical harms.

<u>COUNT VIII</u>
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(On behalf of Plaintiff)**

121.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

122.     Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress.

123.     Devereux acted negligently towards Plaintiff, as described above.

124.     This negligent conduct created an unreasonable risk of physical harm, which caused Plaintiff to be in fear of his own safety.

125.     Devereux's negligence both placed Plaintiff in the zone of danger of physical impact or injury and resulted in Plaintiff suffering actual injury.

126.    Plaintiff suffered emotional distress as a result of Devereux's negligent conduct. This resulted in physical consequences and/or long-continued emotional disturbance, as described above.

127.    Devereux's conduct was the cause of these damages.

128.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(On behalf of Plaintiff)**

129.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

130.    Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiff would suffer emotional distress as a result.

131.    Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiff. This distress was of such an intensity that no reasonable person should be expected to endure it.

132.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

133.    By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiff to suffer physical and emotional abuse that has caused and will continue to cause pain and, suffering, and loss of enjoyment of life.

## COUNT X
## BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiff)

134.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

135.    Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

136.    By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiff's wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached their fiduciary duty towards Plaintiff.

137.    Plaintiff was thereby harmed by Defendant's breach of this fiduciary duty, as detailed above.

## COUNT XI
## INJUNCTIVE AND EQUITABLE RELIEF
### (On behalf of Plaintiff and the Class)

138.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

139.    Plaintiff brings this claim on behalf of himself and all others similarly situated (the "Class").

140.    Class members are currently at risk of irreparable harm due to Devereux's failure to enact and enforce appropriate and sufficient policies, procedures, and processes for the

prevention of physical, emotional, and sexual abuse of those enrolled in its programs and residing in its facilities. On behalf of the Class, Plaintiff seeks injunctive and equitable relief requiring Devereux to implement institution-wide policies and practices to prevent, and properly respond to, such abuse within their programs.

141.     The risk of irreparable harm that Plaintiff and Class Members face is higher than the general societal risk of these harms, and that increased risk is directly traceable to the actions and inactions of Devereux.

142.     These harms through which Devereux has placed Plaintiff and Class Members at risk are irreparable. Abuse, whether it be physical, emotional, or sexual, and the trauma, pain, and suffering that it creates, cannot be undone. Youth, especially youth with disabilities and advanced mental health and behavioral needs, carry the trauma they endured as children with them for the rest of their lives. No monetary compensation can remedy this mistreatment. Therefore, declaratory and injunctive relief is necessary to eliminate the increased risk posed by Devereux's actions and inactions in order to protect Plaintiff and Class Members from irreparable harm.

143.     The common injury suffered by Plaintiff and the Class – being placed at heightened risk of sexual, physical, and emotional abuse and assault by Devereux – will be redressed by the requested injunctive relief.

144.     Devereux has a duty under federal and state law to protect its patients and residents. This duty includes a responsibility to:

    a.     Protect students from physical, emotional, and sexual abuse while placed in Devereux programs and facilities;

    b.     Promptly and thoroughly investigate and report known and reasonably suspected of physical, emotional, and sexual abuse at Devereux;

    c.     Properly respond to this abuse when it occurs; and

       d.      Supervise, monitor, and prevent Devereux staff from committing acts of abuse against patients and residents.

145.    Devereux has breached its duty towards Plaintiff and Class Members by failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and properly respond to incidents of abuse in Devereux's programs and facilities.

146.    Accordingly, Plaintiff, on behalf of himself and the Class, requests that the Court issue an Order requiring Devereux to implement and enforce policies and procedures for the prevention of, and response to, physical, emotional, and sexual abuse at Devereux. These measures should include:

       a.      rigorous hiring, screening, and retention protocols;

       b.      revised guidelines governing interactions between staff and patients;

       c.      robust sexual reactivity training for Direct Support Professionals (DSPs);

       d.      improved training for DSPs regarding de-escalation techniques;

       e.      increased supervision of DSPs, especially during the most vulnerable nighttime windows;

       f.      compliance with physical building requirements to increase visibility such that individuals cannot commit abuse in concealed areas;

       g.      improved video monitoring infrastructure;

       h.      best practice policies and procedures for the prevention of physical, emotional, and sexual abuse;

       i.      best practice policies and procedures for the appropriate response to incidents of physical, emotional, and sexual abuse; and

       j.      any additional injunctive relief measures that are supported by the record in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Roe, individually and on behalf of the Class, respectfully requests that the Court enter a judgment on his behalf and against Devereux, and further grant the following relief:

A.   Award the named Plaintiff compensatory damages, punitive damages, pain and suffering, pre-judgment interest, and any other relief to which he is entitled under the law;

B.   Certify the proposed Class pursuant to the Federal Rules of Civil Procedure Rule 23(a) and (b)(2);

C.   Designate Plaintiff Richard Roe as a representative of the proposed Class and Plaintiff's counsel as Class counsel;

D.   Award injunctive relief requiring Devereux to implement and enforce policies and practices to prevent future incidents of abuse, including those set out above because: (1) there is a substantial likelihood that Plaintiff and the Class will prevail on the merits; (2) there is a real and substantial threat that Plaintiff and the Class will suffer irreparable injury if the injunction is not granted; (3) Plaintiff and the Class's threatened injury outweighs any threatened harm to Devereux; and (4) granting the injunction will serve the public interest.

E.   Award Plaintiff and the Class costs and attorneys' fees; and

E.   Award to the Plaintiff and the Class for such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff Richard Roe, individually and on behalf of the proposed Class, respectfully requests a trial by jury as to all matters so triable.

Date: June 11, 2021                    Respectfully submitted,


                                       __/s/ Lori G. Kier_____
                                       Joseph G. Sauder
                                       Lori G. Kier
                                       Davina C. Okonkwo
                                       **SAUDER SCHELKOPF LLC**
                                       1109 Lancaster Avenue
                                       Berwyn, PA 19312
                                       Tel: (610) 200-0581
                                       Facsimile: (610) 421-1326
                                       jgs@sstriallawyers.com
                                       lgk@sstriallawyers.com
                                       dco@sstrialllawyers.com

                                       Annika K. Martin (admitted *pro hac vice*)
                                       **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                       250 Hudson Street, 8th Floor
                                       New York, NY 10013
                                       Phone: (212) 355-9500
                                       Facsimile: (212) 355-9592
                                       akmartin@lchb.com

                                       Mark Chalos (admitted *pro hac vice*)
                                       Hannah Lazarz (admitted *pro hac vice*)
                                       **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                       222 2nd Ave, Suite 1640
                                       Nashville, TN 37201
                                       Phone: (615) 313-9000
                                       Facsimile: (615) 313-9965
                                       mchalos@lchb.com
                                       hlazarz@lchb.com

                                       David Rudovsky
                                       **KAIRYS, RUDOVSKY, MESSING,**
                                       **FEINBERG & LIN, LLP**
                                       718 Arch Street
                                       Philadelphia, PA 19106
                                       215-925-4400
                                       drudovsky@krlawphila.com