**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD ROE (a minor by and through his parent MARY ROE) on behalf of himself and all others similarly situated, | : | CLASS ACTION |
| | : | |
| Plaintiffs, | : | Case No. 2:21-cv-026550 |
| | : | |
| v. | : | Judge Anita B. Brody |
| | : | |
| THE DEVEREUX FOUNDATION (d/b/a | : | Electronically Filed |
| DEVEREUX ADVANCED BEHAVIORAL | : | |
| HEALTH) and QUALITYHEALTH STAFFING, | : | |
| LLC | : | |
| | : | |
| Defendants. | : | |

**THE DEVEREUX DEFENDANTS' OPENING BRIEF IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and Quality Health Staffing, LLC (collectively, the "Devereux Defendants" or "Devereux") submit this brief in support of their motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................3

        A.      Plaintiff's Individual Claims...................................................................3

        B.      Purported Class Action Allegations........................................................4

III.    ARGUMENT .........................................................................................................5

        A.      Counts VI, VII and IX of the Complaint Must be Dismissed Pursuant to
                Fed. R. 12(b)(6) Because Plaintiffs Fail to State a Claim.......................5

                i.      Legal Standard ............................................................................5

                ii.     Plaintiff Cannot State a Claim for Vicarious Liability (Count VI)
                        Against Devereux Based on its Employees' Alleged Outrageous
                        and Personally Motivated Actions. ............................................5

                iii.    Plaintiff's Claim for Assault and Battery (Count VII) Against
                        Devereux Fails Because He Cannot Allege any Offensive Contact,
                        Threat of Offensive Contact or Intent to Cause Offensive Contact
                        by Devereux. ..............................................................................10

                iv.     Plaintiff Fails to State a Claim for Intentional Infliction of Emotional
                        Distress (Count IX) Because Plaintiff Did Not Plead Outrageous
                        Actions or Intent to Cause Harm by Devereux. .......................11

        B.      Count XI of the Complaint Must be Stricken Because Plaintiff's Class Claim
                Is Legally Incapable of Meeting the Requirements of Fed. R. Civ. P. 23 .......14

                i.      Pre-Certification Disposition is Procedurally Appropriate When
                        Class Claims Are Irreparably Deficient. ...................................15

                ii.     Plaintiff Fails to Identify a Class-Wide Cause of Action. ..................18

                iii.    Plaintiff's Class Claims Do Not (and Cannot) Satisfy the
                        Requirements of Rule 23. ........................................................19

                        a.      Plaintiff cannot establish the class commonality required
                                by Rule 23(a)........................................................................21

                        b.      Neither Plaintiff nor his claims are sufficiently typical. ..........28

                        c.      Plaintiff is not an adequate representative of class interests....31

                        d.      Plaintiff's proposed class claim cannot meet the
                                cohesiveness requirements of Rule 23(b)(2)............................32

IV.     CONCLUSION....................................................................................................34

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abraham v. Ocwen Loan Servicing, LLC*,
  321 F.R.D. 125 (E.D. Pa. 2017)......................................................................32, 33

*Afzal v. BMW of North America, LLC*,
  No. 15-8009, 2020 WL 2786926 (D.N.J. May 29, 2020)......................................28

*Agriturf Mgt., Inc. v. Roe*,
  656 So.2d 954 (Fla. Dist. Ct. App. 1995) ..............................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................5

*Baby Neal for and by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994)......................................................................................28

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998)............................................................................20, 33

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)..................................................................................30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................5

*Bell v. Cheswick Generating Station*,
  No. 12-cv-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ..........................16, 17

*Birdman v. Office of the Gov.*,
  677 F.3d 167 (3d Cir. 2012)..................................................................................18

*Bucci v. Wachovia Bank, N.A.*,
  No. 08-1478, 2009 WL 1740503 (E.D. Pa. 2009) ..................................................5

*Chruby v. Kowaleski*,
  534 Fed. App'x. 156 (3d Cir. 2013)......................................................................18

*In re Cmty. Bank of N. Va.*,
  622 F.3d 275 (3d Cir. 2010)..................................................................................32

*De La Campa v. Grifols Am. Inc.*,
  819 So.2d 940 (Fla. Dist. Ct. App. 2002) ............................................................12

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)..............................................................................................34

*Diamond v. Rosenfeld,*
511 So.2d 1031 (Fla. Dist. Ct. App. 1987) .............................................................12

*Doe v. Allentown School Dist.,*
No. 06-CV-1926, 2007 WL 2814587 (E.D. Pa. 2007) ..........................................13

*Doe v. Evans, et al.,*
718 So.2d 286 (Fla. Dist. Ct. App. 1998), *rev'd on other grounds* ......................13

*Doe v. Liberatore, et al.,*
478 F.Supp.2d 742 (M.D. Pa. 2007) ........................................................................9

*Ferreras v. American Airlines, Inc.,*
946 F.3d 178 (3d Cir. 2019).....................................................................................21

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.,*
No. 14-1093, 2015 WL 12912337 (C.D. Cal. Mar. 16, 2015)................................18

*Gaston v. Exelon Corp.,*
247 F.R.D. 75 (E.D. Pa. 2007)..................................................................................31

*Gates v. Rohm & Haas Co.,*
265 F.R.D. 208 (E.D. Pa. 2010), *aff'd,* 655 F.3d 255 (3d Cir. 2011) .........................31, 32, 33

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982).............................................................................................17, 29

*Georgine v. Amchem Products, Inc.,*
83 F.3d 610 (3d Cir. 1996).........................................................................................31

*Glover v. Tacony Acad. Charter School,*
No. 18-56, 2019 WL 3105591 (E.D Pa. 2018) ......................................................12

*Goss v. Human Servs. Assocs.,*
79 So.3d 127 (Fla. Dist. Ct. App. 2012) ................................................................6, 9

*Gutierrez v. Johnson & Johnson,*
No. 01-5302, 2008 WL 2945987 (D.N.J. July 30, 2008) ......................................17

*Hohider v. United Parcel Service, Inc.,*
574 F.3d 169 (3d Cir. 2009).................................................................................16, 33

*Huber v. Taylor,*
No. 002-304, 2011 WL 4553154 (W.D. Pa. Sept. 29, 2011)..................................32

*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.,*
783 So.2d 353 (Fla. Dist. Ct. App. 2001) .............................................................6, 9

*Jines et al v. Devereux,*
   No. 2:21-cv-00346 (E.D. Pa.) .................................................................................29

*John Doe 6 v. Pennsylvania State Univ.,*
   982 F.Supp.2d 437 (E.D. Pa. 2013) (Brody, J.) ...................................................7, 8

*Kappe Assocs., Inc. v. Chesapeake Environ. Equip. LLC,*
   No. 15-02211, 2016 WL 1257665 (E.D. Pa. Mar. 31, 2016) ...........................18, 19

*Karvaly v. eBay, Inc.,*
   245 F.R.D. 71 (E.D.N.Y. 2007) .............................................................................30

*Landsman & Funk PC v. Skinder-Strauss Assocs.,*
   640 F.3d 72 (3d Cir. 2011)..........................................................................16, 17, 34

*Matsumoto v. American Burial and Cremation Servs., Inc.,*
   949 So.2d 1054 (Fla. Dist. Ct. App. 2006) ............................................................12

*McCracken v. Ford Motor Corp. Co.,*
   588 F.Supp.2d 635 (E.D. Pa. 2008) .......................................................................11

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
   209 F.R.D. 323 (S.D.N.Y. 2002) ...........................................................................32

*Mladenov v. Wegmans Food Markets, Inc.,*
   308 F.R.D. 127 (D.N.J. 2015)................................................................................16

*Pinson v. United States,*
   826 Fed. App'x 237 (3d Cir. 2020)........................................................................21

*In re Processed Egg Prods. Antitrust Litig.,*
   312 F.R.D. 124 (E.D. Pa. 2015)............................................................................31

*Ramsay v. Frontier, Inc.,*
   No. 19-03544, 2020 WL 4557545 (D. Colo. July 30, 2020) .................................27

*Ross v. Lockheed Martin Corp.,*
   No. 16-2508, 2020 WL 4192566 (D.D.C. July 21, 2020) .....................................17

*Rowe v. E.I. Dupont De Nemours and Co.,*
   262 F.R.D. 451 (D.N.J. 2009)................................................................................33

*In re Schering Plough Corp. ERISA Litigation,*
   589 F.3d 585 (3d Cir. 2009).............................................................................29, 30

*Seagraves v. Phila. Police Dep't,*
   No. 16-1219, 2016 WL 2735679 (E.D. Pa. May 11, 2016)..............................18, 19

*Semenko v. Wendy's Int'l, Inc.*,
   No. 12-cv-0836, 2013 WL 1568407 (W.D. Pa. April 12, 2013) ...........................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 US 393 (2010) ...........................................................................................................15

*In re Skelaxin (Metaxalone) Antitrust Litigation*,
   299 F.R.D. 555 (E.D. Tenn. 2014)......................................................................................31

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ........................................................................................26, 27

*Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*,
   454 So.2d 52 (Fla. Dist. Ct. App. 1984) ............................................................................10

*Swinarski v. Keller*,
   529 So.2d 1208 (Fl. Dist. Ct. App. 1988) ..........................................................................12

*T.R. v. Sch. Dist. of Philadelphia*,
   No. 15-4782, 2019 WL 1745737 (E.D. Pa. Apr. 18, 2019)........................................20, 26, 27

*Thompson v Merck & Co., Inc.*,
   No. 01-cv-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004).....................................................16

*Vernon v. Med. Mgt. Assocs. of Margate, Inc.*,
   912 F.Supp. 1549 (S.D. Fla. 1996) .....................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................... *passim*

*Williams v. Potomac Family Dining Group Operating Company*,
   LLC, 2019 WL 5309628 (D. Md. 2019).............................................................................27

**Statutes**

ADA ............................................................................................................................................25

Americans with Disabilities Act .................................................................................................25

**Other Authorities**

Fed. R. Civ. P. 16 .......................................................................................................................17

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................................16

Fed. R. Civ. P. 26 .......................................................................................................................17

Fed. R. Civ. P. 42 .......................................................................................................................17

Federal Rule of Civil Procedure 12(b)(6) ...................................................................5

Federal Rule of Civil Procedure 23 ................................................................ *passim*

Federal Rule of Civil Procedure 23(a) and (b)..........................................................14

Federal Rule of Civil Procedure 23(b)(2) ....................................................... *passim*

IDEA ..........................................................................................................................26

John C.P. Goldberg, Benjamin C. Zipursky, *Unrealized Torts*, 88 Va. L. Rev.
     1625, 1651 (2002)..............................................................................................21

1 *McLaughlin on Class Actions* § 5:15 (10th ed.) ....................................................33

*The Philadelphia Inquirer* ..........................................................................................1

Philadelphia Inquirer article......................................................................................29

Rule 12(f)(2) .............................................................................................................16

Rule 23(a)...................................................................................................... *passim*

Rule 23(a)(4) .............................................................................................................32

Rule 23(a)'s...........................................................................................................22, 25

Rule 23(b)(2)'s...........................................................................................................31

Rule 23(b)(3)...........................................................................................................31, 32

Rule 23(c)(1)(A) .......................................................................................................16

Rule 23's.................................................................................................................17, 28

Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f) ...............................................................16

## I.   __INTRODUCTION__

The Devereux Foundation is a large, national non-profit behavioral health organization operating in thirteen (13) states.  For more than a hundred years, Devereux has provided critically important care to children and adults with autism, developmental disabilities, emotional and behavioral disorders and mental illness.  Fueled by several sensationalized and unsubstantiated articles in *The Philadelphia Inquirer*, much of which are regurgitated in Plaintiff's Complaint, Plaintiff purports to bring this class action on behalf of himself and tens of thousands of youth who are in any Devereux program or facility throughout the nation.

Plaintiff accuses the Devereux Defendants of promoting a "culture of systematic physical, emotional and sexual abuse" and failing to keep minors safe.  Relying on generalized and conclusory allegations, including reviews on a social media site,[1]  Plaintiff alleges that the Devereux Defendants were aware for decades of physical, sexual, and emotional abuse occurring in its facilities but failed to adequately address the problems.  In support of his individual claims, Plaintiff alleges that Devereux staff members "forcibly restrained" him and withheld food on numerous occasions during his ongoing residence at Devereux's Florida Viera Campus.  While Plaintiff purports to represent Devereux residents who were allegedly sexually abused, he does not allege he was sexually abused and makes claims only for alleged physical abuse and mistreatment.

Plaintiff's Complaint spends too much time and space introducing spurious allegations ripped from the headlines and too little ensuring that his claims are properly pleaded.  Indeed, the Complaint is rife with claims that fail as a matter of law, all while Plaintiff  improperly attempts to knit together a nation of current Devereux patients, without identifying a class wide cause of

---

[1]   Even if the online criticism were relevant to Plaintiff's claim (it is not), its lack of reliability entitles it to no deference here.

action, establishing any commonality among the group or demonstrating that his claims are typical of those others he seeks to represent.  As such the Court can and should address the following issues at this stage of the litigation.

First, Plaintiff's Complaint includes a number of claims that fail as a matter of law and must be dismissed.  For example, contrary to well-settled law, Plaintiff attempts to hold Devereux vicariously liable for intentional, criminal and outrageous physical assaults allegedly committed by Devereux employees.  These alleged criminal acts, if true, were all outrageous, personally motivated, and were certainly not done for Devereux's benefit.  Accordingly, as a matter of law these alleged offenses were not committed in the scope of the abusers' employment and cannot serve to support a vicarious liability claim against Devereux.

Plaintiff also improperly attempts to state a claim for assault and battery against the Devereux Defendants without identifying any offensive contact, threat of offensive contact or intent to cause offensive contact by Devereux itself—as opposed to its employees.  Further, Plaintiff's claim for intentional infliction of emotional distress fails because Devereux's actions, as contrasted with the alleged actions of the unidentified individual employees, were not extreme or outrageous and no allegation can be made that Devereux intended to cause Plaintiffs emotional harm.  These claims fail as a matter of law and must be dismissed.

Finally, it is facially obvious Plaintiff's putative class claim cannot meet the requirements of Federal Rule of Civil Procedure 23.  Plaintiff purports to represent a class which unbounded by any geographic limits, devoid of commonality, and lacking any unifying class cause of action. Indeed, as alleged, any claim Plaintiff seeks to assert on behalf of his defined class would require consideration of its members' highly individualized medical diagnoses, personal histories, and experiences at a Devereux facility.  No amount of class discovery will enable Plaintiff to satisfy

the requirements of the Rule 23, and the Devereux Defendants therefore request that the Court dismiss Count XI and/or strike the class allegations from Plaintiff's Complaint.

## II.   STATEMENT OF FACTS

Plaintiff alleges that the Devereux Defendants are private providers of behavioral health services operating 21 campuses in 13 states and treating patients with, *inter alia*, advanced behavioral, intellectual, developmental and mental health needs.  (Complaint, ¶ 1.)  Plaintiff purports to bring this action on behalf of thousands of youth who are currently enrolled in any Devereux program or facility throughout the nation.  (*Id.* at ¶ 20.)  Additionally, the Complaint sets forth Plaintiff's individual claims based on alleged physical and verbal abuse he claims he sustained during his ongoing residence at Devereux's Viera, Florida residential treatment facility.  (*Id.* at ¶¶ 64, 66-69.)

### A.   Plaintiff's Individual Claims

Plaintiff alleges that he was placed in Devereux's Viera, Florida facility in Fall 2020 after Plaintiff's mother reported to the Florida Department of Children and Families that Plaintiff's father was physically abusing Plaintiff.  (*Id.* at ¶¶ 58-62.)  Plaintiff has now resided in Devereux's Viera, Florida facility for over six months.  (*Id.* at ¶ 64.)  Plaintiff alleges that he has an autism disorder which may make him prone to exhibit physically aggressive behavior.  (*Id.* at ¶ 65.)  Plaintiff alleges that during his ongoing residence in Devereux's facility he was forcibly restrained, taunted, and manipulated by unidentified Devereux employees, including having food withheld and having his eyes covered by an employee's hands.  (*Id.* at ¶¶ 66-69.)  Plaintiff generally accuses the Devereux Defendants of failing to prevent these acts and alleges, *inter alia*, that Devereux inadequately supervised it residents, failed to properly train and monitor its staff, did not properly surveil its facilities, failed to investigate and take corrective actions in response

to abuse, did not properly screen prospective employees, and did not enforce necessary policies to prevent future abuse.  (*Id.* at ¶¶ 74, 77, 84, 89, 91, 96, 132, 136.)  Based on these allegations, Plaintiff brings individual claims for Negligence (Count I), Negligent Hiring (Count II), Negligent Retention (Count III), Negligent Supervision (Count IV), Gross Negligence (Count V), Vicarious Liability (Count VI), Assault and Battery (Count VII), Negligent Infliction of Emotional Distress (Count VIII), Intentional Infliction of Emotional Distress (Count IX) and Breach of Fiduciary Duty (Count X).  Devereux now seeks dismissal with prejudice of Counts VI, VII, and IX.

### B.     Purported Class Action Allegations

Plaintiff, seemingly in support of a putative nationwide class claim, makes additional generalized allegations that Devereux, by its actions and omissions, promoted a "culture of systematic physical, emotional and sexual abuse" and failed to "enact sufficient measures to ensure the safety of their youth" despite Devereux's awareness of the occurrences of abuse in its facilities.  (*Id.* ¶ 2-4, 37, 39, 74, 80, 91, 108, 133, 136.)  Most of the support for these "facts" is pulled directly from the text of sensationalized news articles and a social media site (Glassdoor.com)—rather than Plaintiff's own experiences.  (*Id.* at ¶¶ 3-5, 15, 28-46, 49-57.) Despite the narrow nature of Plaintiff's individual claims—which are limited to allegations of physical and verbal abuse at one Devereux facility—Plaintiff alleges that his claims are typical of a broad group of potential class members—"[a]ll individuals in Devereux Advanced Behavioral Health programs and facilities"—and alleges that the potential class shares a common injury, the "heightened risk of sexual, physical and emotional abuse and assault by Devereux." (*Id.* at ¶¶ 20, 24, 143.)  On behalf of the putative nationwide class, Plaintiff seeks injunctive and equitable relief, including that Devereux be required to implement and enforce yet to be

identified "best practices" for the prevention of, and appropriate response to, physical, sexual and emotional abuse. (*Id*. at ¶¶ 146, Prayer for Relief.) Devereux requests that the Court dismiss Count XI and/or strike the class allegations from Plaintiff's Complaint.

## III.   ARGUMENT

### A.   Counts VI, VII and IX of the Complaint Must be Dismissed Pursuant to Fed. R. 12(b)(6) Because Plaintiffs Fail to State a Claim.

#### i.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must contain factual allegations sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations cannot consist of mere labels and conclusions or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, they must raise a right to relief above the speculative level. *Bucci v. Wachovia Bank, N.A.,* No. 08-1478, 2009 WL 1740503, at *2 (E.D. Pa. 2009) (citing *Twombly*, 550 U.S. at 570). Factual allegations must be accepted as true and viewed in the light most favorable to the plaintiff, but a court is not bound to accept as true unsupported conclusions or conclusory allegations." *Id*. (citing *In re Tower Air, Inc*., 416 F.3d 229, 236 (3d Cir. 2005)).

#### ii.   Plaintiff Cannot State a Claim for Vicarious Liability (Count VI) Against Devereux Based on its Employees' Alleged Outrageous and Personally Motivated Actions.

In Count VI, Plaintiff charges the Devereux Defendants with vicarious liability for alleged physical and verbal abuse perpetrated by unidentified Devereux employees. Specifically, Plaintiff avers that Devereux is vicariously liable for these employees' inappropriate acts because Devereux "fail[ed] to discipline its staff, take corrective action, and/or report child abuse"

despite being "aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients." (Compl. ¶¶ 109.) Because the alleged abusers' actions (if true) were outrageous criminal violations, were motivated by personal reasons, and were clearly done outside the scope of their employment, these actions cannot form the basis of Devereux's vicarious liability. Count VI must therefore be dismissed.

An employer cannot be vicariously liable for the "tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest…of the employer." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So.2d 353, 356 (Fla. Dist. Ct. App. 2001). Under Florida law (where Plaintiff resided at Devereux), the following test is used to determine when an employee's actions are, and are not, performed within the scope of their employment:

> An employee's conduct is within the scope of his employment, where (1) the conduct is the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.

*Id*. at 357. Importantly, if the act is done by the employee for personal reasons or done in an outrageous manner, it is not within the scope of employment and cannot give rise to vicarious liability of the employer. *Id.* at 358. It is well-established that "…batteries by employees are held to be outside the scope of an employee's employment, and therefore, insufficient to impose vicarious liability on the employer." *Id*. at 357. The question of "whether an employee is acting within the course and scope of employment, where the facts are not in dispute, is that of law." *Goss v. Human Servs. Assocs.*, 79 So.3d 127, 132 (Fla. Dist. Ct. App. 2012).

Here, while Plaintiff alleges that the perpetrators acted during their employment, there can be no doubt that they were not acting within the *scope* of their employment. An employer

will not be liable for personally motivated and outrageous actions of its employees, even where the perpetrator's employment created the "**opportunity**…to do the harm." *John Doe 6 v. Pennsylvania State Univ.*, 982 F.Supp.2d 437, 442 (E.D. Pa. 2013) (Brody, J.) (applying nearly identical Pennsylvania caselaw).

This Court has previously addressed these exact points in *John Doe 6 v. Pennsylvania State University*, 982 F.Supp.2d at 441-446 (Brody, J.).  There, Penn State moved to dismiss the plaintiff's vicarious liability claim arising out of plaintiff's allegations that one of its employees sexually assaulted plaintiff on Penn State's premises during the course of the employee's employment.  *Id.* at 438-39.  Applying nearly identical Pennsylvania law to the Florida law discussed above, the Court stated "courts have consistently held that sexual abuse of minors falls outside an employee's scope of employment, because such acts of abuse are not the kind and nature he/she was employed to perform and not for the employer's benefit."  *Id.* at 442.  The Court determined that the complaint failed to explain how sexual abuse "was the kind of act that PSU employed [the employee] to perform or how [the employee] was actuated by intent to serve PSU" even where plaintiff alleged that the abuse occurred within Penn State's facilities.  *Id.* at 444-45.  Based on a long and consistent line of decisions holding that an organization, like Devereux, is not vicariously liable for alleged abuse of minors by its employees, the Court granted Penn State's motion to dismiss plaintiff's vicarious liability claim.  *Id.* at 446.

Further, in *B.M. v. Northeastern Educational Intermediate Unit 19*, the court addressed a nearly identical claim, with nearly identical facts, to Plaintiff's Count VI.  516 F.Supp. 424, 429-32 (M.D. Pa. 2007).  There, the Intermediate Unit moved to dismiss a vicarious liability claim arising out of the plaintiff's allegations that an Intermediate Unit employee subjected plaintiff to physical abuse, including physically restraining him with duct tape and bungee cords, hitting

him, leaving cuts and bruises on his body, punishing him by depriving him of the necessary technology he used to communicate his basic needs and using other "aversive techniques…designed to establish a negative association with a specific behavior," while allegedly acting in the course of performing her duties as an autism support teacher at plaintiff's school, during school hours.  516 F.Supp. at 431.  The court determined that the employee's actions, which were all violations of the school code, could "in no fashion be said to have been undertaken, even in part, to serve her employers" nor could the "alleged intentional uses of aversive techniques have been expected by [the defendants]."  *Id.* at 446.  Because the employee's actions were "not actuated by an intent to perform the business of the employer" and were deemed outside the scope of her employment, the court granted the Intermediate Unit's motion to dismiss the vicarious liability claim.  *Id.*

Here, Plaintiff bases his vicarious liability claim on Devereux's employees' similar use of "aversive techniques" including the use of restraints, withholding food and covering Plaintiff's eyes.  (Compl. ¶¶ 66-69.)  Plaintiff generally accuses the Devereux Defendants of failing to prevent these acts and alleges, *inter alia*, that Devereux inadequately supervised it residents, failed to properly train and monitor its staff, did not properly surveil its facilities, failed to investigate and take corrective actions in response to abuse, did not properly screen prospective employees, and did not enforce necessary policies to prevent future abuse.  (*Id*. at ¶¶ 38, 40, 48, 74, 78, 91, 96, 99, 128, 136, 145.)  These generalized allegations do not support Devereux's vicarious liability for its employees' personally motivated and outrageous actions that, just as is *B.M.*, were not undertaken to effectuate Devereux's business purpose as a behavioral healthcare provider.

This is further supported by numerous courts applying Florida law and consistently holding that abuse of a minor falls outside the scope of employment because such intentional and criminal acts are outrageous, are not the type of act that an employee is expected to perform and are not done for the employer's benefit.  *See e.g., Iglesia Cristiana La Casa Del Senor, Inc.*, 783 So.2d at 358 (dismissing vicarious liability claim where pastor's assault of a minor was personally motivated and not in furtherance of church objectives); *Agriturf Mgt., Inc. v. Roe*, 656 So.2d 954, 955 (Fla. Dist. Ct. App. 1995) (employer was not vicariously liable for assault of child in employer's trailer by employer's president because it was not in furtherance of employer/employee relationship); *Goss,* 79 So.3d at 132 (holding that the operator of a "group care facility that provided residential and therapeutic services for children with emotional difficulties" was not vicariously liable for its employee's abuse of a child, even though the abuse occurred on the premises, because it was not in furtherance of the employee's employment); *see also Doe v. Liberatore, et al*., 478 F.Supp.2d 742, 758 (M.D. Pa. 2007) (holding that a church was not vicariously liable for priest's assault of a child, even though the assault occurred in the church and the church had prior notice of the priest's improprieties, because the priest's actions were "both outrageous and certainly not actuated by any purpose of serving [the church].").

The depth and clarity of caselaw on these issues demonstrates that Plaintiff's vicarious liability claim is improper.  The alleged conduct of Plaintiff's abusers, if true, was criminal, outrageous, and committed for personal reasons, not a desire to serve Devereux.  Accordingly, the Devereux Defendants cannot be held vicariously liable for their employees' actions and Count VI should therefore be dismissed with prejudice.

### iii. Plaintiff's Claim for Assault and Battery (Count VII) Against Devereux Fails Because He Cannot Allege any Offensive Contact, Threat of Offensive Contact or Intent to Cause Offensive Contact by Devereux.

In Count VII, Plaintiff purports to bring an assault and battery claim against Devereux directly.  Notably absent from Plaintiff's Complaint are any allegations that Devereux, as distinct from the alleged employee abusers, made any offensive physical contact with Plaintiff, or threat thereof, or intended to abuse Plaintiff.  Accordingly, Count VII must be dismissed.

Under Florida law, "[a]n 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril."  *Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. Dist. Ct. App. 1984).  "[I]t must be premised upon an affirmative act—a threat to use force, or the actual exertion of force."  *Id.*  Similarly, "a battery consists of the intentional infliction of a harmful or offensive contact upon the person of another."  *Id.*  It is well-established that

> [t]he defendant must have done some positive affirmative act…which must cause, and must be intended to cause, an unpermitted contact. Mere negligence, or even recklessness which only creates a risk that contact will result, may afford a distinct cause of action itself, but under modern usage of the term is not enough for battery.

*Id*. at 54-55.  The defendant must have "*intended* to cause the contact."  *Vernon v. Med. Mgt. Assocs. of Margate, Inc.*, 912 F.Supp. 1549, 1556 (S.D. Fla. 1996).  Where, as here, a plaintiff fails to allege any harmful or offensive contact, or any attempt to cause the same, by the particular defendant against whom plaintiff attempts to state an assault and battery claim, the court must dismiss the claim as a matter of law.  *See e.g.*, *Sullivan*, 454 So.2d at 55 (dismissing assault and battery claim where defendant did not make any offensive contact with plaintiff); *Vernon*, 912 F.Supp. at 1556 (granting motion to dismiss assault and battery claim where

complaint did not allege that specific defendant committed any acts of battery); *McCracken v. Ford Motor Corp. Co*., 588 F.Supp.2d 635, 645 (E.D. Pa. 2008) (dismissing assault and battery claim where complaint alleged only that defendant "knew or should have known" about likelihood of offensive contact, but failed to allege that defendant intentionally or deliberately caused the offensive contact).

Plaintiff's assault and battery claims against Devereux fail to allege any offensive contact, or any attempt to make any offensive contact, by Devereux itself.  (Compl. ¶¶ 113-118.)  Further, Plaintiff does not allege that Devereux had the intent to intentionally commit assault and battery against Plaintiff.   Rather, Plaintiff repeatedly avers that Devereux acted either negligently, recklessly, or with knowledge of the likelihood of abuse, but Plaintiff did not, and could not, allege that Devereux <u>intended</u> his harm.  (*Id.* at ¶¶ 64, 85, 98, 100, 124, 126, 130.)  Instead, Plaintiff alleges that Devereux's employees committed all of the actions constituting assault and battery.  (*Id.* at ¶¶ 113-114.)  Given Plaintiff's allegations, it is clear that only Devereux's employees—not Devereux itself as a nonprofit entity—may be <u>directly</u> liable for the intentional torts of assault and battery.

Finally, to the extent Count VII is construed as a claim for vicarious liability against Devereux, it is duplicative of Plaintiff's Count VI and must be dismissed as a matter of law for all of the reasons presented in Section III.A.ii., *supra*.

Accordingly, Count VII should therefore be dismissed with prejudice.

> ### iv. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress (Count IX) Because Plaintiff Did Not Plead Outrageous Actions or Intent to Cause Harm by Devereux.

In Count IX, Plaintiff charges the Devereux Defendants with intentional infliction of emotional distress ("IIED").  Because Plaintiff did not sufficiently plead that Devereux acted outrageously or that Devereux intended the resulting harm to him, Count IX should be dismissed.

To establish a claim for IIED, a plaintiff must allege (1) extreme and outrageous conduct, (2) that is intentional or reckless, (3) that causes emotional distress, and (4) the emotional distress is severe.  *See Swinarski v. Keller*, 529 So.2d 1208, 1209 (Fl. Dist. Ct. App. 1988) (citing *Metro. Life v. McCarsen*, 467 So.2d 277 (Fla. 1985) and Restatement (Second) of Torts § 46 (1965)).  A key component of an IIED claim is that the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  This is a high standard.  *See e.g.*, *Matsumoto v. American Burial and Cremation Servs., Inc.*, 949 So.2d 1054, 1057 (Fla. Dist. Ct. App. 2006) (mishandling of corpse did not rise to the level of outrageousness necessary to make out a cause of action for IIED);  *De La Campa v. Grifols Am. Inc.*, 819 So.2d 940, 944 (Fla. Dist. Ct. App. 2002) (holding that sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress).  "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery."  *Diamond v. Rosenfeld*, 511 So.2d 1031, 1034 (Fla. Dist. Ct. App. 1987) (quoting *Scheller v. Am. Med. Int. Inc.*, 502 So.2d 1268, 1271 (Fla. Ct. Dist. App. 1987)).

Here, Plaintiff cannot sustain a cognizable claim for IIED against the Devereux Defendants because he has not alleged any conduct **by Devereux** that is extreme or outrageous. Plaintiff alleges in conclusory fashion that the Devereux Defendants' permitted a culture of systemic abuse and that the Devereux Defendants failed to enforce adequate policies, procedures and responses to abuse of their patients.  (Compl. ¶¶ 133.)  Devereux's conduct, as distinguished from the conduct of the alleged abusers, even if treated as true for purposes of this motion only, is not outrageous as matter of law and cannot support an IIED claim.  *See Glover v. Tacony*

*Acad. Charter School*, No. 18-56, 2019 WL 3105591, at *5 (E.D Pa. 2018) (dismissing IIED claim where allegations that school employees mistreated student and that school failed to prevent it "[did] not approach the high standard" necessary to state a IIED claim); *Doe v. Evans, et al.*, 718 So.2d 286, 293 (Fla. Dist. Ct. App. 1998), *rev'd on other grounds*, (holding that priest's sexual misconduct during counseling session was not extreme or outrageous and affirming dismissal of IIED claim).

Moreover, there are no facts from which this Court could conclude that Devereux acted with the intent of causing emotional harm.  On this point, this Court, in dismissing an IIED claim based on allegations of abuse, stated, "[i]n cases involving both sexual assault or harassment and intentional infliction of emotional distress, it is generally only the perpetrator who is considered liable for an intentional infliction claim."  *Doe v. Allentown School Dist.*, No. 06-CV-1926, 2007 WL 2814587, at *10 (E.D. Pa. 2007).  There, the Court analogized the case to another case in which "the court concluded that a diocese accused of covering up a priest's abusive past was not liable for intentional infliction of emotional distress because there was no evidence that it intended to cause harm to the ultimate victims of the crime."  *Id.* (citing *Gibson v. Brew*, 952 W.2d 239, 249 (Mo. 1997)).  The court explained "[t]hese results are not surprising because the tort is designed to provide compensation only for outrageous acts done for the *purpose* of causing emotional distress…[i]n the context of sexual assault, typically the assailant alone intends the harm."  *Allentown School Dist.*, 2007 WL 2814587, at *10 (emphasis in original) (dismissing IIED claim where plaintiffs did not allege that the defendants intended that children would be abused by their actions).  Plaintiff alleges no facts demonstrating that the Devereux Defendants acted with the intent to cause him emotional distress.  Indeed, other than Plaintiff's boilerplate use of the words "intentionally" and "outrageously" there is nothing in the Complaint

to suggest that Devereux deliberately acted to cause Plaintiff's distress.  (Compl. ¶¶ 130-133).
As such, Plaintiff's IIED claim must be dismissed with prejudice.

### B.    Count XI of the Complaint Must be Stricken Because Plaintiff's Class Claim Is Legally Incapable of Meeting the Requirements of Fed. R. Civ. P. 23

In addition to his individual claims, Plaintiff asserts a putative nationwide class "claim" pursuant to Federal Rule of Civil Procedure 23(b)(2), seeking sweeping injunctive relief on behalf of "[a]ll individuals in Devereux Advanced Behavioral Health programs and facilities." Compl. at ¶ 20.  Although the *legal predicate* for that relief is left unstated (and thus remains unknown), Plaintiff nonetheless contends that Rule 23(b)(2) is the appropriate mechanism for his claim because Devereux "has acted or refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class a whole."  Id. at ¶ 27.  Even a cursory review of Plaintiff's Complaint belies this characterization.

Because class actions are "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" a plaintiff seeking to represent absent class members must meet the requirements of Federal Rule of Civil Procedure 23(a) and (b) which, together, ensure (i) that that the putative class is manageable and (ii) that absent interests will be protected.  *Mielo v. Steak 'n Shake Operations*, 897 F.3d 467, 482 (3d Cir. 2018) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).  Here, this means Plaintiff must establish that his class is sufficiently numerous, that it shares essential "common" traits, that his own claims are typical of his class claims, that he is an adequate class representative, and that his proposed class is "cohesive" enough that the relief sought will be indivisible in nature.

It is clear from the face of Plaintiff's Complaint that—even accepting all factual allegations as true—he cannot and will not meet these burdens.  Instead, Plaintiff seeks to represent a widely divergent class of individuals, each with a unique backstory, residing in over a

14

dozen different facilities where they receive varied treatments for a broad array of developmental and mental health conditions and disabilities.  To the extent Plaintiff's lawsuit implicates any *actual* injury, those too are varied, encompassing physical, sexual, and emotional abuse.

Plaintiff's requested relief reflects this diversity: he does not seek a single injunction indivisibly directed to the class as a whole, as Rule 23(b)(2) requires, but instead asks this Court to engage in a pervasive custodial intervention into Devereux's top-to-bottom management. Among the many issues subject to Plaintiff's requested relief are hiring, training, supervision, the implementation of new security and supervision policies, the enforcement of old policies, the adoption of new therapeutic and behavioral protocols, and even architectural accommodations specific to individual facilities.  *See* Compl. at ¶¶ 26, 146.  Much of Plaintiff's Complaint, and most of his requested relief, is legally and factually unrelated to his personal experience.

Put simply, Plaintiff cannot establish the commonality, typicality, or adequacy required by Rule 23(a).  Nor has he alleged a cohesive class "claim," as required by Rule 23(b)(2).  No amount of discovery will cure the inherent defects of Plaintiff's pleading.

### i.    Pre-Certification Disposition is Procedurally Appropriate When Class Claims Are Irreparably Deficient.

The Supreme Court has described the Rule 23 framework as "a one-size-fits-all formula for deciding the class-action question."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 US 393, 399 (2010).  As touched on above, Rule 23 imposes a number of threshold requirements on any putative class claim.  First, Plaintiff "must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Id.*  Next, Plaintiff must meet the prerequisites of Rule 23(b)(2).  The "key" to meeting this standard "is 'the indivisible nature of the injunctive or declaratory remedy warranted," i.e., that the relief is appropriate "as to

all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 198 (3d Cir. 2009) (Rule 23(b)(2) is "intended for classes where 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'") (quoting Fed. R. Civ. P. 23(b)(2)).

Where, as here, it is clear from the face of a complaint that a plaintiff's class allegations are incapable of meeting these requirements, this Court may issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D); *see also Thompson v Merck & Co., Inc.*, No. 01-cv-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (confirming court's "authority to strike the class allegations from the complaint" before "the plaintiffs have filed a motion for class certification.").[2]  Although Rule 23 is silent about specific timing, early disposition of class claims is in keeping with both the Rule's practical, case-specific approach to resolution of class status and the demands and costs of complex litigation.  Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

Plaintiff will no doubt argue that disposing of his class claim on the pleadings is premature because, "in most cases, some level of discovery is essential" to determining whether certification is warranted.  *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (emphasis added).  *Most* does not mean *all*, however.  Although discovery may help

---

[2]  Although Rule 23 does not specify any specific mechanism for early resolution of deficient class claims, courts have applied several different approaches, generally pursuant to Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f). *See Bell v. Cheswick Generating Station*, No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (noting that, "together," these Rules "provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification.); *see also Mladenov v. Wegmans Food Markets, Inc.*, 308 F.R.D. 127, 130 (D.N.J. 2015)(acknowledging early dismissal "pursuant to Rule 12(f)(2)," "subsection 12 (f)(1)," and "Rule 23(c)(1)(A)").

some plaintiffs salvage poorly pled but colorable allegations, it cannot cure inherent legal deficiencies.  "Sometimes," the Supreme Court has explained, "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (emphasis added).  And sometimes, the Third Circuit has similarly observed, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC*, 640 F.3d at, 93, n.30; *see also Semenko v. Wendy's Int'l, Inc.*, No. 12-cv-0836, 2013 WL 1568407, at *3 (W.D. Pa. April 12, 2013) ("[W]here it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the allegations before a motion for class certification is filed.") (quoting *NBL Flooring, Inc. v. Trumball Ins. Co.*, No. 10-cv-4398, 2011 WL 4481918, at *1 (E.D. Pa. Sept. 11, 2011)).  Put simply, class discovery is inappropriate where, as here, "no amount of discovery will demonstrate that the class can be maintained[.]" *Bell*, 2015 WL 401443, at *2.

Moreover, a proactive approach to facially deficient class claims aligns with Rule 23's allocation of burdens that, together, require that would-be class representatives "advanc[e] a *prima facie* showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Semenko*, 2013 WL 1568407, at *2.  Allowing expansive and expensive class discovery by plaintiffs who make no attempt to meet Rule 23's requirements would be unfair, inefficient, and inequitable.[3]

---

[3]    The importance of these principles is evident in this Court's broad discretion over discovery and case management.  *See, e.g.*, Fed. R. Civ. P. 16, Fed. R. Civ. P. 23, Fed. R. Civ. P. 26, and Fed. R. Civ. P. 42; *see also Gutierrez v. Johnson & Johnson*, No. 01-5302, 2008 WL 2945987, at *3 (D.N.J. July 30, 2008) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985)); *cf. Ross v. Lockheed Martin Corp.*, No. 16-2508, 2020 WL 4192566, at *9 (D.D.C. July 21, 2020) (class discovery "is not an opportunity to engage in a 'fishing expedition' . . . that cannot plausibly result in a common injury across the putative

### ii. Plaintiff Fails to Identify a Class-Wide Cause of Action.

The first step in asserting a viable class claim is identifying a class-wide cause of action. Plaintiff fails to do so: injunctive relief "is a remedy rather than a cause of action," *Chruby v. Kowaleski*, 534 Fed. App'x. 156, 160 (3d Cir. 2013), and, as a result, a plaintiff "must have a cause of action to merit an injunction." *Birdman v. Office of the Gov.*, 677 F.3d 167, 172 (3d Cir. 2012); *see also Seagraves v. Phila. Police Dep't*, No. 16-1219, 2016 WL 2735679, at *3 (E.D. Pa. May 11, 2016); *Kappe Assocs., Inc. v. Chesapeake Environ. Equip. LLC,* No. 15-02211, 2016 WL 1257665, at *12 (E.D. Pa. Mar. 31, 2016).

The closest Plaintiff comes is a cursory assertion that Devereux is subject to a handful of generic "duties" imposed under undefined "federal and state law." He provides no information regarding the source, standard, or scope of those duties. This omission is glaring given the nationwide sweep of his class definition, encompassing Devereux facilities in Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Texas. Compl. at ¶ 12. Thus, to the extent Plaintiff seeks to base his class claim on yet-unspecified state common law or statutory duties, there are at least thirteen varieties of "state law" that could control depending on the facility at issue. *See id.* at ¶ 12 n.4.

The ephemerality of Plaintiff's class claim stands in sharp contrast to his *individual* claims, which include common law causes of action for negligence (Count I), negligent hiring (Count II), negligent retention (Count III), negligent supervision (Count IV), gross negligence (Count V), vicarious liability (Count VI), assault and battery (Count VII), negligent and

---

class"); *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-1093, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) (denying class discovery and noting that, if class claims were sufficient to survive a "motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery").

intentional infliction of emotional distress (Counts VIII and IX), and breach of fiduciary duty (Count X). For himself, Plaintiff seeks individual compensatory and punitive damages, pain and suffering, and pre-judgment interest. The differences between Plaintiff's individual and class claims suggest his vagueness is strategic, not the product or inartful pleading or inadvertent omission. Only by avoiding particulars can he shoehorn his sprawling, amorphous allegations into the procedural constraints of Rule 23; no single legal predicate is *capable* of encompassing Plaintiff's entire class. Moreover, only by ignoring the need for some class-wide cause of action can Plaintiff justify the lack of any actual class-wide injury. Instead he alleges that his class is at a "heightened risk" of physical, emotional, and sexual abuse. *See id.* at ¶ 143.

Plaintiff should not be allowed to proceed into class discovery without first identifying a class-wide cause of action that serves as the basis for a viable Rule 23(b)(2) action and establishes legal parameters for the issues subject to class adjudication, thus permitting efficient and effective class discovery. At a minimum, Plaintiff's costly and burdensome remedies must be predicated on an actual legal claim. As explained in more detail below, Plaintiff cannot avoid the strictures of Rule 23 by alleging a sprawling class action "claim" held together by nothing more than the fact that his "class" currently resides at a Devereux facility.[4]

### iii.  Plaintiff's Class Claims Do Not (and Cannot) Satisfy the Requirements of Rule 23.

Beyond the threshold necessity of a colorable class-wide legal predicate, Plaintiff's class claim is also subject to two separate (if sometimes overlapping) sets of requirements. Pursuant to Rule 23(a), he must show that his class is so numerous that joinder is impossible, that its

---

[4] Fed. R. Civ. P. 12(b)(6) provides an additional basis upon which this Court may dismiss Plaintiff's "claim" for injunctive relief (Count XI). *See e.g.*, *Seagraves,* 2016 WL 2735679, at *3 (dismissing "nonspecific 'injunctive relief' claim pursuant to Fed. R. Civ. P. 12(b)(6) because "an injunction is a form of relief, not a cause of action, and was improperly designated as a separate count."); *Kappe Assocs., Inc.*, 2016 WL 1257665, at *12 (same).

members share sufficient legal and factual commonality, that his claims are typical of the class in general, and that he will serve as an "adequate" class representative. Fed. R. Civ. P. 23(a).  In each instance, these requirements are imposed to ensure that the "exceptional" mechanism of class treatment is warranted, that his claims are a procedural fit for aggregate litigation, and that the interests of his absent class members will be represented and protected.  *See T.R. v. Sch. Dist. of Philadelphia*, No. 15-4782, 2019 WL 1745737, at *9 (E.D. Pa. Apr. 18, 2019) (noting that these "rigorous" requirements "are meant to assure both that 'class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'") (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)).

Should he meet these requirements (he cannot), he must also establish that his class claims are appropriate for certification under Rule 23(b)(2)—i.e., that he is (i) seeking injunctive or declaratory relief, (ii) against a defendant who has "acted or refused to act on grounds that apply generally to the class," in (iii) such a manner that the requested relief is "appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  In the Third Circuit, these requirements are generally analyzed holistically under the rubric of "cohesiveness."  *See T.R.*, 2019 WL 1745737, at *21.  This cohesiveness standard serves purposes similar to those of Rule 23(a), "protecting unnamed class members, who are bound by the action without the opportunity to withdraw and may  be prejudiced by a negative judgment in the class action,'" and "ensuring that the litigation remains manageable."  *Id.* (quoting B*arnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)).  After all, there is "little value . . . in proceeding as a class action if significant individual issues were to arise consistently."  *Barnes*, 161 F.3d at 143.

Even if his allegations are accepted as true, Plaintiff's class "claim" cannot meet the requirements of either Rule 23(a) or (b).  His putative class members share little in the way of

legal or factual commonality and the narrow scope of his individual claims renders him an atypical and inadequate representative of class interests. Nor does Plaintiff seek a single injunction applicable to the class as a whole. On the contrary, he requests a litany of mandatory injunctions that would require Devereux to make unspecified changes to its hiring and training practices, its internal policies and protocols regarding security, treatment, and employee retention, and even the physical layout of its facilities. Because the defects in Plaintiff's class allegations are facial, inherent, and irremediable, an order striking his class claim now—before expensive and expansive discovery begins—is necessary and appropriate.

### a. Plaintiff cannot establish the class commonality required by Rule 23(a).

Assuming Plaintiff's putative class is sufficiently numerous—a numerosity he accomplishes only by pleading around actual injury[5]—Plaintiff's class claim should nonetheless be struck because his allegations do not implicate any truly common questions, let alone "'common answers apt to drive the resolution of the litigation.'" *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Wal-Mart v. Dukes*).

Indeed, Plaintiff's allegations fall prey to the same commonality issues that foreclosed (b)(2) certification in *Wal-Mart v. Dukes*. Although *Dukes* involved a Title VII disparate impact claim, the principles it establishes are nonetheless broadly applicable: commonality "does not

---

[5] Plaintiff characterizes his class's "common injury" as "being placed at heightened risk of sexual, physical, and emotional abuse by Devereux" rather than any actual harm. Compl. at ¶ 143. If Plaintiff is asserting a common law claim on behalf of the class, injury is nearly always an *element* of any negligence claim. *See, e.g.*, *Pinson v. United States*, 826 Fed. App'x 237, 242 (3d Cir. 2020) ("Under Pennsylvania law, in order to establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages") (quotation omitted). As a result, "the common law of negligence typically does not treat such harm as cognizable." John C.P. Goldberg, Benjamin C. Zipursky, *Unrealized Torts*, 88 Va. L. Rev. 1625, 1651 (2002) (explaining that even if "heightened risk is a harm, it does not follow that this harm is an injury, that is, a cognizable harm").

mean merely that [class members] have all suffered a violation of the same provision of law," because most laws "can be violated in many ways." *Dukes*, 564 U.S. at 349-50. "[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury," the Court explained, "gives no cause to believe that all their claims can productively be litigated at once." *Id.* at 350. Rule 23(a)'s commonality requirements thus provide would-be class representatives with two options. They can identify a single "general policy" that applies across the entire class, or they can narrowly tailor their class claims to those injured by a truly singular course of conduct, such as "discriminatory bias by the same supervisor." *Id.*

Plaintiff does not allege a single company-wide policy, of course, nor does he tailor his class to any truly "common" allegation. Instead, he attempts an end-run around *Dukes* by alleging Devereux's generic *failure to enforce and/or implement* satisfactory policies across a broad spectrum of subjects, ranging from "hiring screening, and retention protocols," "guidelines governing interactions between staff and patients," "sexual reactivity training," training in "de-escalation techniques," alterations of "physical buildings" to remove "concealed areas," "improved video monitoring," and implementation of "best practices protocols" for both "the prevention of physical, emotional, and sexual abuse" and "appropriate response to incidents of physical, emotional, and sexual abuse." Compl. at ¶ 146. He even devotes several pages of his Complaint to online criticism from purported Devereux employees, Devereux's alleged lack of internal employee support, and complaints about hourly wages. *Id.* at ¶¶ 49-53. This scattershot approach clearly does not reflect a "common contention . . . capable of class wide resolution" in "one stroke." *Dukes*, 564 U.S. at 350.

In an effort to "bridge the gap," *id.* at 353, between these wide-ranging allegations and Rule 23(a)'s focus on single-stroke class adjudication, Plaintiff identifies a handful of Devereux executives who "oversee" operations across the Devereux campuses.  Compl. at ¶ 13.  That a handful of Devereux executives might supervise company-wide operations is evidence only of corporate hierarchy, not corporate policy.  As in *Dukes*, where the Supreme Court pointed out that "Wal-Mart's announced policy forbids sex discrimination," Devereux's official, company-wide policy prohibited the kind of abuse Plaintiff alleges.  This lack of an overarching corporate policy is reflected in Plaintiff's allegations, which are decidedly local in nature.  *See id.* at ¶¶ 44(d) (staff brought alleged victim of abuse to "campus director's office"); *id.* at 44(e) (alleging that campus "staff members" and "manager" protected perpetrator of abuse); *id.* at 44(g) (alleging that victims "told Devereux staff members of their abuse").  In sum, even if Devereux's company-wide policies were less effective than they should have been at stopping localized abuse, lack of efficacy is no more a "general policy" than Wal-Mart's failure to prevent discrimination in *Dukes*.

Plaintiff's inability to locate any single, actionable Devereux "policy" is matched by his inability to craft a unified class; the only characteristic his class members share is residence at one of Devereux's numerous facilities.  This is a slender—ultimately insufficient—reed on which to hang a class action and its precariousness is only heightened by significant intra-class differences.  *See, e.g.*, *Dukes*, 564 U.S. at 349-50 (noting that allegation of common employment by defendant was "not sufficient to obtain class certification.").  According to Plaintiff, his class will include "children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system."  Compl. at ¶ 1.  Complex in their own right, these medical diagnoses and conditions are further complicated by class

members' varied backgrounds, many of which include abuse, trauma, and even sex trafficking. *Id.* at ¶¶ 29, 33-34.  These case-specific complexities are also reflected in the different kinds of facilities at issue: "residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, [and] special education centers."  *Id.* at ¶ 12.  Plaintiff attempts to elide these differences by asserting a handful of atmospherically high-level "common questions" regarding Devereux's duty to protect residents from "unnecessary (and foreseeable) risk of physical emotional and sexual assault and its knowledge of incidents of abuse and neglect.  *Id.* at ¶ 26.  That these "questions" are not truly "common" is evident in Plaintiff's proposed relief, however.  Because no *single* mandatory injunction is capable of benefiting all class members, he is forced to seek many. *See*, *supra*, at ___ (detailing Plaintiff's proposed relief).

Take, for instance, Plaintiff's focus on "Diana screening," a pre-hire risk management system that purports to identify prospective employees' potential for sexual abuse.  Compl. at ¶ 39.  Although Plaintiff characterizes Devereux's failure to utilize "Diana screen" as an example of its failure to protect residents from abuse, he does not allege that Diana screening would have prevented *his* alleged abuse.  Nor can he—his allegations are not sexual in nature but instead arise out of his individualized interactions with multiple Devereux staff and residents.  *Id.* at ¶¶ 66-68.  Inversely, any injunction ordering Devereux to employ different therapeutic techniques for autistic residents like Plaintiff would do nothing to address the risk of "predatory" or "grooming" behavior by rogue employees.  *Id.* at ¶¶ 36-39.

Even if Plaintiff's inability to identify truly common questions were not fatal in and of itself, common questions are only half of Plaintiff's burden.  Because "any competently crafted class complaint literally raises common questions," the mere "recital of questions that happen to be shared by class members is 'not sufficient to obtain class certification.'"  *Dukes*, 564 U.S. at

349 (quoting Richard A. Nagareda, *Class Certification in the Era of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)); *see also Mielo*, 897 F.3d at 487 (quoting *Dukes* for same proposition). Instead, class plaintiffs must "'demonstrate that the class members have suffered the same injury.'" *Mielo*, 897 F.3d at 487 (quoting *Dukes*).

Here, however, Plaintiff cannot "demonstrate" a singular, class-wide injury because he does not assert any single, class-wide injury.[6]  The Third Circuit's recent opinion in *Mielo v. Steak 'n Shake Operations, Inc.*, overturning a district court's certification of a Rule 23(b)(2) class, is instructive.   There, the court held that the plaintiffs' identification of a common "question"—the defendant's compliance with accommodation requirements under the Americans with Disabilities Act—did not satisfy Rule 23(a)'s commonality requirements because, "[a]lthough all class members might allege a violation of the ADA," the "ADA can be violated in many different ways. " 897 F.3d at 489.  Elaborating, the Third Circuit identified just a few of those "different ways":

> one person might allege that [the defendant] violated the ADA by failing to correct a steep slope in a parking facility, while other class members might allege that [defendant] violated the ADA by failing to replace inaccessible door hardware, by failing to widen bathroom doors, or by failing to replace inaccessible water fountains.

*Id.* at 490.   These "widely divergent" experiences, the court explained, involving diverse individuals confronted by disparate site-specific conditions, did not (and could not) raise "'a common contention' that is capable of classwide resolution in one stroke.'"  Id. So too, here.

---

[6]   As noted *supra*, Plaintiff characterizes his purported class injury as the *risk* of a sexual, physical and emotional abuse, not any injury in-and-of-itself.  Compl. at ¶ 24 (noting class members were all "subjected to the unnecessary (and foreseeable) risk of physical, emotional, and sexual assault."). Elsewhere, however, Plaintiff unwittingly suggests that his claim is actually one for infliction of emotional distress, noting that, absent injunctive relief, his class "will continue to suffer from . . . fear, anxiety, stress, and trauma." *Id.* at ¶ 71. That Plaintiff cannot prove class-wide "fear, anxiety, stress, and trauma" with common evidence is obvious—and precisely why Plaintiff relies on risk rather than actual injury.

Indeed, these same principles have been applied by this Court to address, and reject, class claims analogous to those at issue here. For instance, in *T.R. v. School District of Philadelphia*, this Court rejected a Rule 23(b)(2) class action alleging system-wide deficiencies in the treatment of special needs children within the Philadelphia school system. Citing *Mielo*, the *T.R.* court noted that, because "'meaningful participation' under the IDEA can be violated in many different ways," an injunction "requiring the School District to remedy 'systemic deficiencies' in language services does not provide a 'common answer[ ] apt to drive the resolution of the litigation.'" *T.R.*, 2019 WL 1745737, at *17 (quoting *Dukes*). In the end, the "amorphous and individualized nature" of the underlying legal analysis destroyed any "commonality" under Rule 23(a). *Id.* at *14.

Post-*Wal-Mart* decisions from federal courts around the country have likewise relied on *Wal-Mart* to deny Rule 23(b)(2) class actions that seek to wrangle together otherwise distinct injuries by labeling them "systemic" failures. For instance, in *DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013), the D.C. Circuit reversed certification of a class action addressing "systemic deficiencies" in how the D.C. public school system handled students with disabilities. *Id.* at 122. Even if the District *did* violate the relevant federal statute "as to each class member," the *DL* court explained, those violations were "not enough to establish Rule 23(a) commonality in the absence of a uniform policy or practice that affects all class members." *Id.* at 127. In *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012), the Fifth Circuit reversed certification of a 23(b)(2) class action alleging that Texas' "management" of its child protective services program "suffer[ed] from numerous 'systemic deficiencies' that subject all children in the PMC to various harms or to the risk of experiencing those harms." *Id.* at 842. It, too, noted

that the allegation of a class-wide violation was insufficient to satisfy Rule 23 absent an equally class-wide means of resolving the claim. *Id.* at 841.[7]

In fact, the internal and intrinsic differences that doomed the class claims in *T.R.*, *DL* and *Stukenberg* are even more pronounced here because—unlike those plaintiffs—Plaintiff does not assert a class-wide cause of action based on broadly-applicable constitutional or statutory rights. This Court does need not delve too deeply into the individualized nature of Plaintiff's own common law causes of action to conclude that the claims at issue are not susceptible to class-wide adjudication based on common evidence.

More specifically, Plaintiff expressly alleges that his own injury was caused by Devereux's failure to adapt to *his* specific needs. Some of those needs are a product of Plaintiff's personal history. These include, but are not limited to, his age at the time of admission (at seven years old, he was "the youngest child at the facility"), his history of familial abuse, tragedy, and institutionalization, his resulting trauma, his penchant for "mimicking the aggressive behavior of his peers," his mother's objections to his placement at Devereux, and the "special relationship" between Plaintiff and Devereux due to his involuntary placement. Compl. at ¶¶ 58-64, 87. Other Plaintiff-specific needs are linked to his autism, including his "hypersensitivity" to sights, sounds, and touch, his penchant for violent and histrionic outbursts, his tendency to be "easily triggered and traumatized," and the fact that "reward"-focused therapy "aggravates [his] behavior." *Id.* at ¶¶ 67-68.

---

[7]   Although these decisions were made at the certification stage, the same factors have been applied by district courts pre-certification. *See Ramsay v. Frontier, Inc.*, No. 19-03544, 2020 WL 4557545, at *24 (D. Colo. July 30, 2020) (pre-certification dismissal of ADA-based class action alleging emotional distress because plaintiffs would "be unable to establish facts that would make class treatment appropriate.") *adopted by* 2021 WL 651021 (D. Colo. Feb. 19, 2021); *Williams v. Potomac Family Dining Group Operating Company*, LLC, 2019 WL 5309628, at *7-8 (D. Md. 2019) (pre-certification dismissal of ADA-based class action under Rule 23(a) commonality requirement because of individual factual issues).

In other words, Plaintiff's individual claims are just that: individualized, personal, and diagnosis-specific rather than universal among class members.  Some residents seek treatment at Devereux with the consent of their parents or guardians.  Many do not suffer from autism or autism-related behavioral and sensory issues.  Although some children may share Plaintiff's tendency to violence, others are passive and docile.  Still others pose a threat only to themselves.  In each case, the "protocols for acceptable health management techniques" invoked by Plaintiff will vary according to the individual needs of absent class members.  Compl. at ¶ 66.

These differences logically extend to the underlying legal basis for Plaintiff's class claim.  Where Plaintiff frames his individual claims in terms of flawed or inappropriate treatment protocols, most of his Complaint addresses sexual abuse lacking any discernible relationship to either his claim or treatment in general.  *Compare id.* at ¶ 36-45 and *id.* at ¶¶ 58-71.  Given the incommensurate nature of these two forms of abuse, Plaintiff's attempt to "glue" his class claims together under the aegis of "risk" is nothing more than a sleight-of-hand—an attempt to obscure his class's lack of common injury by removing injury from the Rule 23 framework altogether.

### b.  Neither Plaintiff nor his claims are sufficiently typical.

For many of the same reasons, Plaintiff is not sufficiently "typical" of the class he seeks to represent.  Rule 23's typicality requirement, like commonality, preserves efficacious class maintenance while ensuring that the interests of the class and its representative are sufficiently aligned.  When "a class representative's claims are typical of the class, 'then her pursuit of her own interest will necessarily benefit the class as well.'"  *Afzal v. BMW of North America, LLC*, No. 15-8009, 2020 WL 2786926, at *5 (D.N.J. May 29, 2020) (quoting W. Rubenstein, 1 *Newberg on Class Actions* § 3:28 (5th ed. 2012)); *see also Baby Neal*, 43 F.3d at 55 ("Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of

the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.").  Typicality analysis focuses on three factors:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 599 (3d Cir. 2009).  As reflected above and explained below, Plaintiff's class claim fails at each step of this analysis.

Although he has not asserted any class-wide "legal theory," the "factual circumstances" underlying Plaintiff's individual claim are dramatically different from those of his putative class members, above and beyond the variations that plague the class as a whole.[8]  Indeed, in his attempt to portray Devereux's systemic deficiencies, Plaintiff cribs many of his allegations verbatim from a (now-withdrawn) class action complaint filed in *Jines et al v. Devereux*, No. 2:21-cv-00346 (E.D. Pa.), which was, itself, based in large part on allegations made in a Philadelphia Inquirer article that pre-dates Plaintiff's placement at Devereux.  Because *Jines* and the Inquirer article focused on sexual assault, Plaintiff's Complaint does too, with 24 of the 26 "systemic" incidents identified in Paragraph 44 involving sexual assault or abuse.  Plaintiff does not allege that *he* was sexually assaulted, however, a discrepancy significant enough on its own to render him insufficiently "typical."[9]  *See Falcon*, 457 U.S. at 159 (rejecting class

---

[8]   Plaintiff bases his allegations of systemic failure on events that occurred before he arrived at Devereux (the only incident identified that occurred during his residence at Devereux is his own)—indeed, some pre-date not just his placement at Devereux but his birth.  *See, e.g.*, Compl. at ¶ 51 (quoting Philadelphia Inquirer article referring to observation about hiring made in 1985); *id.* at ¶ 44(g) (referring to incidents between 2004-2014).

[9]   Although Plaintiff characterizes an October 2020 Inquirer investigative report as detailing "sexual, physical, and emotional abuse," the focus of the article is sexual abuse and

representative because he did not personally experience claims asserted on behalf of the class). Relatedly, because he alleges actual abuse by Devereux staff, he is also atypical of those class members who are at "risk" of abuse but have not yet experienced it.

Assuming for the sake of argument that Plaintiff's class claim is—like his individual claims—based in the common law, the availability of defenses unique to Plaintiff further cut against a finding of typicality. As the Third Circuit has observed, unique defenses create the risk that a class representative's "interests might not be aligned with those of the class" and that he "might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006); *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d at 599. Here, whether Devereux failed in its duty to protect *Plaintiff* from "unnecessary" physical abuse will hinge on the particular circumstances of Plaintiff's interactions with staff. Because Plaintiff concedes that his autism, trauma, family history, and other cultural influences have left him prone to violent outbursts when stimulated or aggravated, determining whether Devereux violated a "duty" by physically intervening or restraining him will likely depend on whether he posed a risk to staff or other residents.

Finally, Plaintiff's typicality is undermined by his attempt to secure monetary damages for himself but only injunctive relief for his class. *See, e.g., Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 83 (E.D.N.Y. 2007) (finding typicality lacking where named plaintiffs would be entitled to monetary damages while rest of class only received injunctive relief). As one leading treatise has explained:

---

emotional and physical abuse are not specifically mentioned. Compl. ¶ 44g. (citing Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited August 18, 2021))).

> [w]hen the class representative seeks relief that is categorically different than the relief desired by the class, the proposed class representatives interests may not be well-aligned with the interests of the class: the representative may seek to maximize one type of relief that redounds to her benefit while minimizing another that might benefit the class as a whole.

1 Newberg on Class Actions § 3:44 (5th ed.).  This choice could have serious consequences for absent class members, including the possibility that Plaintiff's suit will preclude victims of abuse from later pursuing their own personal injury claims—and do so without the notice and opt-out protections afforded under Rule 23(b)(3).  *See Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 217-18 (E.D. Pa. 2010), *aff'd,* 655 F.3d 255 (3d Cir. 2011) (noting potential conflict where the named plaintiffs brought only medical monitoring and property loss claims and absent class members may have had additional personal injury claims that could have been precluded in later actions); *Gaston v. Exelon Corp.*, 247 F.R.D. 75, 88 n. 22 (E.D. Pa. 2007) (characterizing it as "likely" that adjudication of plaintiffs' class-wide equitable claims "would bar members of the class from later seeking compensatory and punitive damages").[10]  Plaintiff's tiered approach to remedies marks a significant departure from Rule 23(b)(2)'s intended focus on relief "beneficial to the class as a whole."  *Id.*

### c.   Plaintiff is not an adequate representative of class interests.

These same arguments apply equally to Plaintiff's "adequacy" under Rule 23(a).  In the Third Circuit, the requirements of typicality and adequacy have long been intertwined: "both look to the potential for conflicts in the class."  *Georgine v. Amchem Products, Inc.,* 83 F.3d 610,

---

[10]   *See also In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 167 (E.D. Pa. 2015) (noting the "danger that those individuals who would have a right to a jury trial to seek damages from Defendants would lose their ability to bring claims as a result of their being bound to an unsuccessful Rule 23(b)(2) action."); *In re Skelaxin (Metaxalone) Antitrust Litigation*, 299 F.R.D. 555, 579 (E.D. Tenn. 2014) (noting that "concern regarding the preclusive effect of a primarily injunction-based class raises serious questions about the propriety of certifying such a class").

632 (3d Cir. 1996); *see also In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). Much like typicality, "'[t]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *In re Cmty. Bank*, 622 F.3d at 291. Here, Plaintiff's differential treatment of his own claims (for which he seeks monetary compensation) and those of his class (limited to injunctive relief) also renders him inadequate under Rule 23(a)(4). *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 339 (S.D.N.Y. 2002) ("Plaintiffs fail to cite, and this Court cannot find, any authority for the proposition that absent class members with personal injury or property claims can be adequately represented by class representatives seeking only injunctive relief.").

### d. Plaintiff's proposed class claim cannot meet the cohesiveness requirements of Rule 23(b)(2).

As noted above, "[t]he key to the (b)(2) class is 'the individual nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360; *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125 (E.D. Pa. 2017) (quoting *Dukes*). Although Rule 23(b)(2) plaintiffs need not show "preponderance" or "superiority," as required by (b)(3), they must nonetheless establish that their class (and class claim) is "cohesive." *Gates*, 655 F.3d at 264 (quoting *Barnes*). It is a standard with teeth: because "unnamed members are bound by the action without the opportunity to opt out," a Rule 23(b)(2) action "may require more cohesiveness than a 23(b)(3) class" *Gates*, 655 F.3d at 264 (quoting *Barnes*); *Huber v. Taylor*, No. 002-304, 2011 WL 4553154, at *2 (W.D. Pa. Sept. 29, 2011) (describing cohesiveness as a "functional equivalent" of Rule 23(b)(3) requirements that "effectively incorporates" predominance).

Like Rule 23(a), the Third Circuit's cohesiveness requirement protects the interests of absent class members and ensures manageability. *See, e.g., Gates*, 655 F.3d at 264 (discussing commonality and cohesiveness together). And thus, as with Rule 23(a), "'disparate factual circumstances," like those described above, "may prevent a class from being cohesive,'" precluding certification. *Id.*; *see also Abraham*, 321 F.R.D. at 173. Such differences become even more pronounced in the context of common law torts. Rule 23(b)(2) is generally disfavored in the mass tort context because "factual differences among individual class members may *affect critical elements of plaintiffs' claims*," including "proximate causation, reliance and defendant's affirmative defenses." 1 *McLaughlin on Class Actions* § 5:15 (10th ed.) (emphasis added); *see also Barnes*, 161 F.3d at 142 (in tort context, "factual differences 'translate into significant legal differences'" and "'disparate application of legal rules'").

Indeed, Third Circuit courts have long recognized that the individualized nature of tort claims makes them a poor fit for class adjudication. *See, e.g., Barnes*, 161 F.3d at 142-43; *Hohider,* 574 F.3d at 184 (if "elements of Plaintiffs' common law claims . . . cannot be addressed in a manner consistent with Rule 23, then the [Rule 23(b)(2)] class cannot be certified."). The *Barnes* court's admonition that "individualized issues can become overwhelming in actions involving long-term mass torts (i.e., those which do not arise out of a single accident)," applies equally to Rule 23(b)(2) actions. *Id.* at 142; *see also Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 458 (D.N.J. 2009) (certification under Rule 23(b)(2) requires plaintiffs to "demonstrate that proposed class members can prove the elements of their common law claims through common evidence."). These factors will only multiply here because Plaintiff's suit implicates the law of at least 13 different states.

Given the above, it is hardly surprising that Defendant's research identified no cases in which a district court certified a nationwide class claim addressing common law claims related to sexual, physical, or emotional abuse.  This is no doubt due in large part to the complexities described above.  But it is also the product of incentives.  The possibility of significant monetary damages in abuse claims strongly encourages individual lawsuits.  Class actions, by contrast, are an "evolutionary response" to the existence of claims that are "not economically feasible . . . within the traditional framework of a multiplicity of small individual suits for damages[.]" *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  In other words, the "class action device" is intended to protect those who might otherwise be left "without any effective redress." *Id*.

In sum, whether viewed through the lens of commonality, typicality, adequacy, or cohesiveness, Plaintiff's Complaint "itself demonstrates that the requirements for maintaining a class action cannot be met," and therefore provides no basis for moving forward into class discovery.  *Landsman & Funk PC*, 640 F.3d at 93, n.30.

## IV. CONCLUSION

For the foregoing reasons, the Devereux Defendants respectfully request that the Court grant their Motion to Dismiss and enter an Order in the form attached to the Motion.

Date: August 23, 2021                    */s/ Cameron M. Redfern*

STRADLEY RONON STEVENS & YOUNG, LLP
Joseph McHale Esquire
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA 19355
jmchale@stradley.com

Jeffrey A. Lutsky, Esquire

Corey S. D. Norcross, Esquire
Cameron M. Redfern, Esquire
2005 Market Street, Suite 2600
Philadelphia, PA 19103
P: (215) 564-8742
F: (215) 564-8120
jlutsky@stradley.com
cnorcorss@stradley.com
credfern@stradley.com

5179217