# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD ROE W.M. (a minor by and through his parent), RICHARD ROE A.W. (a minor by and through his parent), and RICHARD ROE T.S. (a minor by and through his parent) on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC,<br><br>       Defendants. | Case No.: 2:21-cv-02655<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

JURISDICTION AND VENUE ........................................................................................ 3

THE PARTIES.................................................................................................................... 4

I.      Plaintiffs ................................................................................................................ 4

II.     Defendants ............................................................................................................ 5

        A.      The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health).......... 5

        B.      QualityHealth Staffing, LLC ............................................................. 8

CLASS ACTION ALLEGATIONS ................................................................................ 8

FACTUAL ALLEGATIONS ......................................................................................... 10

        Plaintiff Richard Roe W.M. .............................................................................. 23

        Plaintiff Richard Roe A.W................................................................................ 26

        Plaintiff Richard Roe T.S. ................................................................................ 27

CAUSES OF ACTION .................................................................................................... 29

COUNT I NEGLIGENCE (On behalf of Plaintiffs and the Class) ........................... 29

COUNT II NEGLIGENT HIRING (On behalf of Plaintiffs and the Class)............... 31

COUNT III NEGLIGENT RETENTION (On behalf of Plaintiffs and the Class).......... 32

COUNT IV NEGLIGENT SUPERVISION (On behalf of Plaintiff and the Class)........... 34

COUNT V GROSS NEGLIGENCE (On behalf of Plaintiffs and the Class)............. 36

COUNT VI VICARIOUS LIABILITY (On behalf of Plaintiffs and the Class) ........ 37

COUNT VII ASSAULT AND BATTERY (On behalf of Plaintiffs and, with respect to
        assault, the Class)............................................................................................. 39

COUNT VIII NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
        (On behalf of Plaintiffs and the Class)............................................................. 41

COUNT IX INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
        (On behalf of Plaintiffs and the Class)............................................................. 42

COUNT X BREACH OF FIDUCIARY DUTY (On behalf of Plaintiffs and the Class)........... 43

COUNT XI Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*) Creation of Sexually
        Hostile Culture/Heightened Risk of Sexual Harassment
        (On behalf of Plaintiffs and the Class)............................................................. 43

PRAYER FOR RELIEF ................................................................................................. 48

2378070.7

DEMAND FOR TRIAL BY JURY ............................................................................ 50

2378070.7

## INTRODUCTION

1.      Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral

Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"),

through 21 facilities in 13 states, takes on the responsibility for protecting more than 25,000 of

our country's most vulnerable members: children with autism, intellectual and developmental

disabilities, and specialty mental health needs, including youth in the child welfare system.[1]

2.      Instead of fulfilling this solemn responsibility, Devereux has exposed its residents

to physical, emotional, and sexual abuse by harboring abusers on its staff and by failing to enact

and enforce necessary safety measures.

3.      As a result, there have been numerous and systemic incidents of abuse. For

example, in 2016, the Brevard County, Florida Sheriff's Office received reports of at least 200

abuse incidents at Devereux, including 12 instances of children who experienced batteries and 11

who were subject to sexual offenses.[2] And the Devereux facility in Westminster, Colorado is

reportedly "regularly the address with the highest number of police reports in the entire Denver

suburb."[3]

---

[1] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=8C49CE92727 D35B4C0E776C432590E1B&pagename=about (last visited May 26, 2021); *Message from President and CEO Carl E. Clark II: An Open Letter to our Families and Communities*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited May 26, 2021).
[2] Samantha Manning, *Manager at Devereux in Viera accused of having sexual relationship with student, police say*, WFTV.COM, https://www.wftv.com/news/local/manager-at-devereux-in-viera-accused-of-having-sexual-relationship-with-student-police-say/577702005/ (last visited May 26, 2021).
[3] Jennifer Brown, *Colorado may toughen probes into institutional child abuse claims following Colorado Sun/9News investigation*, THE COLORADO SUN, https://coloradosun.com/2021/06/07/child-abuse-residential-youth-centers-investigations/ (last visited March 7, 2022).

4.      In August 2020, the *Philadelphia Inquirer* released a report detailing decades of sexual, physical, and emotional abuse inflicted upon vulnerable children by Devereux staff members. According to the investigative report, "at least 41 children as young as 12, and with IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."[4]

5.      After the publication of this report, an additional 13 former Devereux students came forward with allegations of sexual abuse.[5] These children were as young as eight years old when they were sexually abused.[6] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[7] Seven of these children reportedly complained to Devereux staff or a social worker, but their complaints were ignored and the abuse continued.[8]

6.      On March 9, 2022, a jury found a Devereux staff member guilty of neglect and harassment of a care-dependent person when the staff member physically assaulted an 18-year-old non-verbal client at Devereux in West Whiteland Township, Pennsylvania, after a witness saw the defendant "helping residents get showered for the night when the victim 'flopped' onto the floor, refusing to get into the shower."

---

[4] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, The Philadelphia Inquirer, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[5] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited May 26, 2021).
[6] *Id.*
[7] *Id*.
[8] *Id.*

> The witness said she observed the defendant 'bear hug' the [victim], lift him
> into the air and throw him onto a toilet. The witness told investigators that as
> the victim tried to stand up, the defendant 'cocked back his fist and punched
> him [the victim] in the abdominal area' while calling him a profane name.
> After that, the witness said the victim began to comply with the defendant's
> instructions, although the victim was shaking in fear.[9]

7.      Accordingly, Plaintiffs Richard Roe W.M., a minor by and through his parent,[10]

Richard Roe A.W., a minor by and through his parent, and Richard Roe T.S., a minor by and

through his parent, bring this lawsuit to hold Devereux accountable for the harm it has caused

and seeks class injunctive relief to protect current and future children who are placed in

Devereux's care and who without such legal protection will continue to suffer from exposure to

Defendants' abusive policies and practices.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because

Plaintiffs allege actions arising under 20 U.S.C. § 1681.

9.      This Court has subject matter jurisdiction over individual claims brought by

Plaintiffs Richard Roe W.M. and Richard Roe T.S. based on the diversity of the parties pursuant

to 28 U.S.C. § 1332 and based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Defendants Devereux and QualityHealth are headquartered, incorporated, and operate their

---

[9] "Devereux Employee, Upper Darby Man Guilty of Endangering Welfare of Non-verbal Victim," *MyChesCo*, available at: https://www.mychesco.com/a/news/social-issues/crime/devereux-employee-upper-darby-man-guilty-of-endangering-welfare-of-non-verbal-victim/ (last visited March 14, 2022).

[10] A pseudonym has been used in place of Plaintiffs' and their parents' real names due to privacy concerns. Plaintiffs and their parents may proceed using a pseudonym at this stage of the case because they have a reasonable fear of severe harm in their names being disclosed based upon the facts alleged and nature of this case involving sensitive information. *See Doe v. Genesis Healthcare*, No. 21-551, 2021 U.S. Dist. LEXIS 78205 (E.D. Pa. Apr. 23, 2021) (endorsing "balancing test to determine if the plaintiff's reasonable fear of severe harm outweighs the public's interest in open litigation" when considering right of litigant to proceed anonymously) (citations omitted).

2378070.7

principal places of business in the Commonwealth of Pennsylvania.  As described further below, Plaintiff Richard Roe W.M. is a citizen of Florida and Plaintiff Richard Roe T.S. is a citizen of Arizona. The amount in controversy, without interest and costs, exceeds $75,000.

10.      This Court has subject matter jurisdiction over the individual claims brought by Plaintiff Richard Roe A.W. based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendant the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) whose national headquarters are located at 444 Devereux Drive, Villanova, PA 19085. Devereux has continuous and systematic contacts with the Commonwealth of Pennsylvania; it was founded in Philadelphia, and its headquarters have remained in Pennsylvania since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team operate out of their Pennsylvania headquarters. Defendant Devereux operates approximately 90 facilities in northeastern and southeastern Pennsylvania.[11]

12.      Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because development and implementation of the policies, practices, and omissions giving rise to the legal claims herein harmed, and will continue to harm, class members in this District and substantial property of the Defendants is situated in the District.

### THE PARTIES

### I.      Plaintiffs

13.      Plaintiff Richard Roe W.M., a minor by and through his parent, is a citizen of the state of Florida and currently resides in Southeast Largo, Florida.

---

[11] *About Devereux Advanced Behavioral Health Pennsylvania*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited May 26, 2021).

14.     Plaintiff Richard Roe W.M. was placed in a Devereux residential treatment center in Viera, Florida in the fall of 2020 where he was supposed to receive mental health support and educational services. He was discharged into his mother's custody on August 12, 2021. Allegations as to the harms he suffered at Devereux are made infra, paragraphs 63-76.

15.     Plaintiff Richard Roe A.W., a minor by and through his parent, is a citizen of the state of Pennsylvania and currently resides in West Chester, Pennsylvania.

16.     Plaintiff Richard Roe A.W. was placed in a Devereux residential treatment center in West Chester, Pennsylvania in 2018 where he was supposed to receive mental health support and educational services. As of the filing of this Amended Complaint, he is currently under the care and supervision of Devereux and is subject to the policies, practices, and customs alleged in this Complaint. Allegations as to the harms he suffered are made infra, paragraphs 77-84.

17.     Plaintiff Richard Roe T.S., a minor by and through his parent, is a citizen of the state of Arizona and currently resides in Kennesaw, Georgia.

18.     Plaintiff Richard Roe T.S. was previously placed in a Devereux residential treatment center in Westminster, Colorado where he was supposed to receive mental health support and educational services. As of the filing of this Amended Complaint, he is currently in a Devereux residential treatment center in Kennesaw, Georgia. He is currently under the care and supervision of Devereux and is subject to the policies, practices, and customs alleged in this Complaint. Allegations as to the harms he has suffered are made infra, paragraphs 85-93.

**II.     Defendants**

**A.     The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)**

19.     Defendant Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization which operates 21 campuses in 13 states, annually treating more than 25,000 children and young adults with advanced behavioral, intellectual,

developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, PA 19085. [12]

20.     Devereux's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide policies and practices at Devereux campuses across the nation. Devereux's centralized decision-making is reflected in its Senior Leadership Team:

a.     A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.

b.     A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

c.     A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values".

d.     A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."[13]

---

[12] Facilities are located in AZ, CA, CO, CT, DE, FL, GA, MA, NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).
[13] *Senior Leadership Team*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/;jsessionid=00000000.app20113a?NONCE_TOKEN =DF9BBE8328B5F6AE8B18042B9F784129&pagename=leadership (last visited May 26, 2021).

21.     Upon information and belief, Defendant Devereux has been responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, and for hiring, supervision, and discipline of Devereux staff and other employees.

22.     Devereux receives state and federal funding, including financial support from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program,[14] the U.S. Department of Education, Office of Special Education Programs for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional Training and Research),[15] grants from the Pennsylvania Department of Education to develop programs for Devereux CARES, which has been licensed as an "Approved Private School,"[16] and a $40.2 million contract from the U.S. Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[17]

---

[14] Victoria Villanueva-Marquez, *Agency receives funding to expand child trafficking program in Volusia-Flagler*, THE DAYTONA BEACH NEWS-JOURNAL, https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited May 26, 2021).

[15] *Our Approach*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited May 26, 2021).

[16] *Devereux Center for Autism Research and Education Services (CARES)*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited May 26, 2021).

[17] Liliana Frankel, *Under investigation for sexual abuse, Devereux still has a contract to detain migrant children in PA*, BILLY PENN, https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited May 26, 2021). While this contract was still active as of August 2020; note, however, that the *Inquirer* reported the contract abandoned as of October 2020).

### B.     QualityHealth Staffing, LLC

23.     Defendant QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc. QualityHealth is headquartered in King of Prussia, Pennsylvania.

24.     QualityHealth was formed to address the challenges related to recruiting and retaining individuals to work in the field of behavioral health. By providing "temporary, temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to fulfill roles in a timely manner and who experience difficulty in keeping up with the constant changes in employment regulation," QualityHealth aids organizations to "focus on their mission of helping others, rather than spending time on staffing and employment issues."[18]

25.     Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as CEO of QualityHealth.[19]

26.     At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control.

## CLASS ACTION ALLEGATIONS

27.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), Plaintiffs seek declaratory, injunctive and other equitable relief on behalf of themselves and the following nationwide Class of others who are similarly situated:

     All individuals in Devereux Advanced Behavioral Health programs and facilities.

---

[18] *About Us*, QUALITY HEALTH, https://www.qhstaffing.com/about-us/ (last visited May 26, 2021).

[19] *Senior Leadership Team*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/;jsessionid=00000000.app20113a?NONCE_TOKEN =DF9BBE8328B5F6AE8B18042B9F784129&pagename=leadership (last visited May 26, 2021).

28.     Excluded from the class are Defendants, their affiliates and subsidiaries; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

29.     Plaintiffs reserve the right to modify or amend the class definition, including the addition of one or more subclasses, after having the opportunity to conduct discovery.

30.     <u>Numerosity</u>: Devereux reports that it serves more than 25,000 youth annually.[20] Therefore, the Class consists of tens of thousands of individuals, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of individual members will be ascertainable through records maintained by Defendants.

31.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of each Class member in that Plaintiffs, like all Class members, are currently—or, with respect to Plaintiff Richard Roe W.M., were recently and could be again—enrolled in a Devereux program and therefore subjected to the unnecessary (and foreseeable) risk of physical, emotional, and sexual assault caused by Devereux's failure to have and/or enforce proper policies and procedures for the prevention of, and proper response to, such abuse, and, with respect to injunctive and equitable relief, Plaintiffs are advancing the same legal theories on behalf of themselves and the Class.

32.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests and the interests of all other members of the Class are identical, and Plaintiffs are cognizant, by and through their parents, of their duties and responsibility to the Class. Accordingly, Plaintiffs can fairly and adequately represent the interests of the Class. Moreover, Plaintiffs' counsel are competent and experienced in litigating class actions, including litigation

---

[20] *Message from President and CEO Carl E. Clark II: An Open Letter to our Families and Communities*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited May 26, 2021)

of this kind. Plaintiffs and their counsel intend to vigorously prosecute this case and will fairly

and adequately protect the Class's interests.

33.    <u>Commonality</u>: There are numerous questions of law and fact common to the

Class, including, but not limited to:

       a.      Whether Devereux had a duty of care and safety towards its patients, including protecting them from, and properly responding to, physical, emotional, and sexual abuse;

       b.      Whether Devereux breached that duty of care and safety towards its patients by failing to have and/or enforce proper policies and procedures for the prevention of, and proper response to, physical, emotional, and sexual abuse;

       c.      Whether Devereux had a duty to implement and enforce comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities;

       d.      Whether Devereux's pattern of negligent staffing constituted a breach of its duty to supervise and care for patients in their custody;

       e.      Whether Defendant's polices, practices, and customs failed to satisfy its duty to report abuse as required under federal law for all persons engaged in a professional capacity working with children, such as teachers, social workers and physicians; such persons are required to report incidents of child abuse that occur while such person is engaged in a professional capacity in a federally "contracted" facility. 34 U.S.C. § 23041(a)(1);

       f.      The extent of Defendant's knowledge of and deliberate indifference to the pattern and incidence of physical, emotional, and sexual abuse of patients in their programs.

34.    A class action is appropriate here under Rule 23(b)(2) because Devereux has

acted and refused to act on grounds generally applicable to the Class as a whole, such that final

injunctive relief is appropriate with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

35.    Children with a wide range of backgrounds, abilities, and diagnoses receive

treatment from Devereux programs. Across its campuses in 13 states, Devereux offers hundreds

of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[21]

36.    Devereux promotes its programs with a claim of expertise in supporting children with disabilities.[22] For many youth, including Plaintiff Richard Roe W.M., placement in a Devereux program was the result of their previous placement in a state child welfare system facility due to parental abuse or neglect or as a result of having been diagnosed with emotional, behavioral and/or cognitive differences.[23]

37.    Devereux CEO Carl Clark has recognized the serious risk to children who are placed at Devereux, having stated  that "[m]ost of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[24]

---

[21] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).
[22] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited May 26, 2021).
[23] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited May 26, 2021).
[24] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

2378070.7

38.     Notwithstanding this statement of concern, as a matter of practice and custom, many children have been abused at Devereux's facilities, and many of them have been unable to report or otherwise find ways to protect themselves from continued abuse due to practices and customs of the Defendants that prevent access to remedial measures or protection.[25]  Some children have been prevented from reporting or receiving appropriate care due to cover-ups of complaints and threatened or actual retaliation by Devereux staff.

39.     As a result of these practices and customs, many Devereux residents who did report abuse were disbelieved without adequate or proper investigation, and/or suffered retaliation.[26]

40.     Many of the children who have been abused at Devereux were especially vulnerable, as they were intellectually disabled, and had been placed at Devereux because of parental or other abuse in the community.[27]

41.     Devereux staff members have also abused children who had been previously sexually abused in the community.[28] As reported by the *Philadelphia Inquirer,* "A 15-year-old

---

[25] *Id.*

[26] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[27] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[28] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited May 26, 2021).

girl in a Devereux Florida program designed for sex-trafficking victims said she was raped twice by a staff member in 2017."[29]

42.     The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff presents serious risks to the class of residents at Devereux. Youth with disabilities are easily targeted as they are perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. In a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[30]

43.     Devereux staff have also been accused of grooming children. In describing a staff member's abuse of a girl "on the cusp of 15," the *Philadelphia Inquirer* reported that "[s]he was flattered when he brought her gifts—an MP3 player, a necklace, a cell phone. He told her never to include his name in text messages—just his initials. They exchanged dozens of love letters."[31] The *Philadelphia Inquirer* further reported, "Instead of rigorously investigating red flags, Devereux repeatedly failed to identify clear signs that a staffer may be grooming or sexually abusing a child, reporters found. The abuse often continued — or even escalated."[32]

---

[29] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[30] *Risk Factors That Contribute to Child Abuse and Neglect*, CHILD WELFARE INFORMATION GATEWAY, https://www.childwelfare.gov/topics/can/factors/ (last visited May 26, 2021).

[31] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[32] *Id.*

44.     The Defendants have been on notice for many years of systematic sexual and physical abuse of children in their care, but have failed to implement necessary and appropriate system-wide protocols and policies to ensure the safety of the youth in their care.[33]

45.     Devereux has further acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Devereux facilities, and by ignoring and covering up complaints of child abuse.[34]

46.     In response to the *Philadelphia Inquirer* Report, Devereux, through its CEO, has acknowledged its awareness and notice of repeated incidents of abuse within its programs.[35] Yet, notwithstanding the credible allegations of systemic sexual and physical abuse of children in its care, Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example, after a staffer raped a 15-year-old girl at Devereux Georgia in 2012, Devereux announced risk reduction strategies, including training staff on sexual reactivity and the risk of supervision lapses that can lead to sexual assaults, and adoption of the "Diana Screen" program to evaluate new employees. However, the vice president of operations/executive director of the

---

[33] *Id.*

[34]  Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[35] *Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of Resident Safety*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited May 26, 2021).

2378070.7

Georgia campus later testified that she was unaware of new staff trainings regarding sexual reactivity and had no knowledge of training videos regarding supervision lapses.[36]

47.     Devereux's failure to implement and enforce policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates the trauma of the actual abuse. These failures reflect a pattern of "institutional betrayal," wrongdoings perpetrated by an institution including failure to prevent or respond supportively to wrongdoings by individuals (that include, physical, emotional, and sexual abuse).[37]

48.     Devereux has also failed to properly deploy and supervise staff at its facilities, leading to dangerous working conditions for staff,[38] as well as for residents. As a former Licensed Practical Nurse at Devereux reported:

> Devereux continues to put themselves out there as such a caring foundation for their clients . . . it's a cut throat intimidating, unsafe environment. . . very high turnover rate because they will overwork you, put you in unsafe situations no matter how much training they give you, when something goes wrong it's your fault no matter what happened . . . there isn't enough staff to take care of their clients properly and the nursing department who are supposed to be supportive of you and help take care of the clients treat the site nurses like garbage. . . stay away and protect your license and your back . . . run, don't walk away![39]

49.     Another former staff member at a Devereux facility in Rutland, Massachusetts reported in 2018 that:

---

[36] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[37] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited May 26, 2021); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited May 26, 2021)).

[38] See Exhibit 1 hereto.

[39] *See* Exhibit 2 hereto.

2378070.7

Frontline staff are taken advantage of, put in dangerous situations and penalized for speaking up. Work is very tiring, often resulting in injuries and culture is that it's frowned upon and sometimes discipline to use sick time [sic]. Leadership changes every week. They are good at making things look good but scratch beneath the surface and a lot of very concerning stuff going won with kids and staff. I was fired for calling out sick when I didn't have enough sick time. So much for 'caring' for people. Staff care way more about the kids than management and leadership. They prioritize profit and saving dollars. Kids placed inappropriately just to fill beds.

Advice to Management:

Consider having some integrity, for the kids if not anything else.[40]

50.     Devereux asserts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[41] Devereux also promises its students compassion, knowledge, collaboration, dedication, learning, and progress,[42] and presents itself as "one of the largest and most advanced behavioral healthcare organizations in the country" with "a unique model that connects the latest scientific and medical advancements to practical, effective interventions in the treatment of behavioral health.[43]

51.     For many children placed at Devereux's facilities, the opposite is true. A pattern of abuse has emerged, including:

a.      As reported by the *Philadelphia Inquirer,* a Devereux staff member was charged with sexually abusing four children at a facility in Texas in 2019.[44] One of the children was 12 years old.[45] Staff also allegedly

---

[40] *See* Exhibit 3 hereto.
[41] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited May 26, 2021).
[42] *Id.*
[43] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited May 26, 2021).
[44] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[45] *Id.*

2378070.7

threatened to beat up a 16-year-old girl if she told anyone about the abuse.[46]

b.  As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux staff member at an Arizona facility sexually abused three girls in their bedrooms and in the laundry room.[47]

c.  In 2018, a 16-year-old boy with autism and developmental delays was reportedly sexually assaulted by Devereux Staff at the Brandywine facility, located in Glenmoore, Pennsylvania. The boy tried to kill himself several times since his abuse at Devereux. As reported by the *Philadelphia Inquirer*, the boy's abuser was sentenced to eight years in prison for abusing him and two other 14-year-old children.[48]

d.  In 2017, a Devereux staff member was accused of raping a 15-year-old victim of child sex trafficking at Devereux's Viera, Florida facility. The victim had previously reported this staff member's increasing sexual misconduct towards her, but Devereux staff members dismissed her complaints.  After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse. As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[49]

e.  In 2014, a Devereux staff member sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. The staff member had groomed his victim, including an exchange of "love letters" of which other Devereux staff members were aware, protecting the victim from the employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to

---

[46] *Id.*

[47] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[48] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[49] *Id.*

write more letters to him because that "could get him in trouble." Devereux failed to take adequate steps to protect this child, notwithstanding notice of the abuse, and as a result that staffer continued to abuse her until he was finally arrested for these criminal acts. "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a minor, sexual abuse of children and corruption of minors after trial in September, 2016."[50,51]

f.     In 2012, another Devereux staff member orally raped a girl twice in one night in a Devereux Georgia facility. According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[52]

g.     The *Philadelphia Inquirer* reported in 2020 that there were 13 victims of sexual, physical, and verbal abuse in Devereux facilities in Pennsylvania -- in addition to the 41 victims who were the subjects of abuse in the period 2004-2014. Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[53]

h.     In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-workers were accused of not reporting the incidents as required by law.[54]

---

[50] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited May 26, 2021).

[51] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[52] *Id.*

[53] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited May 26, 2021).

[54] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients,* CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited May 26, 2021).

52.     Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September 24, 2020, the City of Philadelphia announced that all youth would be removed from Philadelphia-area residential care facilities operated by Devereux.[55]

53.     Also in 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child. "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras." A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[56]

54.     Pursuant to Devereux's centralized decision-making structure, policies, procedures, and protocols are promulgated by the Senior Leadership Team and they govern the administration of all Devereux facilities.

55.     Devereux's failure to develop, implement, and enforce policies, procedures, and practices necessary to protect the children in its care, and its failure to adequately screen, hire, train, and supervise staff, caused students from multiple Devereux facilities to suffer abuse and other harms.

56.     A Devereux Direct Support Professional posted the following on Glassdoor.com on December 14, 2019:

> There is absolutely no supportive infrastructure here, while the staff work with kids who are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting that way- I would be angry if I were them too. Some of the staff bully the kids, and occasionally, other staff. There is no support for

---

[55] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited May 26, 2021).

[56] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited May 26, 2021).

reporting incidents. There is virtually no therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at 2:00 – many of the kids reported not having therapy for over a month, even though it is a residential TREATMENT center.  The staff are left completely on their own to structure the kids' days with no support from therapists. Staff egg on fights and threaten to restrain kids at every little sign of resistance. Kids have no choices, and there is no opportunity for them to engage in anything supportive of their growth and development. The job also pays little and uses that as leverage for people to work double shifts to gain overtime pay. Staff push themselves to exhaustion for the pay while working with kids who need A LOT of attention. Overall, extremely unsafe and unsupportive environment in so many ways.[57]

57.     A Devereux Case Manager reviewed Devereux on Glassdoor.com on April 23, 2019, stating that, "Literally you get thrown into a job that you know nothing about and are expected manage a huge caseload. Impossible to function and maintain sanity. Not very team oriented."[58]

58.     As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the company wasn't attracting the right employees."[59]

59.     A January 17, 2021 listing on Glassdoor.com showed that Direct Support Professionals at Devereux facilities Pennsylvania were slated to receive an hourly salary of $13.75,[60] and that an Autism Activity Counselor at Devereux would receive $14.75-$16.82 per hour.[61] An employee working 40 hours per week, 52 weeks per year at $13.75 would take home

---

[57] *See* Exhibit 4, attached hereto.
[58] *See* Exhibit 5, attached hereto.
[59] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[60] *See* Exhibit 6, attached hereto.
[61] *See* Exhibit 7, attached hereto.

a gross annual salary of $28,600. The poverty level for a family of four in Pennsylvania in 2020 was $26,200.[62]

60.     A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50 plus $1 shift [differential] if you work after 3pm and on weekends. Working 14 hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no meal breaks. Expect injuries from the kids. Management always telling you how to do better, not addressing moral[e] or high turnover. Lack of supervisors because of high turnover and low moral[e]. Benefits are expensive and you already at a very low (non-living wage.)[63]

61.     As reported by the *Philadelphia Inquirer*, Devereux paid its staff an average of $26,000 per year in 2017.[64] The low pay encouraged staff to work 16-hour shifts to earn overtime pay.[65] Because pay was so low, Devereux could not attract sufficient staff who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[66]

62.     Devereux has had sufficient funds to hire qualified employees, provide adequate staffing and training, and to supervise its staff. Devereux receives more than $497 million per year and 95% of its revenue is from government sources. In fiscal year 2020, Devereux received

---

[62] Pennsylvania Department of Community and Economic Development, *Income Eligibility*, PA.GOV, https://dced.pa.gov/housing-and-development/weatherization/income-eligibility/ (last visited May 26, 2021).

[63] *See* Exhibit 8 hereto.

[64] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

[65] *Id.*

[66] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

2378070.7

approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was to be used for housing and treating children with psychiatric, intellectual, and behavioral disabilities. CBH, with which the City of Philadelphia contracts to place Medicaid recipients in psychiatric residential treatment, paid Devereux $12.9 million in 2019—$7.7 million of which was for residential treatment facilities.[67]

63.     Despite the large amount of public funding it has received, Devereux has severely understaffed its facilities. As reported by the *Philadelphia Inquirer*, a staff member who was supposed to be responsible for seven children in a shift would at times end up caring for 20 children. The supervision issues were so severe that a police detective reportedly met with leaders at Devereux's Malvern campus to ask it to fix its staffing issues.[68]

64.     Further, as reported by the *Philadelphia Inquirer*, Devereux staff would disappear for hours and regularly slept through their shifts,[69] some would play video games for hours without checking on the students, and some came to work with sleeping bags and pillows so that they could sleep through the night. In sum, Devereux's staff was severely underpaid and had to work more than one job.[70]

---

[67] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited May 26, 2021).
[68] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).
[69] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited May 26, 2021).
[70] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE

**Plaintiff Richard Roe W.M.**

65.     Plaintiff Richard Roe W.M. ("W.M." for purposes of this section) is an eight-year-old boy who was diagnosed with Autism Spectrum Disorder ("ASD").  He was a resident at a Devereux residential treatment facility in Viera, Florida beginning in Fall 2020. Devereux discharged him to his mother's care on August 12, 2021.

66.     W.M. experienced bullying in school related to his ASD. When he was placed in a classroom that was intended to provide him with additional supports and services, he began mimicking the aggressive behaviors of his peers, knowing that if he acted out, his mother would take him home from school.

67.     W.M. and his two younger siblings came to the attention of the Florida Department of Children and Families ("DCF") in 2019 after their mother called to report that the children's father had been severely abusing the children. When W.M. was six years old, his mother again contacted DCF after she observed bruises that his father had caused on W.M.'s brother. The Dependency Court ordered that W.M.'s father take parenting classes, but did not revoke his custody of W.M.

68.     After W.M.'s mother was evicted from her home, W.M. and his siblings were ordered to stay with their father while their mother secured housing. During this time, W.M. witnessed the death of his younger brother in March 2020 due to complications arising from a lack of medical attention.

69.     After the death of W.M.'s brother, the Dependency Court assumed jurisdiction over W.M., and he was placed in a foster home due to his worsening behavioral issues. W.M. was placed in a temporary psychiatric facility for mental health treatment pursuant to the Baker

---

PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited May 26, 2021).

Act, Tit. XXIX, Ch. 394, Fla. Stat. (2020) multiple times between March 2020 and August 2020.

He began spending separate time with his mother and father while in foster care.

72.     The Dependency Court later determined that W.M.'s father was still abusing him,

and in conjunction with W.M.'s guardian ad litem, the Court determined that he required

placement in a Statewide Inpatient Psychiatric Program ("SIPP").

71.     W.M. was placed at the Devereux Florida Viera Campus, a residential treatment

program for children with behavioral challenges. W.M. had just turned seven, making him the

youngest child at the facility. Despite his mother's objections to this placement based on her

knowledge of previous incidents of abuse at Devereux facilities, W.M. was a resident at

Devereux Viera for more than six months.

72.     While at Devereux, a male resident sexually abused W.M. from approximately

December 2020 to August 2021. The abuse took place in multiple places across the campus. In

addition, the resident would sneak into W.M.'s room and perform oral sex acts on him, which he

then taught W.M. to reciprocate. W.M.'s mother reported the abuse to Devereux, Florida DCF,

and the police after it occurred.

73.     As a result of the abuse, W.M. had trouble focusing on his school work and

otherwise engaging with other children and continues to experience those same challenges.

74.     For children with ASD, behavioral challenges are common and expected. Many

youth with ASD exhibit physically aggressive behaviors such as hitting, kicking, and biting.[71]

Other common symptoms include a hypersensitivity to being touched, temper tantrums, and

unusual or overwhelming reactions to certain sights or sounds. *Id.* Behavioral health centers,

---

[71] *Autism Spectrum Disorder: Signs and Symptoms*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ncbddd/autism/signs.html (last visited May 26, 2021).

especially those which specialize in ASD support, require specialized training of their staff to

respond humanely and appropriately to outbursts and aggression related to a child's ASD.[72]

When staff lack such training, instead resorting to aggressive physical restraints, children are

placed at heightened risk physical and emotional injuries, or even death.[73]

75.     In addition to the sexual abuse that W.M. endured at the hands of another

Devereux resident, Devereux staff forcibly restrained W.M., causing unnecessary and excessive

bruising and pain. These physical restraints violate protocol for acceptable behavioral health

management techniques, and staff members also knew, or should have known, that because of

his ASD-related responses to human contact, W.M. would be easily triggered and traumatized by

these techniques. He reacted by pulling out his hair, as he had done in foster care due to abuse

and trauma.

76.     W.M. informed his mother that Devereux staff taunted and manipulated him by

withholding food. When W.M.'s mother raised this issue, Devereux staff admitted that they

made W.M. "work" for his favorite foods, strategically withholding or offering certain "reward"

foods to make him comply with desired behaviors and to use physical restraints when he

protested the denial of his favorite foods.

77.     Devereux staff continued to use food as a discipline technique notwithstanding

the fact that it aggravated W.M.'s behavior.

---

[72] Jenny Abamu, *How Some Schools Restrain Or Seclude Students: A Look At A Controversial Practice*, NPR.ORG, https://www.npr.org/2019/06/15/729955321/how-some-schools-restrain-or-seclude-students-a-look-at-a-controversial-practice (last visited May 26, 2021).
[73] David M. Perry, *Restraint in Schools and the Death of an Autistic Child*, PACIFIC STANDARD, https://psmag.com/education/restraint-and-seclusion-and-the-death-of-max-benson (last visited May 26, 2021); Cat Schuknecht, *School Where Student with Autism Died Violated State Regulations, Officials Say*, NPR.ORG, https://www.npr.org/2018/12/09/675145052/school-where-student-with-autism-died-violated-state-regulations-officials-say (last visited May 26, 2021).

78.     W.M. also complained that a Devereux case worker covered W.M.'s eyes with his hands, which would violate the no-contact policy between staff and residents.

79.     When W.M.'s mother visited him at the Devereux facility, she regularly witnessed children fighting aggressively and yelling. One resident approached W.M.'s mother, showed her a gash on his head, and told her that another resident had fought him and kicked him in the head.

80.     W.M. had already suffered serious trauma before arriving at Devereux. The Viera Devereux facility, which was supposed to be a therapeutic environment for W.M., instead provided further opportunities for W.M. to be abused by adults entrusted with his care.  This child and other Class members will continue to suffer from the fear, anxiety, stress, and trauma unless the Court orders remedial measures that will end the abuses at Devereux.

**Plaintiff Richard Roe A.W.**

81.     Plaintiff Richard Roe A.W. ("A.W." for purposes of this section) is a fourteen-year-old boy who has resided in the West Chester, Pennsylvania Devereux facility since 2018.

82.     A.W. began attending mental health facilities after exhibiting behavioral issues that may stem from a brain injury A.W. suffered in 2012 when part of his brain was removed in an attempt to save his life.

83.     Since A.W. has been at Devereux, staff have used excessive force on him on many occasions, including by applying physical restraints. Based on information and belief, these physical restraints violated protocol for acceptable behavioral health management techniques. A.W.'s mother often sees him with bruises and scrapes across his body from being restrained by Devereux staff. On one occasion, A.W. was taken to the hospital because Devereux staff punched him in the nose. On another occasion, Devereux staff violently hit A.W. with keys.

84.     Recently, a Devereux staff member put A.W. in a restraint resulting in a deep scratch across his hip and buttocks.  A.W.'s mother filed a report with the Chester County Department of Children, Youth and Families.

85.     A.W. has tried to run away from Devereux on at least two occasions.

86.     A.W. reported to Devereux authorities that Devereux staff was using excessive physical force against him and that staff instigated fighting and verbal arguments between residents, more generally.

87.     A.W. has reported to Devereux authorities incidents of inappropriate behavior and grooming of other Devereux residents.

88.     A.W.'s mother has witnessed interactions between Devereux staff and her son that make her very uncomfortable. For example, A.W.'s mother saw a Devereux staff member take new sneakers and clothing out of the trunk of his car to give to her son in secret. A.W.'s mother was also told that a different staff member was fired for grooming other residents but when she asked for additional details, such as whether her son had been the target, no one would tell her.

89.     A.W.'s mother is working diligently to secure her son's release from Devereux.

**Plaintiff Richard Roe T.S.**

90.     Plaintiff Richard Roe T.S. ("T.S." for purposes of this section) is a seventeen-year-old boy with behavioral health challenges.

91.     T.S.'s father adopted him in 2013 from foster care. In 2020, T.S. was placed in a therapeutic group home in Arizona. However, the group home could not provide T.S. with the individualized care that he needed, and it suggested that T.S.'s father transfer him to the Westminster, Colorado Devereux facility.

2378070.7

92.     T.S. arrived at Devereux's Westminster, Colorado facility in August 2020. Despite not being diagnosed with autism, T.S. was placed in the facility's Autism Unit in April 2021. Devereux told T.S.'s father that it was moving T.S. to the Autism Unit because it believed children with ASD were less likely to run away from the facility and T.S. had run away from the Westminster facility before. T.S. continued to try to escape Devereux even after Devereux placed him in the Autism Unit.

93.     In reality, however, Devereux was assigning patients to the Autism Unit regardless of a lack of diagnosis of ASD to accomplish its goal of discharging patients so it could turn the Westminster facility into a center for migrant children; the Autism Unit was the last unit to close before the facility would be shut down. Placed in the wrong unit in Devereux's Westminster facility, T.S. was deprived of the type of care he needed.

94.     Devereux attempted to discharge T.S., but Arizona's Medicaid provider refused to allow it.

95.     During his first few months at the Westminster facility, T.S. filed numerous grievances against Devereux staff for forcing him to wear dirty clothes for weeks, refusing to feed him, throwing away his food, yelling at him and others, and physically hitting him and others.

96.     During one incident at the Westminster facility, Devereux staff restrained T.S. against a tree, bending his arm backwards and causing severe pain. This physical restraint violated protocol for acceptable behavioral health management techniques. T.S. told the nursing staff about his injury.

97.     T.S. was also punched repeatedly by another Devereux resident while he was at the Westminster facility. Devereux staff witnessed the abuse.

- 28 -

98.     Devereux staff at Westminster encouraged dangerous coping mechanisms, including encouraging T.S. to run away from the facility, which he did numerous times. There was very little supervision over the Devereux residents at the Westminster facility. T.S. was allowed to stay up all night such that he did not attend classes or slept through them.

99.     T.S.'s behavioral challenges drastically worsened during his time at Devereux's Westminster facility. T.S.'s father feels like he has "lost [his] kid." T.S.'s father states that he is not able to speak to his son without a staff member hovering over the call and fears that T.S. cannot tell him everything that occurs because of fear of retaliation from staff.

100.    In September 2021, T.S. was transferred to the Kennesaw, Georgia Devereux facility where he currently resides.

### CAUSES OF ACTION[74]

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiffs and the Class)

101.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

102.    Devereux owed Plaintiffs and the Class a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

103.    Devereux acted with a lack of care towards Plaintiffs and the Class through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding behavioral health practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately

---

[74] Where applicable, Plaintiffs have noted the inclusion of allegations specific to their request for forward-looking injunctive relief.

supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Devereux programs; failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs; and failing to develop and implement appropriate policies and procedures to prevent employees from, for example, responding to Plaintiff Richard Roe W.M.'s typical and expected Autism-related outbreaks with aggressive physical restraints and withholding preferred foods as a form of discipline; and/or failing to ensure that policies and procedures were followed to prevent such mistreatment. By failing to exercise ordinary care through their acts and omissions, Devereux caused foreseeable harm to Plaintiffs, as detailed above. This harm entitles Plaintiffs to damages.

## Allegations Specific to Injunctive Relief

104.    By failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and properly respond to incidents of abuse in Devereux's programs, Devereux has breached its duty towards Plaintiffs and the Class.

105.    By failing to exercise ordinary care through its acts and omissions, Devereux continues to place Plaintiffs and the Class at a heightened risk of abuse—higher than the baseline societal risk of these harms.

106.    The increased risk of abuse faced by Plaintiffs and the Class is directly traceable to the actions and inactions of Devereux.

107.     The current injury—the increased risk of abuse—as well as any actual abuse that flows from it cannot be remedied by monetary compensation and thus requires injunctive and equitable relief.

## COUNT II
## NEGLIGENT HIRING
### (On behalf of Plaintiffs and the Class)

108.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

109.     Devereux is required to exercise reasonable care in the hiring, supervision, and continued retention of all employees staffed at their facilities.

110.     Devereux knew, or in the exercise of ordinary care, should have known, that the employment of the staff members who mistreated Plaintiffs and the Class posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags," Devereux would have known that these employees were not suitable for the particular duty of caring for children.

111.     It was unreasonable for Devereux to hire employees whom Devereux knew or should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

112.     Around 2012, after a staff member raped a 15-year-old girl at a Devereux facility in Georgia, Devereux considered adopting the "Diana Screen" program to evaluate new employees. However, although the program cost less than $30 to administer, Devereux declined to adopt it.

113.     Due to Devereux's repeated failure to properly screen its employees, it is liable for negligently hiring those employees who were not sufficiently investigated before hiring to ensure

that they would provide safe care for the vulnerable children in Defendant's programs, including Plaintiffs and the Class.

114.    Because of Devereux's negligent hiring practices, Plaintiffs were proximately harmed by these employees. This harm entitles Plaintiffs to damages. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and/or emotionally abuse Plaintiffs.

**Allegations Specific to Injunctive Relief**

115.    By failing to implement and enforce necessary and appropriate policies, procedures, and protocols related to hiring, Devereux has breached its duty to Plaintiffs and the Class.

116.    Because of Devereux's negligent hiring practices, Devereux continues to place Plaintiffs and the Class at a heightened risk of abuse—higher than the baseline societal risk of these harms.

117.    The increased risk of abuse is directly traceable to the actions and inactions of Devereux.

118.    The current injury—the increased risk of abuse—as well as any actual abuse that flows from it cannot be remedied by monetary compensation and thus requires injunctive and equitable relief.

**COUNT III**
**NEGLIGENT RETENTION**
**(On behalf of Plaintiffs and the Class)**

119.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

120.    As detailed above, Devereux knew or should have known about the widespread and repeated history of physical, sexual, and/or emotional abuse committed by Devereux staff members. The scope and severity of this misconduct evidences an institutional problem

surrounding the conduct of staff members such that Devereux knew, or reasonably should have known, of the necessity to control their employees.

121.    Despite this misconduct, Devereux failed to implement procedures for evaluating employee misconduct, evidenced by its staffs' repeated departure from institutional norms, such as, *inter alia,* responding to Plaintiff Richard Roe W.M.'s typical and expected Autism-related outbreaks with aggressively inappropriate physical restraints.

122.    Despite Devereux's actual and/or constructive knowledge of Plaintiffs' mistreatment, Devereux retained the employees responsible for the mistreatment. Because of Defendants' breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, Plaintiffs were grievously harmed. This harm entitles Plaintiffs to damages.

## Allegations Specific to Injunctive Relief

123.    By failing to implement and enforce necessary and appropriate policies, procedures, and protocols related to employee retention, Devereux has breached its duty towards Plaintiffs and the Class.

124.    Because of Devereux's negligent retention practices, Devereux continues to place Plaintiffs and the Class at a heightened risk of abuse—higher than the baseline societal risk of these harms.

125.    The increased risk of abuse is directly traceable to the actions and inactions of Devereux.

126.    The current injury—the increased risk of abuse—as well as any actual abuse that flows from it cannot be remedied by monetary compensation and thus requires injunctive and equitable relief.

## COUNT IV
## NEGLIGENT SUPERVISION
## (On behalf of Plaintiff and the Class)

127.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

128.    Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Defendant possessed a special relationship with Plaintiffs and the Class, as Devereux was entrusted with the duty of care and custody over Plaintiffs and the Class.

129.    Youth in Devereux programs cannot reasonably be expected to protect themselves from sexual, physical, or emotional assaults and abuses by staff. These children come to Devereux in need of advanced behavioral health supports. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with others and understand an appropriate versus an inappropriate interaction with a teacher or staff member. This is particularly true for Plaintiff Richard Roe W.M., who is only eight years old, who has advanced needs related to his ASD, and who has suffered physical abuse by his father.

130.    Devereux failed to exercise ordinary care to prevent intentional harms by their employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse toward Devereux patients, students, and residents. This gave Devereux reason to know that abuse of their residents and patients was commonplace, and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

131.    Devereux had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its

staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

132.     Despite knowing of this pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols for sufficient staffing of Direct Support Professionals such that staff members are not alone with children), to ensure that staff are following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and taking immediate action to investigate, reassign, and/or terminate employment of staff who engaged in abusive behavior towards their patients and residents.

133.     Because of Defendants' negligent supervision, in which Devereux breached its duty to exercise reasonable care to prevent harms to youth in its care, Plaintiffs were harmed. This harm entitles Plaintiffs to damages.

134.     By failing to implement and enforce necessary and appropriate policies, procedures, and protocols related to supervision of employees and other residents, Devereux has breached its duty towards Plaintiffs and the Class.

## **Allegations Specific to Injunctive Relief**

135.     By failing to exercise ordinary care through its acts and omissions, Devereux continues to place Plaintiffs and the Class at a heightened risk of abuse—higher than the baseline societal risk of these harms.

136.     The increased risk of abuse is directly traceable to the actions and inactions of Devereux.

137.     The current injury—the increased risk of abuse—as well as any actual abuse that flows from it cannot be remedied by monetary compensation and thus requires injunctive and equitable relief.

**COUNT V**
**GROSS NEGLIGENCE**
**(On behalf of Plaintiffs and the Class)**

138.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

139.    Devereux owed Plaintiffs and the Class a duty to provide a safe environment with adequate protection, supervision, and care while in Devereux's custody.

140.    Devereux acted with a lack of care towards Plaintiffs and the Class by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

141.    At all relevant times, Devereux owed a duty to Plaintiffs and the Class to implement practices and policies to:

      a.     Prevent physical and emotional abuse of youth by Devereux staff;

      b.     Require the prompt reporting of any allegations or suspicions of any type of abuse of youth in Devereux programs by staff or by peers;

      c.     Require the independent investigation of all reports of physical or emotional abuse of youth in Devereux programs;

      d.     Mandate the training of all staff who work directly with youth in Devereux programs regarding child abuse, appropriate relationships with residents, grooming, and child abuse reporting obligations;

      e.     Protect Plaintiffs and the Class from such abuse and foreseeable risks; and

      f.     Provide a safe environment for children with disabilities and mental health needs free from abuse, harassment, and physical harm.

142.    Defendants' duty arose from taking responsibility for the care and custody of youth attending their programs.

143.    Devereux acted recklessly in its care and custody of children with disabilities and advanced mental health needs.

144.     Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQ scores, Devereux created an unreasonable risk of harm to Plaintiffs and the Class.

145.     As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, and loss of enjoyment of life. This entitles Plaintiffs to damages.

a.     **Allegations Specific to Injunctive Relief**

146.     As a direct and proximate result of Defendants' reckless indifference to Plaintiffs and the Class, Devereux continues to place Plaintiffs and the class at a heightened risk of abuse—higher than the baseline societal risk of these harms.

147.     The increased risk of abuse is directly traceable to the actions and inactions of Devereux.

148.     The current injury—the increased risk of abuse—as well as any actual abuse that flows from it cannot be remedied by monetary compensation and thus requires injunctive and equitable relief.

**COUNT VI**
**VICARIOUS LIABILITY**
**(On behalf of Plaintiffs and the Class)**

149.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

150.     Devereux is vicariously liable for alleged tortious misconduct through *respondeat superior*, negligent supervision, retention and hiring, and/or through enabling the mistreatment alleged herein by providing employment to staff who mistreated Plaintiffs and the Class.

- 37 -

151.    When Plaintiffs and the Class were physically and emotionally mistreated by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients, such as by employing medically improper, harmful restraining techniques against Plaintiffs who had, among other diagnoses and challenges, an ASD diagnosis.

152.    Devereux staff members used their position as employees of Devereux to enable mistreatment, including abuse, such that Devereux is vicariously liable for their conduct.

153.    Staff members at Devereux are charged with the care of children with physical, emotional, and/or intellectual disabilities and entrusted to keep them safe. But for their employment at Devereux, staff members would not have been in unsupervised situations with these young and vulnerable victims. Additionally, the responsibilities associated with staff members' employment has enabled them to exert excessive and abusive authority over victims, including Plaintiff.

154.    Staff members took advantage of the authority associated with their responsibilities at Devereux to abuse Plaintiffs and the Class, including touching them inappropriately.

155.    Devereux staff members' abuse of Plaintiffs and the Class constitute assault or battery, as detailed further below.

156.    Devereux ratified their staff members' abusive conduct towards Plaintiffs and the Class by failing to discipline, take corrective action, and/or report the child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by their staff, as described above.

157.    These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within their facilities.

These repeated instances of abuse alerted or should have alerted Devereux that other staff members may be abusing students.

158.     In addition to the long, repeated history of abuse by staff members, Devereux knew that their patients, including Plaintiffs, were particularly susceptible to mistreatment as youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs and the Class.

159.     As a direct and proximate result of Devereux's employees' abuse towards Plaintiffs and the Class, Plaintiffs and the Class have suffered physical harms, and have suffered and will continue to suffer physical and emotional pain and distress.

## COUNT VII
## ASSAULT AND BATTERY
### (On behalf of Plaintiffs and, with respect to assault, the Class)

160.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

161.     While Plaintiff Richard Roe W.M. was a resident at Devereux in Viera, Florida and six years old, Devereux staff physically and verbally abused him, a young boy with Autism Spectrum Disorder.

162.     Devereux staff forcefully restrained Plaintiff Richard Roe W.M. without his consent, leaving red marks and bruises on his body.  Based on information and belief, these restraints were ratified by Devereux and exceeded the protocol for standard behavioral health management techniques.

163.     At no time did Plaintiff Richard Roe W.M. consent to these abuses and harms through which he suffered.

164.     While Plaintiff Richard Roe A.W. was a resident at Devereux in West Chester, Pennsylvania, Devereux staff physically and verbally abused him.

165.     Devereux staff forcefully restrained Plaintiff Richard Roe A.W. without his consent, leaving bruises and scrapes across his body. On one occasion, Plaintiff was taken to the hospital because staff punched his nose. On another occasion, staff violently hit Plaintiff Richard Roe A.W. with a set of keys. Based on information and belief, these restraints were ratified by Devereux and exceeded the protocol for standard behavioral health management techniques.

166.     At no time did Plaintiff Richard Roe A.W. consent to these abuses and harms through which he suffered.

167.     While Plaintiff Richard Roe T.S. was a resident at Devereux in Westminster, Colorado, Devereux staff physically and verbally abused him.

168.     Devereux staff hit Plaintiff Richard Roe T.S. Based on information and belief, this physical abuse was ratified by Devereux, and it exceeded the protocol for standard behavioral health management techniques.

169.     These acts, which include attempts or actual uses of harmful or offensive touching, constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under the principles of negligent hiring, retention, and/or supervision.

170.     Devereux is vicariously liable for assault and battery perpetrated on Plaintiffs by its staff because forcefully restraining Plaintiffs falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

171.    Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiffs by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

172.    Moreover, as the employer of staff members, Devereux was in the best position to address and prevent this type of conduct from occurring in the future.

173.    As a direct and proximate result of the Defendants' acts, Plaintiffs have suffered and will continue to suffer severe emotional and physical harms.

**Allegations Specific to Injunctive Relief**

174.    As a direct and proximate result of the Defendants' acts, Plaintiffs and the Class continue to be at a heightened risk of abuse, thereby giving rise to a class claim for assault.

**COUNT VIII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(On behalf of Plaintiffs and the Class)**

175.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

176.    Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress.

177.    Devereux acted negligently towards Plaintiffs and the Class, as described above.

178.    This negligent conduct created an unreasonable risk of physical harm, which caused—and continues to cause—Plaintiffs and the Class to be in fear of their safety.

179.    Devereux's negligence both placed Plaintiffs in the zone of danger of physical impact or injury and resulted in Plaintiffs suffering actual injury.

180.    Plaintiffs and the Class suffered and continue to suffer emotional distress as a result of Devereux's negligent conduct.  This resulted in physical consequences and/or long-continued emotional disturbance, as described above.

181.    Devereux's conduct was the cause of these damages.

182.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(On behalf of Plaintiffs and the Class)**

183.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

184.    Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiffs and the Class would suffer emotional distress as a result.

185.    Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

186.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

187.    By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiffs and the Class to suffer physical and emotional abuse that has caused and will continue to cause pain and suffering, and loss of enjoyment of life.

**Allegations Specific to Injunctive Relief**

188.    In addition, by permitting a culture of systemic physical, emotional, and sexual abuse at Devereux facilities, Devereux placed Plaintiffs and the Class at a heightened risk of abuse that has caused and will continue to cause pain and suffering and loss of enjoyment of life.

- 42 -

## COUNT X
## BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiffs and the Class)

189.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

190.    Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth it serves. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

191.    By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' and Class members' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached its fiduciary duty towards Plaintiffs and the Class.

192.    Plaintiffs and the Class were thereby harmed by Defendants' breach of this fiduciary duty, as detailed above.

## COUNT XI
## Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
## Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment
### (On behalf of Plaintiffs and the Class)

193.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

194.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

195.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

196.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

197.    DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

198.    Plaintiffs are "persons" under Title IX.

199.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

200.    Devereux receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

201.    Under Title IX, Devereux was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

202.    Before Plaintiffs were abused while at Devereux, Devereux had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back decades.

203.    Based on these prior repeated incidents of sexual abuse and assault, and Defendants' knowledge of their own failure to have and/or implement proper policies to prevent and/or respond to incidents of sexual abuse and assault, Defendants had actual knowledge of the substantial, increased, above-societal baseline risk that Plaintiffs would be sexually harassed, abused, or assaulted at Devereux.

204.    With this knowledge, Devereux had the authority—and obligation—to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

     a.    Implementing and enforcing best-practice policies and procedures for the prevention of, and proper response to, incidents of sexual abuse and harassment at its facilities;

     b.    Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

     c.    Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

     d.    Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

     e.    Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

     f.    Improving Devereux's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

205.    Devereux's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set

appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

206.    By its acts and omissions, Devereux has been deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Devereux.

207.    As a result of Defendants' deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs and the Class have been subjected to severe sexual abuse as children in Devereux's programs, and are currently subjected to an ongoing, substantial, increased, above-societal-baseline risk of sexual assault and harassment at Devereux.

208.    The sexual abuse and harassment—and increased risk thereof—suffered by Plaintiffs and the Class has been so severe, pervasive, and objectively offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Devereux. This is because abuse—and the constant risk and fear of it—physiologically rewires the brain in way that impairs learning, development, communication, and growth.[75]

209.    Devereux was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX. In fact, the CEO of

---

[75] *See, e.g.,* Bessel Van der Kolk, The Body Keeps the Score 21 (Viking, 2014) ("Trauma results in a fundamental reorganization of the way mind and brain manage perceptions. It changes not only how we think and what we think about, but also our very capacity to think."); *id.* 44-45 (trauma deactivates the left hemisphere of the brain, which "has a direct impact on the capacity to organize experience into logical sequences… In technical terms they are experiencing the loss of executive function."); *id.* 46 ("The insidious effects of constantly elevated stress hormones include memory and attention problems…"); *id.* 70 ("attention, concentration, and new learning … are compromised by trauma"); *id.* 325 ("Chronic abuse and neglect in childhood interfere with the proper wiring of sensory-integration systems. In some cases this results in learning disabilities…").

2378070.7

Devereux was not surprised to hear of the repeated sexual and physical abuse revealed by the Philadelphia Inquirer's investigation. As stated in his response to the Report, the CEO suggested that Devereux was aware of every incident of abuse included in the Report.[76]

210.    Devereux is, and has been, deliberately indifferent to the substantial, increased risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Devereux youth, Defendants ignored the sexual abuse occurring under its watch and allowed it to continue.

211.    Devereux is responsible for setting and approving all national, organization-wide policies and protocols for Devereux programs and operations, including sex discrimination policies.

212.    Devereux failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

213.    By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs, Plaintiffs and the Class were placed at – and currently remain at—a heightened risk of sexual abuse and assault.

214.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiffs and Class members have been damaged.

215.    Devereux's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs and Class members would be sexually harassed or abused. By

---

[76] https://www.devereux.org/site/SPageServer/?pagename=response_to_safety.

failing to set appropriate sex discrimination policies, this risk of sexual abuse and harassment was increased even further.

216.    Because Devereux has failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Devereux, instead allowing this conduct to prevail, Plaintiffs and Class members have suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' and Class members' damages were the direct and proximate result of Defendants' actions and/or inactions. Indeed, Plaintiff Richard Roe W.M. was sexually abused under Devereux's watch.

217.    In subjecting Plaintiffs and the Class to this wrongful treatment as described, and through its violations of Title IX, Devereux has acted willfully and maliciously with the intent to harm Plaintiffs and Class members, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs and Class members are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

218.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter a judgment on their behalf and against Devereux, and further grant the following relief:

A.      Award the named Plaintiffs compensatory damages, punitive damages, pain and suffering, pre-judgment interest, and any other relief to which they are entitled under the law with respect to their individual claims;

B.   Certify the proposed Class pursuant to the Federal Rules of Civil Procedure Rule 23(a) and (b)(2);

C.   Designate Plaintiffs as representatives of the proposed Class and Plaintiffs' counsel as Class counsel;

D.   Award injunctive relief requiring Devereux, at a minimum, to implement and enforce policies and practices to prevent future incidents of abuse because: (1) there is a substantial likelihood that Plaintiffs and the Class will prevail on the merits; (2) there is a real and substantial threat that Plaintiffs and the Class will suffer irreparable injury if the injunction is not granted; (3) Plaintiffs and the Class's threatened injury outweighs any threatened harm to Devereux; and (4) granting the injunction will serve the public interest. These measures, subject to expert advice, could include but are not limited to:

1.   rigorous hiring, screening, and retention protocols;

2.   revised guidelines governing interactions between staff and patients;

3.   robust sexual reactivity training for Direct Support Professionals (DSPs);

4.   improved training for DSPs regarding de-escalation techniques;

5.   increased supervision of DSPs, especially during the most vulnerable nighttime windows;

6.   compliance with physical building requirements to increase visibility such that individuals cannot commit abuse in concealed areas;

7.   improved video monitoring infrastructure;

8.   best practice policies and procedures for the prevention of physical, emotional, and sexual abuse;

- 49 -

9.    best practice policies and procedures for the appropriate response to incidents of physical, emotional, and sexual abuse; and

10.   any additional injunctive relief measures that are supported by the record in this case.

E.    Award Plaintiffs and the Class costs and attorneys' fees; and

F.    Award to the Plaintiffs and the Class for such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs, individually and on behalf of the proposed Class, respectfully request a trial by jury as to all matters so triable.

2378070.7

Date: April 19, 2022

Respectfully submitted,

Annika K. Martin (admitted *pro hac vice*)
Jessica A. Moldovan (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
Phone: (212) 355-9500
Facsimile: (212) 355-9592
akmartin@lchb.com
jmoldovan@lchb.com

Mark Chalos (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com

Joseph G. Sauder
Joseph B. Kenney
Lori G. Kier
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com
lgk@sstriallawyers.com

David Rudovsky
**KAIRYS, RUDOVSKY, MESSING,**
**FEINBERG & LIN, LLP**
718 Arch Street
Philadelphia, PA 19106
215-925-4400
drudovsky@krlawphila.com

2378070.7