**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD ROE W.M. (a minor by and through his parent), RICHARD ROE A.W. (a minor by and through his parent), and RICHARD ROE T.S. (a minor by and through his parent) on behalf of themselves and all others similarly situated, | :   CLASS ACTION |
| | : |
| | :   No. 2:21-cv-02655 |
| | : |
| Plaintiffs, | :   Judge Anita B. Brody |
| | : |
| v. | :   Electronically Filed |
| | : |
| THE DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC | : |
| | : |
| Defendants. | : |

**THE DEVEREUX DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR
PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and Quality Health Staffing, LLC (collectively, the "Devereux Defendants" or "Devereux") submit this brief in support of their motion for partial dismissal Plaintiff's First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 23.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    PLAINTIFFS' FACTUAL ALLEGATIONS..........................................................2

    A.    Plaintiff W.M.'s Individual Allegations .................................................3

    B.    Plaintiff A.W.'s Individual Allegations .................................................4

    C.    Plaintiff T.S.'s Individual Allegations ..................................................5

    D.    Plaintiffs' Class-Based Allegations .......................................................5

III.    LEGAL STANDARD.............................................................................................6

IV.    ARGUMENT .........................................................................................................8

    A.    Plaintiffs Fail To Sufficiently Allege Their Article III Standing.......................9

        1.    Plaintiffs' allegations of future harm do not and cannot satisfy Article III's Case and Controversy requirements ....................................................10

        2.    Plaintiffs lack standing under City of Los Angeles v. Lyons. .............11

        3.    Even if "increased risk" constituted Article III injury, Plaintiffs' fail to allege standing with sufficient specificity............................................13

    B.    Plaintiffs Fail To State A Cognizable Title IX Claim....................................14

    C.    Plaintiffs' Newly-Asserted Request For Monetary Damages Would Foreclose Certification Under Rule 23(b)(2) ......................................................16

V.    CONCLUSION....................................................................................................18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................................................7

Ballentine v. United States,
    486 F.3d 806 (3d Cir. 2007)..............................................................................6

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...........................................................................................7

Bell v. Cheswick Generating Station,
    No. 12-cv-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ............................8

Bucci v. Wachovia Bank, N.A.,
    No. 08-1478, 2009 WL 1740503 (E.D. Pa. 2009) (Brody, J.)...................7, 8

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983).......................................................................................9, 11

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)....................................................................................9, 10

Constitutional Party of Pa. v. Aichele,
    757 F.3d 347 (3d Cir. 2014)..............................................................................6

Constitutional Party Of Pa. v. Cortes,
    433 Fed. App'x 89 (3d Cir. 2011).....................................................................10

Donald J. Trump for President, Inc. v. Boockvar,
    493 F.Supp.3d 331 (W.D. Pa. 2020)................................................................12

Donald J. Trump for President, Inc. v. Way,
    Civ. A. No. 20-10753, 2020 WL 6204477 (D.N.J. Oct. 22, 2020)..................12

Finkelman v. Nat'l Football League,
    810 F.3d 187 (3d Cir. 2016).............................................................................13

Fuentes v. Royal Dutch Shell PLC,
    Civ. A. No. 18-5174, 2019 WL 7584654 (E.D. Pa. Nov. 25, 2019) (Brody, J.) ....................10

Gould Elecs. Inc. v. United States,
    220 F.3d 169 (3d Cir. 2000)..............................................................................7

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .................................................................................... 1, 7

Mladenov v. Wegmans Food Markets, Inc.,
    308 F.R.D. 127 (D.N.J. 2015) ........................................................................ 8

Reilly v. Ceridian Corp.,
    664 F.3d 38 (3d Cir. 2011) ......................................................... 9, 10, 11, 13

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
    559 US 393 (2010) .......................................................................................... 8

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) ....................................................................................... 7

Thompson v Merck & Co., Inc.,
    No. 01-cv-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ......................... 8

Vt. Agency of Nat. Res. v. United States ex rel. Stevens,
    529 U.S. 765 (2000) ....................................................................................... 7

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338 (2011) ....................................................................................... 2

**Statutes**

20 U.S.C. §§ 1681 *et seq.* ..................................................................................... 2

42 U.S.C. § 1983 .................................................................................................. 11

Title IX ................................................................................................... 2, 6, 9, 14

**Other Authorities**

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................... 8

Federal Rule of Civil Procedure 23 ...................................................................... 8

Federal Rules of Civil Procedure Rule 12(b)(1) ................................................. 6

Philadelphia Inquirer ............................................................................................ 5

Rule 12 ................................................................................................................. 13

Rule 12(b)(6) ..................................................................................................... 6, 7

Rule 12(f)(2) ......................................................................................................... 8

Rule 23(b)(2) ................................................................................................. 2, 5, 9

Rule 23(c)(1)(A) ...................................................................................................................8

Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f) ............................................................................8

I.      **INTRODUCTION**

The background facts of this litigation are, by now, familiar. The primary Defendant, The Devereux Foundation ("Devereux"), is a large, national non-profit behavioral health organization operating in thirteen (13) states.   For more than a hundred years, Devereux has provided critically important care to children and adults with autism, developmental disabilities, emotional and behavioral disorders and mental illness.

Although Plaintiffs' First Amended Class Action Complaint ("FAC") proposes two new class representatives and a new cause of action—and with them, a smattering of new factual allegations—it largely mirrors Plaintiff W.M.'s initial Complaint. It, too, piggybacks off of a series of sensational news articles from 2020, detailing isolated and disparate incidents of "grooming" and sexual abuse by Devereux staff spanning at least four decades. Plaintiffs, by contrast, do *not* allege grooming or sexual abuse at the hands of Devereux staff. As a result, they are forced to swap abstraction for actual injury: they seek a litany of mandatory injunctions they contend are necessary to change a purported "culture of systematic physical, emotional, and sexual abuse" that subjects Devereux patients and residents to "unnecessary (and foreseeable) risk." FAC, at ¶¶ 31, 187.

Plaintiffs' revamped allegations come no closer to establishing Article III's "irreducible" elements than Plaintiff W.M's initial Class Action Complaint. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The reason for that is simple. With few exceptions, an unrealized, non-imminent "risk" of future harm does not constitute an injury-in-fact. And even if did, Plaintiffs have not alleged facts that sufficiently demonstrate (i) the actual existence of such a risk, (ii) a causal connection between "increased risk" and Devereux's current policies and protocols, or (iii) how new or different policies would remedy the problem.

Plaintiffs' FAC also adds a new cause of action, under 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), alleging Devereux was "deliberately indifferent" to a "pervasive culture of sexual harassment." FAC, at ¶¶ 206-08. Unlike the causes of action carried over from Plaintiff W.M.'s prior Complaint, Plaintiffs do *not* request injunctive relief under Title IX. Instead, they seek "damages" for "emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of emotional distress." FAC, at ¶¶ 216-17. Accusing Devereux of "conscious disregard" of their Title IX rights, Plaintiffs also contend they are "entitled to the recovery of punitive damages." Id. at ¶ 217.

Neither emotional distress nor punitive damages are available under Title IX, a fatal defect. And even if they were recoverable, those damages would come at a steep price: any possibility of certification under Rule 23(b)(2). As the Supreme Court made clear in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011), Rule 23(b)(2) simply "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Id. at 360-361. Ultimately, in its attempt to remedy the myriad pleading deficiencies Devereux identified in prior briefing, Plaintiffs' FAC manages to start as many fires as it puts out. In doing so, it leaves the most crucial deficiency—Plaintiffs' lack of Article III standing to seek injunctive relief—largely untouched.

## II.     PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs allege that the Devereux Defendants are private providers of behavioral health services operating 21 campuses in 13 states and treating patients with significant behavioral, intellectual, developmental and mental health needs. FAC, at ¶ 1. Plaintiffs purport to bring this nationwide action on behalf of "tens of thousands" of youth currently enrolled in a Devereux program and/or living in a Devereux facility.  Id. at ¶¶ 27, 30. Although the FAC directs much of its focus to historical allegations of sexual abuse by Devereux staff members, see id. at ¶¶ 41-46,

51(a)-(h), W.M., A.W., and T.S. do not allege they were sexually abused by Devereux employees. Their individual claims are based primarily on allegations of physical and verbal abuse.[1]

As in W.M.'s first Complaint, Plaintiffs individually seek to recover monetary damages for these specific acts of abuse. On behalf of their putative class, on the other hand, their allegations continue to focus on risk rather than harm—they assert that inadequate hiring, training, and supervision of its staff, on-site surveillance, investigation, and corrective action have exposed Devereux residents to a "heightened risk of abuse" above "the baseline societal risk of these harms." FAC, at ¶¶ 105; see also id., at ¶¶ 116, 124, 135, 146, 174.

### A.    Plaintiff W.M.'s Individual Allegations

Plaintiff W.M. was placed in Devereux's Viera, Florida facility in Fall 2020 and released into his mother's care on August 12, 2021. FAC, at ¶ 65. W.M.'s placement at Devereux was the product of a number of factors, including his Autism Spectrum Disorder ("ASD"), an extensive family history of abuse and trauma, and his own tendency toward aggressiveness, violence, and other "behavioral issues." Id. at ¶¶ 66-69. W.M. acknowledges that his ASD makes him prone to "physical aggressive behaviors such as hitting, kicking, and biting," as well as "temper tantrums" and "unusual or overwhelming reactions to certain sights of sounds." Id. at ¶ 74.

For the most part, W.M.'s individual factual allegations track those from his initial Complaint. He contends that, while under Devereux's care, he was forcibly restrained, taunted, and manipulated by unidentified Devereux employees, including having food withheld and having his eyes covered by an employee's hands. Id. at ¶¶ 75-78. Now, and for the first time,

---

[1]    Unlike Plaintiff W.M.'s initial Complaint, the FAC also includes allegations of abuse by fellow Devereux residents. See FAC, at ¶¶ 72, 97. The relationship between those allegations and Plaintiffs' oft-repeated theories of liability—which focus exclusively on staff-on-resident abuse—remain unclear.

W.M. also alleges that he was "sexually abused" by an unidentified fellow Devereux resident "who would sneak into W.M.'s room and perform oral sex on him, which he then taught W.M. to reciprocate." Id. at ¶ 72. W.M. provides no details about his alleged assailant. Nor does he claim to have told his mother when she visited him during his treatment, id. at ¶ 79, or any Devereux employee about these incidents during his treatment.

### B.    Plaintiff A.W.'s Individual Allegations

Plaintiff A.W. alleges that he is a fourteen-year-old resident at Devereux's West Chester, Pennsylvania facility, where he has lived since sometime in 2018. FAC, at ¶ 81. A.W.'s longstanding and on-going treatment is the product of "behavioral issues" that, he explains, "may stem from a brain injury [he] suffered in 2012 when part of his brain was removed in an attempt to save his life." Id. at ¶ 82. A.W. accuses Devereux staff of using "excessive force on him on many occasions, including by applying physical restraints." Id. at ¶ 83. He theorizes, based on "information and belief," that these restraints "violate[d] protocol for acceptable behavioral health management techniques." Id.

A.W. also contends that, "[o]n one occasion," he was "taken to the hospital because Devereux staff punched him in the nose," and that, "[o]n another occasion, Devereux staff violently hit [him] with keys." Id. He also accuses Devereux of applying a physical restraint that resulted in a "deep scratch." Id. at ¶ 84. Although A.W. does not allege that he has been the victim of sexual abuse as a Devereux resident, he contends that he "reported to Devereux authorities incidents of inappropriate behavior and grooming," that his mother "witnessed interactions between Devereux staff and her son that make her very uncomfortable," and that she "was told that a different staff member was fired for grooming other residents." Id. at ¶¶ 87-88. He does not provide any details about the incidents allegedly reported to Devereux, nor does he identify the source of his mother's hearsay allegations.

### C.     Plaintiff T.S.'s Individual Allegations

Plaintiff T.S. asserts that he is a seventeen-year-old male who arrived at Devereux's Westminster, Colorado facility when a therapeutic group home in Arizona could not offer him necessary "individualized care." Id. at ¶¶ 90-91. Although T.S. alleges Devereux placed him in an Autism Unit even though he has "not been diagnosed with autism," id. at ¶ 92, he does not identify his actual diagnosis or why he required in-patient treatment and care beyond a reference to generic "behavioral health challenges." Id. at ¶ 90.

According to T.S., he filed "numerous grievances" during the "first few months" of his treatment at the Westminster facility, accusing Devereux staff of forcing him to wear dirty clothes, withholding food, yelling at him, and "physically hitting" him. Id. at ¶ 95. The FAC identifies only a single *specific* incident of purported physical abuse of T.S. by Devereux staff— on one occasion, he claims to have been "restrained against a tree" in a manner that "bent" his arm and "caus[ed] severe pain." Id. at ¶ 96. T.S. also alleges that Devereux staff engaged in lax supervision and "encourage[ed] him to run away from the facility." Id. at ¶ 98. In September 2021, T.S. was transferred to a Devereux facility in Kennesaw, Georgia. Id. at ¶ 100. He does not allege any incidents after his transfer.

### D.     Plaintiffs' Class-Based Allegations

On behalf of a putative Rule 23(b)(2) class, Plaintiffs also allege that Devereux promoted a "culture of systematic physical, emotional and sexual abuse" by failing to "enact sufficient measures to ensure the safety of their youth."  Id. at ¶¶ 46, 187.  As noted above, most of these allegations are pulled directly from a series of sensationalized news articles. See, e.g., id. at ¶¶ 3-6, 37-49, 51-64. As a result, the FAC devotes a significant amount of space to rehashing sexual "grooming" and abuse allegations made by the Philadelphia Inquirer. These incidents bear little resemblance to Plaintiffs' own experience. This is hardly surprising given the fact that W.M.,

A.W., and T.S. are all young males and all but one of the media-reported grooming/sexual abuse incidents involved girls or young women. See id. at ¶¶ 51(a), (b), (d), (e), (f).

In an attempt to corral the highly-differentiated experiences of Devereux residents into a single "claim," Plaintiffs rely on a repeated, boilerplate allegation that their putative class members were all exposed to "a heightened risk of abuse" that is "higher than the baseline societal risk of these harms." Id. at ¶¶ 105, 116, 124, 135, 146, 174; cf. id. at ¶¶ 178, 188.  But they do not define or quantify that risk. Moreover, they concede that many Devereux residents are *already* high-risk—they are, in Plaintiffs' words, "especially vulnerable," and often arrive at Devereux with a history of "parental or other abuse in the community." Id. at ¶ 40.

This framework is not new. As before, Plaintiffs purport to predicate their class claims on the risk of abuse, not abuse itself. See id. at ¶¶ 27-34 ("Class Action Allegations"). Nonetheless, their newly-added Title IX claim asserts, for the first time, that "Plaintiffs and the Class" *all* "suffered physical harms," *all* "suffered and continue to suffer emotional distress," and *all* suffered "great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of emotional distress." Id. at ¶¶ 216-17.

## III.     LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to challenge a federal district court's subject matter jurisdiction based on lack of Article III standing. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). This challenge may be "facial" or "factual," which implicate different standards of review. Constitutional Party of Pa. v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014) (citations omitted). Where, as here, an attack is facial, the applicable standard resembles that of a Rule 12(b)(6) motion to dismiss. Courts "only consider the allegations of the complaint and

documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)

At the pleading stage, a plaintiff must "'clearly allege facts demonstrating' each element" of Article III standing: (i) an injury-in-fact, (ii) caused by the conduct at issue, that is (iii) redressable by the relief requested. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (cleaned up). Allegations of abstract harm are insufficient. To satisfy Article III, an injury must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." Lujan, 504 U.S. at 560 (quotation omitted). To meet the "traceability" requirement, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Id. at 560-6 (quotation omitted). And, finally, to demonstrate redressability, Plaintiff must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive dismissal, a complaint must contain factual allegations sufficient to state (i) a claim that is plausible on its face and (ii) a non-speculative right to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Bucci v. Wachovia Bank, N.A., No. 08-1478, 2009 WL 1740503, at *2 (E.D. Pa. 2009) (Brody, J.) (citing Twombly, 550 U.S. at 570). Mere conclusions, labels, or "formulaic recitation[s] of the elements of a cause of action" are insufficient to meet these threshold requirements.  Twombly, 550 U.S. at 555. Although properly-pled factual allegations must be accepted as true and viewed in the light most

favorable to the plaintiff, a court need not accept "unsupported conclusions or conclusory allegations."  Bucci, 2009 WL 1740503, at *2 (citing In re Tower Air, Inc., 416 F.3d 229, 236 (3d Cir. 2005)).

Finally, Federal Rule of Civil Procedure 23 sets forth "a one-size-fits-all formula for deciding the class-action question."  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 US 393, 399 (2010). Where, as here, it is clear from the face of a complaint that class allegations are incapable of satisfying this "formula," a court may issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."[2]  Fed. R. Civ. P. 23(d)(1)(D); see also Thompson v Merck & Co., Inc., No. 01-cv-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (confirming court's "authority to strike the class allegations from the complaint" before "the plaintiffs have filed a motion for class certification."). Although Rule 23 is silent about specific timing, early disposition of class claims is in keeping with both the Rule's practical, case-specific approach to resolution of class status and the demands and costs of complex litigation. Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

## IV.     ARGUMENT

Through their FAC, Plaintiffs seek to cure their mootness problems and remedy various pleading deficiencies. The results are decidedly mixed. Mootness may no longer pose an immediate threat, for instance, but their vaguely-defined third-party "risk" remains

---

[2]     Although Rule 23 does not identify any specific mechanism for early resolution of facially deficient class claims, courts have applied several different approaches, generally pursuant to Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f). See Bell v. Cheswick Generating Station, No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (noting that, "together," these Rules "provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification."); see also Mladenov v. Wegmans Food Markets, Inc., 308 F.R.D. 127, 130 (D.N.J. 2015)(acknowledging early dismissal "pursuant to Rule 12(f)(2)," "subsection 12 (f)(1)," and "Rule 23(c)(1)(A)").

constitutionally deficient: it is not a cognizable injury-in-fact, it is not traceable to Devereux's actions, and it would not be redressed by requiring Devereux to adopt new (but still unspecified) policies and protocols. Even if that were not the case, Plaintiffs' threadbare allegations of future harm, like those in Plaintiff W.M.'s initial Complaint, fail to "'clearly and specifically set forth facts" necessary to elevate their theories beyond the hypothetical, into the plausible. Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011).

Other problems are unique to the FAC. Plaintiffs' newly-minted Title IX cause of action is predicated on emotional distress and punitive damages the Supreme Court has expressly disavowed. Perhaps that is for the best. Because both emotional distress-based compensatory damages and punitive damages would require individualized determinations, their Title IX-based request for damages would conflict with bright-line limitations placed on Rule 23(b)(2) class actions, foreclosing any possibility of certification.

### A.     Plaintiffs Fail To Sufficiently Allege Their Article III Standing

Plaintiffs' FAC does not change the fundamental nature of their class-based claim. They still seek to certify a Rule 23(b)(2) class, still seek sweeping mandatory injunctions (imposing unspecified new policies and protocols), and still predicate this request on "a heightened risk of abuse" rather than actual injury. See, e.g., FAC, at ¶¶ 27-34, 74, 105, 116, 124. As a result, their FAC once again runs headlong into the threshold requirements of Article III, the Third Circuit's opinion in Reilly v. Ceridian Corporation, and the Supreme Court's decisions in Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) and City of Los Angeles v. Lyons, 461 U.S. 95 (1983). As before, Plaintiffs cannot establish concrete or imminent injury, nor have they "'clearly and specifically set forth facts'" establishing their standing to sue in federal court, Reilly, 664 F.3d at 41, including the scope and scale of the "risk" alleged, its causal relationship to Devereux policies, and how Plaintiffs' proposed injunctions will provide necessary "redress."

9

1.     **Plaintiffs' allegations of future harm do not and cannot satisfy Article III's Case and Controversy requirements**

The Third Circuit's "present test" for Article III standing requires "actuality" of injury, "not hypothetical speculations concerning the possibility of future injury." Reilly, 664 F.3d at 43. In the context of prophylactic injunctive relief, this means a "'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'allegations of *possible* future injury' are not sufficient[.]" Clapper, 568 U.S. at 409 (cleaned up) (emphases in original); see also Fuentes v. Royal Dutch Shell PLC, Civ. A. No. 18-5174, 2019 WL 7584654, at *1-2 (E.D. Pa. Nov. 25, 2019) (Brody, J.) (a plaintiff seeking injunctive relief "must show a threat of future injury that is 'actual and imminent,' as opposed to one that is 'conjectural or hypothetical,'" and "'[m]ere allegations of *possible* future injury are not sufficient.'") (emphasis in original). Plaintiffs do not, and cannot, contend that the future harm they allege is "certainly impending."

Skepticism regarding probabilistic harm is particularly appropriate where, as here, the threatened injury would be inflicted "by unknown third part[ies]." Reilly, 664 F.3d at 43; see also Constitutional Party Of Pa. v. Cortes, 433 Fed. App'x 89, 93 (3d Cir. 2011) (plaintiffs must establish "that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury.") (quotation omitted); see FAC, at ¶ 31 (basing class claims on Devereux's "failure to have and/or enforce proper policies and procedures for the prevention of, and proper response to, such abuse"); id. at ¶ 33(a) (defining Devereux's "duty" as "protecting [residents] from, and properly responding to, physical, emotional, and sexual abuse"); id. at ¶ 47 (alleging Devereux "fail[ed] to implement and enforce policies and procedures for the prevention of, and proper response to, abuse of its patients").[3] The intervening discretion of non-parties does not

---

[3]    See also id., at ¶¶ 33(b), 47, 103, 104, 122, 130, 133, 141, 171, 182, 186 (alleging failure to prevent harm); cf. id. at ¶¶ 33(a), 55, 139 (alleging a failure to "protect" residents from abuse).

simply render any injury impermissibly uncertain and indefinite, it also negates Plaintiffs' ability to establish causation and redress. This is as much a matter of common sense as constitutional principle—all the policies in the world are unlikely to prevent harm from a non-party *already* willing to commit illegal acts. Plaintiffs provide no factual allegations that suggest otherwise.

### 2.    Plaintiffs lack standing under <u>City of Los Angeles v. Lyons.</u>

The Supreme Court's decision in <u>City of Los Angeles v. Lyons</u> "best illustrates" the high bar imposed upon Plaintiffs' claims. <u>Reilly</u>, 664 F.3d at 42-43. The plaintiff in <u>Lyons</u> had been subjected to a chokehold by police officers during a traffic stop. He filed suit against the city under 42 U.S.C. § 1983, seeking damages for his past experience and injunctive relief to prevent future use of the tactic. <u>Lyons</u>, 461 U.S. at 97-98. Finding in his favor, the district court enjoined the use of chokeholds and ordered "[a]n improved training program and regular reporting and record keeping." <u>Id.</u> at 99-100. The Ninth Circuit affirmed. <u>Id.</u>

The Supreme Court reversed, deeming the threat of future injury too "speculative" to satisfy Article III. <u>Id.</u> at 109-10. Its logic was straightforward, if unforgiving. There were only two ways the threat of future chokeholds could give rise to Article III standing, it explained. First, by establishing "that *all* police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning[.]" <u>Id.</u> at 105-6. Or, second, by showing "that the City ordered or authorized police officers to act in such manner." <u>Id.</u> In other words, had the chokeholds been implemented at the city's direction, as a matter of policy, then the prospect of future injury might be deemed sufficiently real and immediate. But the chokeholds were *not* official policy; they were, instead, the independent actions of a select number of non-party police officers. As such, the risk alleged—while undoubtedly "real"—was neither imminent nor concrete. <u>Id.</u> at 106.

The same logic was applied more recently by the district court for the Western District of Pennsylvania, in <u>Donald J. Trump for President, Inc. v. Boockvar</u>, 493 F.Supp.3d 331 (W.D. Pa. 2020). There, the plaintiffs sought a mandatory injunction ordering the "implementation" of certain "security measures" in response to "an increased risk" of "fraudulent or unlawful voting." <u>Id.</u> at 341. The court rejected the alleged injury under Article III because it was "not 'concrete,'" a "critical element to have standing in federal court." <u>Id.</u> at 342. Although Article III did not require plaintiff to "prove actual voter fraud," the court explained, it did require evidence "that such fraud is 'certainly impending.'" <u>Id.</u>

Rather than imminent injury, the <u>Boockvar</u> plaintiffs' allegations set forth "a sequence of uncertain assumptions: (1) they assume potential fraudsters may attempt to commit election fraud through the use of drop boxes or forged ballots, or due to a potential shortage of poll watchers; (2) they assume the numerous election-security measures used by county election officials may not work; and (3) they assume their own security measures may have prevented that fraud." <u>Id.</u> "All of these assumptions," the court conceded:

> could end up being true, and these events could theoretically happen. But so could many things. The relevant question here is: are they "certainly impending"? At least based on the evidence presented, the answer to that is "no." And that is the legal standard that Plaintiffs must meet. As the Supreme Court has held, this Court cannot "endorse standing theories that rest on speculation about the decisions of independent actors."

<u>Id.</u> at 342-43 (quoting <u>Clapper</u>); <u>see also</u> <u>Donald J. Trump for President, Inc. v. Way</u>, Civ. A. No. 20-10753, 2020 WL 6204477, at *7 (D.N.J. Oct. 22, 2020) (noting that, "despite alleged past experiences with voter fraud in New Jersey, it is no more than speculation to claim that those unfortunate instances will repeat themselves in the November 2020 General Election") (citing <u>Lyons</u>).

Here, the injury underlying Plaintiffs' "risk" is the product of an equally long line of possible but ultimately speculative contingencies. In any individual case, injury will only occur (i) *if* a potential abuser is employed at the resident's place of treatment, (ii) *if* that employee has access to that individual, (iii) *if* the employee selects that specific individual for abuse, (iv) *if* the employee is presented with an opportunity to abuse the individual in question, (v) *if* the abuser actually follows through on her or his abuse, and (vi) *if* that abuse is not thwarted along the way. As the Third Circuit has explained on more than one occasion, where an alleged harm cannot be described "without beginning [the] explanation with the word 'if,'" it is simply too "conjectural" to satisfy Article III. <u>Reilly</u>, 664 F.3d at 43 (citing <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293 (3d Cir. 2003)). Here, the "ifs" come in bulk.

### 3. Even if "increased risk" constituted Article III injury, Plaintiffs' fail to allege standing with sufficient specificity.

Even if the Court accepts Plaintiffs' attempt to conflate contingent "risk" with actual injury, this does not end the Rule 12 inquiry. Plaintiffs must still allege injury, traceability, and redressability with enough factual particularity to "'affirmatively and plausibly suggest [their] standing to sue.'" <u>Finkelman v. Nat'l Football League</u>, 810 F.3d 187, 194 (3d Cir. 2016) (citation omitted); <u>Reilly</u>, 664 F.3d at 41 (explaining that, at pleading stage, plaintiffs must "'clearly and specifically set forth facts sufficient to satisfy Article III'") (quotation omitted). This requires, at a minimum, sufficient factual detail to demonstrate the nature and scope of the risk alleged, its relationship to Devereux policy, and how Plaintiffs' proposed relief will provide redress. Plaintiffs' FAC provide no such details.

Instead, they vaguely allege an "increased risk," speculate that it *must* be caused by Devereux's policies, and presume that a change to those policies will thus remedy the injury. See <u>Finkelman</u>, 810 F.3d at 194 ("[s]peculative or conjectural statements are not sufficient" to

establish Article III standing). Without more, it is impossible to know if the risk they identify is *truly* increased, let alone materially or substantially so. Similarly, they fail to link that unquantified risk to any specific Devereux policies in place *or* suggest any specific policies likely to remedy it. This vagueness merely confirms what Plaintiffs' Counsel conceded at Oral Argument in January. Any alleged relationship between the "risk" alleged and Devereux's existing policies is nothing more than guesswork. See 1/12/22 Oral Argument Tr. at 56:11-23. [4]

### B.    Plaintiffs Fail To State A Cognizable Title IX Claim

In addition to two new class representatives, Plaintiffs' FAC also adds a new cause of action, alleging that Devereux violated Title IX, 20 U.S.C. §§ 1681(a) by "fail[ing] to have and/or implement proper policies to prevent and/or respond to incidents of sexual abuse and assault" and being "deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted" at its facilities. FAC, at ¶¶ 203-210. According to Plaintiffs, these alleged failures "effectively barred [Plaintiffs' and class members'] access to education opportunities and benefits[.]" Id. at ¶ 208.

Unlike the other class-wide causes of action set forth in the FAC, Plaintiffs do not predicate their Title IX claim solely on increased risk. Instead, they seek damages for emotional distress and, in addition, punitive damages. Id. at ¶¶ 216-17. Neither are available under Title IX—a limitation Title IX shares with three other anti-discrimination statutes (Title VI, the Rehabilitation Act, and the Affordable Care Act) also enacted through Congress's Spending Clause authority. See Cummings v. Premier Rehab Keller, P.L.L.C., --- S.Ct. ----, 2022 WL

---

[4]    Based on Counsel's statements during oral argument on Devereux's prior Motion to Dismiss, it is clear that Plaintiffs are completely unaware what policies, if any, Devereux has or had in place, how those policies are or were enforced, or the relationship, if any, between those policies and the "injury" alleged. Little has changed. The FAC provides no additional factual allegations.

1243658, at \*4 (Apr. 28, 2022). Dismissal is required. <u>Id.</u> at \*3-4, \*10 (affirming Rule 12(b)(6) dismissal of Title IX claim alleging emotional distress).

Although it may not be obvious at first blush, the logic underlying this limitation is relatively straightforward. Unlike traditional "involuntary" regulation, Spending Clause legislation "operates based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" <u>Id.</u> (quoting <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 451 U.S. 1 (1981)). The Supreme Court has likened this framework to a "contract," with federal funding conditioned on a "promise by the recipient not to discriminate." <u>Gebser v. Lago Vista Ind. Sch. Dist.</u>, 524 U.S. 274, 286 (1998). As such, the "legitimacy" of Congressional power under the Spending Clause legislation "rests not on [Congress's] sovereign authority to enact binding laws, but on 'whether the [recipient] voluntarily and knowingly accepts the terms of th[at] 'contract.'" <u>Cummings</u>, 2022 WL 1243658, at \*4 (quoting <u>Barnes v. Gorman</u>).

Because these statutes are silent regarding private rights of action, it is "not obvious" from their text how any "notice" might be provided. <u>Cummings</u>, 2022 WL 1243658, at \*5. In a series of decisions beginning with <u>Barnes v. Gorman</u>, the Supreme Court has limited plaintiff's recovery under the Spending Clause non-discrimination statutes to (i) remedies (if any) identified in the relevant statutory text, and (ii) remedies "traditionally available in suits for breach of contract.'" <u>Id.</u> (quoting <u>Barnes</u>). It has formally recognized just two: compensatory damages and injunctive relief. <u>Id.</u>

In doing so, it has expressly *rejected* both emotional distress and punitive damages. In <u>Barnes</u>, the Court "concluded that Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages." <u>Barnes</u>, 536 U.S. at 188. As a result, punitive damages are not available. And, in <u>Cummings</u>, decided just last month, the Court

15

cited "hornbook law" for the principle that "'emotional distress is generally not compensable in contract.'" <u>Cummings</u>, 2022 WL 1243658, at \*6. It, too, is now foreclosed. Because Plaintiffs cannot plausibly allege a "right to relief" that is legally unavailable, they fail to state a claim under Title IX.[5]  <u>Twombly</u>, 550 U.S. at 555; <u>Cummings</u>, 2022 WL 1243658at \*10 (affirming dismissal).

**C.**    **Plaintiffs' Newly-Asserted Request For Monetary Damages Would Foreclose Certification Under Rule 23(b)(2)**

According to their FAC, Plaintiffs seek to represent a Rule 23(b)(2) class. FAC, at ¶¶ 27, 31. Certification of such a class is appropriate only when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R. Civ. P. 23(b)(2). As Devereux explained at length in prior briefing, the Supreme Court has interpreted this language narrowly, holding in <u>Wal-Mart Stores, Inc. v. Dukes</u> that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." <u>Dukes</u>, 564 U.S. at 360-61.

Although Plaintiff W.M.'s initial Complaint ran afoul of <u>Dukes</u> in terms of commonality and cohesiveness, it largely deferred to its holding regarding monetary relief. W.M. sought monetary damages for himself but limited his putative class to injunctive relief. By seeking

---

[5]    Plaintiffs' FAC identifies a single basis for this Court's jurisdiction: diversity. By adding what appears to be a non-diverse party (A.W.) as a Plaintiff, however, complete diversity no longer exists.  To the extent this Court could maintain subject matter jurisdiction based on the "federal question" raised by Plaintiffs' Title IX cause of action, dismissal of that claim would strip the Court of jurisdiction. Plaintiffs' FAC provides no other basis. Its glancing reference to this Court's "supplemental jurisdiction" over A.W contravenes federal law, which does not allow federal courts to extend supplemental jurisdiction to non-diverse parties. <u>Cf.</u> 28 U.S.C. § 1367 (disallowing the "exercis[e]" of "supplemental jurisdiction" where it would be "inconsistent with the jurisdictional requirements of section 1332."). In the FAC's current form, dismissal of Plaintiffs' Title IX claim will likely require dismissal of the entire action for lack of jurisdiction.

emotional distress and punitive damages on a class-wide basis, Plaintiffs' Title IX claim changes that formula, rendering certification under Rule 23(b)(2) inappropriate—and likely impossible.

To the extent *any* monetary damages are permitted under Rule 23(b)(2)—and it is far from certain that they are[6]—they must "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." Dukes, 564 U.S. at 365-66 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)) (emphasis in original). Inversely, this means they "'should *not* require additional hearings to resolve the disparate merits of each individual's case,'" should *not* "introduce new and substantial legal or factual issues," and should *not* "entail complex individualized determinations.'" Id. (emphasis added).

Emotional distress damages violate each of these prohibitions.[7] By their "'very nature,'" they "require some form of individualized proceedings" because they "'necessarily implicate[ ] the subjective differences of each plaintiff's circumstances.'" Robertson v. Monsanto Co., 287 Fed. App'x. 354, 362 (5th Cir. 2008) (quotation omitted). Indeed, it is difficult to imagine a more individualized form of relief. See Schonton v. MPA Granada Highlands LLC, Case No. 16-cv-12151, 2019 WL 1455197, at *9 (D. Mass. Apr. 2, 2019) (Rule 23(b)(2) certification inappropriate where emotional distress damages sought); Paternostro v. Choice Hotel Intern. Services Corp., 309 F.R.D. 397, 403 (E.D. La. 2015) (certification under Rule 23(b)(2)

---

[6]   The Court declined "reach that broader question" of whether monetary damages could ever be compatible with Rule 23(b)(2) because the plaintiffs' requested relief was too "individualized" under any standard. Dukes, 564 U.S. at 360; see also id. at 366 (stating that Court "need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced" because the plaintiffs could not meet the less rigid standard applied by the courts below.)

[7]   Punitive damages likely do, as well, because "punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiffs claim." Van v. Ford Motor Company, 332 F.R.D. 249, 291 (N.D. Ill. 2019) (quotation omitted). Nonetheless, because they are "aimed at deterrence and retribution" rather than individual "redress," punitive damages pose a slightly more complicated question. State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).

inappropriate due to individualized nature of damages, including emotional distress); <u>Khalif v.</u>
<u>City of Union City</u>, No. C 09-2723, 2012 WL 13048876, at \*11 (N.D. Cal. May 8, 2012)
(certification under Ruler 23(b)(2) improper where it would "require an individualized award of
damages among plaintiffs, according to proof of mental and emotional distress."). Whatever
monetary compensation Plaintiffs seek to gain through their Title IX claim will necessarily come
at the expense of their ability to maintain a class action. If their Title IX claim is permitted to
stay, their class claim(s) must go.

**V.      CONCLUSION**

For the reasons stated more fully above, the Devereux Defendants respectfully move this
Court to dismiss Plaintiffs' request for injunctive relief for lack of standing and their Title IX
claim for failure to state a claim. In the alternative, should Plaintiffs' Title IX claim survive, then
Plaintiffs' putative class claim should be dismissed as uncertifiable under Federal Rule of Civil
Procedure 23(b)(2).


Date: May 17, 2022                        _/s/ Cameron M. Redfern_____

                                          STRADLEY RONON STEVENS & YOUNG, LLP
                                          Joseph McHale Esquire
                                          Great Valley Corporate Center
                                          30 Valley Stream Parkway
                                          Malvern, PA 19355
                                          jmchale@stradley.com

                                          Jeffrey A. Lutsky, Esquire
                                          Cameron M. Redfern, Esquire
                                          Michael J. Wise, Esquire
                                          2005 Market Street, Suite 2600
                                          Philadelphia, PA 19103
                                          P: (215) 564-8742
                                          F: (215) 564-8120
                                          jlutsky@stradley.com
                                          credfern@stradley.com
                                          mwise@stradley.com

5179217