IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ROE W.M., et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 21-2655 |
| | : | |
| THE DEVEREUX FOUNDATION (d/b/a | : | |
| DEVEREUX ADVANCED | : | |
| BEHAVIORAL HEALTH), et al., | : | |
|     Defendants. | : | |

**February 9, 2023**                                                                                   **Anita B. Brody, J.**

## M<span>EMORANDUM</span>

    Plaintiffs in this case allege that the abuse they suffered while living at Devereux facilities is the result of systemic "practices and customs" that festered for decades. FAC (ECF 42) ¶ 38. To remedy that ongoing harm, they have asked the court to certify a nationwide class of Devereux patients and issue an injunction "requiring Devereux . . . to implement and enforce policies and practices to prevent future incidents of abuse." *Id.* at 52.[1] Now that the case is in discovery—but before any class has been certified—plaintiffs seek documents that go to the heart of their claims: records detailing abuse at Devereux facilities. Devereux, citing Pennsylvania privacy law, objects to disclosing records about patients other than the named plaintiffs.

**I.    B<span>ACKGROUND</span>**

    Plaintiffs served their first set of document requests on January 27, 2022. Pl. First Request (ECF 61-4) at 11. Several of these requests ask for confidential records concerning non-parties.[2] Plaintiffs seek "documents and/or communications referring or relating to discipline, reprimands,

---

[1] Citations to page numbers in ECF documents use the ECF pagination, not the pagination in the original document.
[2] The parties recognized that discovery could involve highly sensitive records and entered into a confidentiality agreement early in the case. *See* Confidentiality Stipulation and Agreement (ECF 27).

1

complaints, allegations, lawsuits, settlements, and/or investigations concerning physical abuse, sexual abuse, and/or emotional abuse at Devereux facilities." *Id.* at 9 (Request 11). They also ask for documents and communications about abuse sent to government entities, donors, potential donors, or potential patients. *Id.* at 8-9 (Requests 13, 15).

Two months later, Devereux lodged several objections to plaintiffs' requests. Def. Resp. to Pl. First Request (ECF 61-5) at 11. As relevant here, Devereux claims that turning over records referencing non-party patients would violate Pennsylvania statutes shielding mental health treatment records and child abuse reports from disclosure. *Id.* at 8-10; *see also* Def. Letter (ECF 61-7) at 8 ("Devereux is prohibited from disclosing documents and information pertaining to Devereux patients other than the Plaintiffs or alleged incidents of abuse involving patients other than the Plaintiffs."). After months of volleying, the parties reached an impasse. *See* Pl. Letter (ECF 61-6); Def. Letter (ECF 61-7); Def. Letter (ECF 61-8); Email Exchange (ECF 61-9).

**II.   DISCUSSION**

Plaintiffs now move to compel Devereux to respond to their document requests. Pl. Motion (ECF 61) at 1. The motion asks the court to resolve a threshold question: whether Devereux may rely on two Pennsylvania statutes to withhold documents.[3] After carefully considering the weighty interests on both sides of the issue and for the reasons explained below, I hold that it may not.

   **A.   <u>Federal privilege law controls.</u>**

Devereux argues that it need not—and cannot—produce certain responsive records because they are privileged under two Pennsylvania privacy statutes: the Child Protective Services

---

[3] Plaintiffs also ask the court to compel production of "[c]lasswide evidence" and order Devereux to maintain a privilege log. Pl. Motion (ECF 61) at 2. Devereux, of course, must maintain a log of *otherwise responsive* documents that it withholds for privilege, as Fed. R. Civ. P. 26(b)(5)(A) requires. *See, e.g.*, *Parks, LLC v. Tyson Foods, Inc.*, No. 15-946, 2015 WL 5042918, at *4 (E.D. Pa. Aug. 26, 2015) (Leeson, J.) (enforcing the Rule 26 privilege log requirement). But the court declines to grant plaintiffs a blank check on pre-certification discovery. I have already ordered the parties to meet and confer to narrow plaintiffs' discovery requests, *see* Order (ECF 77), and reserve decision on the proper scope of pre-certification discovery.

2

Law (CPSL), 23 Pa. Cons. Stat. § 6301 *et seq.*, and the Mental Health Procedures Act (MHPA), 50 Pa. Stat. § 7101 *et seq*. Def. Mem. (ECF 66) at 13. The CPSL "mandates that the confidentiality of reports of child abuse made pursuant to that law be preserved." *Pearson v. Miller*, 211 F.3d 57, 62 (3d Cir. 2000); 23 Pa. Cons. Stat. § 6339 ("[R]eports made pursuant to this chapter . . . shall be confidential."). The MHPA "gives rise to an absolute confidentiality privilege covering documents related to the treatment of mental health problems." *Pearson*, 211 F.3d at 70 (internal quotation marks omitted); 50 Pa. Stat. § 7111 ("All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released.").[4]

Though these statutes protect important confidentiality interests, state law privilege does not control in this case. It is settled law in this circuit that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982); *see also* Wright & Miller, 19 Fed. Prac. & Proc. § 4512 (3d ed.) (noting that it is "clear that federal privilege law will apply when both state and federal claims are present in the same action," particularly when a court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367). Devereux protests that most of the claims in the case are state law claims, and the federal claim—under Title IX, 20 U.S.C. § 1681 *et seq.*—was added as an "afterthought" to preserve federal jurisdiction. Def. Mem. (ECF 66) at 15. But it is not the court's role to determine which claims are central to plaintiffs' suit and which are ancillary.[5] Federal question jurisdiction does not exist in shades of gray—a federal court either has it or does not. As

---

[4] Devereux has clarified that it will not withhold any documents related to the named plaintiffs on CPSL and MHPA grounds; it only seeks to withhold those "that relate solely to non-plaintiff Devereux patients who are not represented by Plaintiffs' counsel." Def. Mem. (ECF 66) at 11.
[5] To the extent Devereux argues that plaintiffs' discovery requests are only relevant to their state law claims, Def. Mem. (ECF 66) at 16, it is mistaken. Plaintiffs' Title IX claim alleges that Devereux was deliberately indifferent to a pattern of sexual abuse across its facilities, and records of abuse are relevant to those allegations. FAC (ECF 42) ¶¶ 201-216.

3

long as this remains a federal question case, federal privilege law governs.

### B. *Pearson* sets out the test for recognizing a new federal privilege.

Because federal privilege law applies, the court must determine whether federal privilege law "may recognize the force of those [state law] provisions." *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000). Federal privilege law is common law, so federal courts are free to recognize new privileges based on state statutes "on a case-by-case basis." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990); *see* Fed. R. Evid. 501 (authorizing courts to recognize privileges "in the light of reason and experience"). But they must exercise that power with caution. While "[t]he case for recognizing a particular federal privilege is stronger . . . where the information sought is protected by a state privilege," the bar to recognition is still very high and, "with very limited exceptions, federal courts have generally declined to grant requests for new privileges." *Pearson*, 211 F.3d at 67; *see also In re Grand Jury*, 103 F.3d 1140, 1150 (3d Cir. 1997) ("[P]rivileges are disfavored."). This is because privileges impede the search for truth, are often difficult to administer, and call on courts to perform legislative balancing of competing interests. *See Univ. of Pa.*, 493 U.S. at 189 ("[P]rivileges contravene the fundamental principle that the public . . . has a right to every man's evidence." (internal quotation marks omitted)).

With those principles in mind, the Third Circuit set out the framework for whether federal courts should recognize privileges based on state law in *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000). "[G]ranting due respect to Pennsylvania's protections," federal courts must determine whether a privilege "promotes sufficiently important interests to outweigh the need for probative evidence, where the need for probative evidence is viewed as a very weighty consideration indeed—to the extent that only the strongest considerations on the other side of the scale are capable of outweighing it." *Id.* at 69 (internal citation omitted). The *Pearson* test, then, is a skewed

balancing test, weighted heavily against creating new federal privileges.

C. **The *Pearson* balancing test weighs against creating a new federal privilege based on the CPSL or MHPA.**

The Third Circuit applied this framework to the CPSL in *Pearson*.[6] It considered the state's substantial interest in child welfare and the anonymity of abuse reports. *Pearson*, 211 F.3d at 70 ("[I]t is difficult to overstate the importance of a state's activities directed at the welfare of children."). But it ultimately found that the CPSL is a "poor candidate[]" to be a federal privilege because it protects a multilateral web of interests—including those of the child, the confidential reporter, and the state—unlike most other federal privileges based on "bilateral confidential relations." *Id.* at 71-72. Consistent with the Third Circuit's holding, courts in this district have declined to recognize a privilege based on the CPSL unless the documents at issue implicated another federal privilege. *See Kane v. Chester Cnty.*, No. 12-6649, 2016 WL 320589, at *4-5 (E.D. Pa. Jan. 26, 2016) (Leeson, J.) (allowing limited discovery of CPSL-covered records based on "the flexible approach recommended by the *Pearson* court"); *S.G. v. W. Willow Fire Co.*, No. 16-4201, 2017 WL 11550403, at *3 (E.D. Pa. June 28, 2017) (Leeson, J.) ("While this Court is cognizant of the delicate and confidential nature of the . . . reports, the Third Circuit in *Pearson* has clearly denied adoption of the privilege that [the county child services agency] seeks."); *D.M. v. Cnty. of Berks*, No. 12-6762, 2013 WL 3939565, at *5 (E.D. Pa. July 30, 2013) (Baylson, J.) (recognizing a CPSL privilege only to the extent it overlaps with a federal informant privilege).[7]

Appling the *Pearson* balancing test to the MHPA is a closer question. *Cf. Swanger v.*

---

[6] The court noted that, at the time *Pearson* was decided, no decision by the Third Circuit or any other circuit court recognized privileges like those protected by the CPSL or MHPA. *See Pearson*, 211 F.3d at 66.

[7] In a particularly apposite case from a neighboring district, the plaintiffs sought "any and all records pertaining to complaints of child abuse in foster homes"—a request that, like the one at issue here, swept in records about non-parties. *L.W. v. Lackawanna Cnty.*, No. 14-1610, 2015 WL 6406809, at *1 (M.D. Pa. Oct. 22, 2015). The court compelled production of those records, applying *Pearson* to find that they were relevant to the plaintiffs' claims and not privileged under federal law. *Id.* at *2.

*Warrior Run Sch. Dist.*, 659 F. App'x 120, 126 (3d Cir. 2016) (vacating and remanding a district court order for failing to apply the *Pearson* test to the MHPA).[8] As *Pearson* itself notes, that statute creates a privilege that overlaps with the federal psychotherapist-patient privilege. *Pearson*, 211 F.3d at 70. Because of this ambiguity, courts in this district weighing whether to recognize a federal privilege based on the MHPA have reached mixed results. *See Williams v. City of Philadelphia*, No. 08-1979, 2014 WL 5393988, at *6 (E.D. Pa. Oct. 22, 2014) (Surrick, J.) (declining to recognize a federal privilege based on the MHPA); *S.R. by & through next friend Rosenbauer v. Pa. Dep't of Hum. Servs.*, No. 20-02, 2020 WL 2539199, at *3-4 (E.D. Pa. May 19, 2020) (Quiñones, J.) (modifying a subpoena to prevent disclosure of absent class members' mental-health records "unless and until waivers are obtained from the subjects of the documentation").

After considering the interests protected by the statute, I find that "the need for probative evidence" outweighs them in this case. *Pearson*, 211 F.3d at 69. While there is no question that documents (or portions of documents) protected by the federal psychotherapist-patient privilege are exempt from disclosure,[9] the MHPA shields a much broader class of records, covering "[a]ll documents concerning persons in treatment." 50 Pa. Stat. § 7111. The interests in withholding this wider set of documents are weaker than those supporting the psychotherapist privilege, which rests on the inviolability of the bilateral relationship between psychotherapist and patient. *See Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) ("[T]he mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."). The MHPA would shield from disclosure records that have little to do with that relationship and whose disclosure would not

---

[8] *Pearson* also declined to create a federal privilege based on the MHPA, but its analysis turned on the patient waiving the privilege. *Pearson*, 211 F.3d at 70 (observing that the MHPA privilege "is owned by—and fully waivable by—the patient"). Here, the non-parties have not waived the privilege.
[9] The federal psychotherapist-patient privilege covers "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

imperil it. More worryingly, it would create a privilege broad enough to cover nearly *all* documents related to abuse at Devereux facilities, where many residents receive mental health treatment.[10]

Such wholesale withholding would be particularly problematic in this case. The viability of plaintiffs' class claims turns on showing that the problems at Devereux are systemic, that they have persisted for years and across facilities, and that they require a classwide injunction to remedy. *See Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1206 (M.D. Ala. 2016) ("When determining whether to certify a class, the court will need to decide whether there is evidence that the problems the named plaintiffs allege to have occurred have common causes and common solutions . . . ."). It is difficult to imagine how they could make their case without some evidence of what happened to other Devereux patients. *Cf. Kane v. Chester Cnty.*, No. 12-6649, 2016 WL 320589, at *5 (E.D. Pa. Jan. 26, 2016) (Leeson, J.) (noting that the plaintiff "seeks the . . . records for the legitimate purpose of developing his case"); *L.W. v. Lackawanna Cnty.*, No. 14-1610, 2015 WL 6406809, at *2 (M.D. Pa. Oct. 22, 2015) (similar). Because the interests protected by the CPSL and MHPA, while substantial, do not outweigh the need for probative evidence in this case, the court declines to recognize a new federal privilege based on either statute.

### D. **Even absent a federal privilege, the litigants must use alternate means to vindicate the policy objectives of the CPSL and MHPA.**

While the *Pearson* balancing test weighs against creating a new federal privilege based on the CPSL or MHPA, it does suggest that the court must carefully consider the interests protected by these statutes in crafting a discovery order. Mental health treatment records and abuse reports are, after all, some of the most private and sensitive documents imaginable. Following the Third

---

[10] Many of the non-parties discussed in these records would also benefit from the injunction plaintiffs seek, which lessens (but does not eliminate) their interest in confidentiality. *See Williams*, 2014 WL 5393988, at *6 n.5 (finding that discovery of the relevant records was warranted in part because "the holders of the confidentiality interests would almost certainly benefit from Plaintiffs' counsel's access to their confidential information").

Circuit's guidance, the court will seek "an accommodation of plaintiff[s'] legitimate discovery interests with the legitimate interests of third parties in the confidentiality of portions of the requested material." *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000).

This accommodation is easily reached here. The non-parties' confidentiality interests can be protected through (1) a confidentiality agreement and/or protective order; and (2) redaction of names and other identifying information. *See M.B. v. Schuylkill Cnty.*, No. 18-756, 2019 WL 1790468, at *4 (E.D. Pa. Apr. 24, 2019) (Pratter, J.) ("[P]rotective orders under Federal Rule 26(c), and not privilege determinations under Federal Rule 501, are best suited to protect third parties' interests.").[11] The parties have already reached a confidentiality agreement, *see* Confidentiality Stipulation and Agreement (ECF 27), and remain free to request a protective order, *see Lalumera v. 2491 Corp.*, No. 12-929, 2012 WL 3667445, at *5 (E.D. Pa. Aug. 27, 2012) (Diamond, J.) (ordering the parties to "determine whether a protective order is necessary and, if so, jointly propose such an order").[12] Plaintiffs have agreed that Devereux can redact identifying information from documents it turns over. Pl. Mem. (ECF 61-1) at 4. And the court remains, as ever, receptive to other measures the parties might propose.

**III.   CONCLUSION**

For the reasons discussed above, I will grant in part plaintiffs' motion to compel. An appropriate order follows.

s/ANITA B. BRODY, J.
_____
ANITA B. BRODY, J.

---

[11] Before entering a protective order, a court must analyze the factors set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994), to determine whether "good cause" exists to shield the documents from disclosure. *See Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (listing the *Pansy* factors); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 671-72 (3d Cir. 2019) ("The Court's analysis . . . should always reflect a balancing of private versus public interests." (internal quotation marks omitted)).

[12] The parties are also free to modify their agreement to prevent documents turned over in this case from being used in *Jines v. Devereux* (No. 21-346) and *Thomas v. Devereux* (No. 22-2166), or to request a protective order to that effect. Def. Letter (ECF 80) at 3.